# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION: Andrew Perrong v. Rep. Matthew Bradford, et al

USCA NO.: 24-1925

LOWER COURT or AGENCY and DOCKET NUMBER:
E.D.Pa., No. 2-23-cv-00510

NAME OF JUDGE: Wolson, J.

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

(1) Plaintiff claims violation of the Telephone Consumer Protection Act ("TCPA").

(2) Plaintiff-appellee is Andrew Perrong; defendant-appellant is Pennsylvania State Representative Matthew Bradford.

(3) Plaintiff's amended complaint sought injunctive relief and $500 for each alleged TCPA violation or $1,500 for each alleged violation that was willful or knowing.

(4) Rep. Bradford appeals from the district court's May 13, 2024 order and associated memorandum denying Rep. Bradford's motion for summary judgment (ECF docs. 54 & 55).

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Order and associated memorandum entered on May 13, 2024 (ECF docs. 54 & 55).

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

Andrew Perrong filed this action against Pennsylvania State Representative Matthew Bradford. Perrong asserted that five pre-recorded phone calls voiced by Rep. Bradford violated the Telephone Consumer Protection Act and state law.

Rep. Bradford moved to dismiss, asserting immunity and failure to state a claim, among other things. The district court held Rep. Bradford entitled to immunity as to his official-capacity acts, but not individual-capacity acts. The court found it could not determine, based on the complaint, if the calls were placed as part of official business or for other purposes, such as to support re-election campaigns. The court determined it needed details, including about how the calls were financed and whether they were placed from an office number. The court decided that Perrong's state law claim failed as a matter of law.

Perrong amended his pleading after learning during discovery that Cleo Communications LLC had been engaged for relevant technical services. In his amended complaint, Perrong asserted TCPA claims against Rep. Bradford and Cleo.

Cleo moved to dismiss, asserting failure to state a claim. The district court granted the motion in part, dismissing two claims but allowing one claim, Count 1, to proceed. Perrong and Cleo later settled.

What then remained of Perrong's case was one claim that Rep. Bradford, acting in his individual capacity, violated the TCPA by placing five pre-recorded calls. The court ultimately allowed Perrong over 6 months to develop facts supporting that claim in discovery. Perrong served Rep. Bradford with two sets of written discovery. Rep. Bradford timely responded and produced all responsive, non-privileged items within his custody and control, ultimately producing over 1,600 pages and 5 audio files. Perrong also deposed Rep. Bradford and a senior communications manager.

Rep. Bradford then moved for summary judgment, asserting there is no genuine dispute that (1) the calls were in the conduct of official Commonwealth business, (2) Rep. Bradford does not qualify as a "person" under the TCPA, (3) Rep. Bradford is protected by sovereign immunity, and (4) Rep. Bradford is protected by qualified immunity.

The district court denied the motion, and Rep. Bradford immediately appealed to challenge the denial of his immunity claims.

Identify the issues to be raised on appeal:

1. Did the district court err in denying Representative Bradford's motion for summary judgment on the basis of sovereign immunity?

2. Did the district court err in denying Representative Bradford's motion for summary judgment on the basis of qualified immunity?

(Rep. Bradford reserves the right to raise additional issues at any potential later stages of this case, including but not limited to whether the district court erred in finding Representative Bradford qualifies as a "person" under the TCPA.)

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this ___31st___ day of ___May___,20__24__.

## /s/ Karl S. Myers

Signature of Counsel

Rev. 07/2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ANDREW R. PERRONG**, | **Case No. 2:23-cv-00510-JDW** |
| *Plaintiff,* | |
| v. | |
| **MATTHEW BRADFORD,** | |
| *Defendant.* | |

## **MEMORANDUM**

When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line."[1] If you call people who haven't opted in, then you face liability under the Telephone Consumer Protection Act. Andrew Perrong never agreed to have calls made to his cellphone, but he received five calls that Pennsylvania Rep. Matthew Bradford directed, so Mr. Perrong sued. Rep. Matthew Bradford asks me to hold that the TCPA doesn't apply to state legislators like him. But the law distinguishes between lawsuits against government officials in their personal and official capacities, and Mr. Perrong asserts claims against Rep. Bradford in his personal capacity. In that capacity, Rep. Bradford is not exempt or immune from liability, so he must face the claims in this case.

---

[1] Blondie, *Call Me*, *on* American Gigolo (Polydor 1980).

## I.   BACKGROUND

### A.   Factual History

Rep. Bradford is a member of the Pennsylvania House of Representatives Democratic Caucus. When a member of the Democratic Caucus prepares an event for constituents, he or she may rely on robocalls to get the word out about the event. The House Communications Office uses the services of Cleo Communications, US, LLC to make the robocalls to constituents. The Democratic Caucus pays for the calls from a shared budget. The individual legislator does not pay for them. There is a process that state representatives must go through before the robocalls are made.

When a member of the Democratic Caucus wants to make a robocall to spread the word about an event or opportunity, the member uses a calendar system to put in a request with the House Communications Office. The Communications Office reviews the request with House Legal and Ethics to make sure that the underlying event has "a clear legislative purpose and public benefit." (ECF No. 45-3 at 27:11-13.) For example, the system is meant to promote events like senior fairs where Pennsylvania seniors can learn about government programs or services that may be of interest to them. Once the event is vetted, a staffer in the House Communications Office drafts a script describing the event, provides it to the legislator's office, and coordinates with the legislator's office as to the specifics of the call. The legislator records the audio for the call and uploads it to a website. The House Communications Office provides the audio to Cleo to make the actual calls.

Using his prerecorded voice, Rep. Bradford directed five calls to Mr. Perrong. Rep. Bradford testified that the calls and underlying events were meant to connect his constituents "to important government services that are available in [the] community." (ECF No. 45-2 at 10:6-11.) For example, on September 20, 2019, the call stated:

> Bring the family and enjoy the zoo. Free food, fun activities and much more! Hi, I'm State Representative Matt Bradford and I'm hosting a Family Fair for residents of the 70th district on Wednesday September 25th from 5:30pm to 7pm at the Elmwood Park Zoo. Located at 1661 Harding Boulevard in Norristown. Because space is limited, you must RSVP with your name, address and number of people attending. You can RSVP by emailing me at repbradford@pahouse.net or calling my office at 610-222-3490. That's 610-222-3490. I'm Matt Bradford and I hope to see on September 25th.

(ECF No. 45-1 at page 2 of 3.) This call was designed to invite constituents to an annual event where they could learn about services from non-profits and other government service providers.

On October 10, 2019, the call stated:

> I want to help protect your identity and get rid of those old documents taking up space. Hi, I'm State Representative Matt Bradford and I'm hosting a free document shredding event on Saturday October 12th from 9am to 1pm or until the truck is full. Come join us in the parking lot of Paul Fly Elementary School located at 2920 Potshop Road in East Norriton. Only paper items will be allowed. No electronics or trash. Bring up to three boxes of your personal documents to be safely and securely shredded onsite. For more information, please call my office at 610-222-3490. That's 610-222-3490. I'm Matt Bradford and I hope to see you on October 12th.

(ECF No. 45-1 at page 2 of 3.) This call was meant to connect with constituents by inviting them to shred confidential documents to avoid identity theft.

3

On December 30, 2020, the call stated:

I want to help you connect to the health care coverage plan that best fits you and your family. Hello, this is State Representative [Matthew Bradford]. Join me on Tuesday, January 5, for a virtual information session on Pennie, the new way to connect Pennsylvanians to health care coverage. This event will focus on often underserved and overlooked communities, so please spread the word. Featuring representatives from Pennie and the NAACP of Greater Norristown, the virtual event will start at 6:30 PM Tuesday, January 5. You can reserve your spot and find out more by visiting my website at repbradford.com. You can also call my office from more information by dialing 610-222-3490. That's 610-222-3490. This is State Representative Matt Bradford. Let's get connected on January 5.

(ECF No. 45-1 at page 2 of 3.) Rep. Bradford hosted this event with the local chapter of the NAACP in an effort to make his constituents aware that health insurance was available for purchase on the state-level marketplace.

On January 31, 2020, the call stated:

This is a great opportunity to support our community. You can apply to become a part of the 2020 census team and earn 27 dollars an hour. Hi, this is State Representative Matt Bradford. I'm collaborating with the Norristown Area Census Office and the Norristown Complete Count Committee to host a census recruitment event tomorrow, Saturday February 1st from 10 am to 1pm at Norristown Borough Hall 235 East Airy Street in Norristown. You can apply to become a part of the 2020 census team and earn 27 dollars an hour working to help make sure that everyone in our community is counted. In addition to great pay, the hours are flexible, and you're paid for training. For more information, please call my office at 610-222-3490. I'm Matt Bradford and hope you can make it tomorrow to Norristown Borough Hall from 10am to 1pm.

(ECF No. 45-1 at page 3 of 3.) Rep. Bradford made this call to alert constituents about an employment opportunity with the federal government during the 2020 census.

On April 17, 2020, the call stated:

> My staff and I are here to serve as Pennsylvanians do their duty to slow the spread of COVID-19. Hi, this is State Representative Matt Bradford. Pennsylvania remains under a stay-at-home order and though my physical office is closed, my staff and I continue to work remotely to serve you. We can assist with questions on unemployment compensation, resources for small businesses and help you access government services during a time when many physical offices have closed to the public. For the latest on COVID-19, visit the Health Department website at Health.pa.gov. As always, call my office at 610-222- 3490 or email repbradford@pahouse.net with any questions. We will get back to you as soon as possible. That number again is 610-222-3490. This is State Representative Matt Bradford. Please - stay home. Stay safe and stop the spread.

(ECF No. 45-1 at page 3 of 3.) Rep. Bradford made this call to remind his constituents that constituent services would still be available to them even though his physical office was closed during the COVID-19 pandemic. Rep. Bradford did not make any of these calls for emergency purposes, and Mr. Perrong maintains that he did not give his prior consent to receiving them.[2]

## B.    Procedural History

On February 8, 2023, Mr. Perrong sued Rep. Bradford, alleging violations of the TCPA and the Pennsylvania Telemarketer Registration Act ("TRA"). I dismissed Mr. Perrong's claims under the TRA with prejudice. I also ruled that to the extent he intended to, Mr. Perrong could not maintain a claim against Rep. Bradford in his official capacity

---

[2]    Though Mr. Perrong did not cite any actual evidence demonstrating this fact (only the allegations in his Amended Complaint), he would be able to present admissible evidence at trial via his own testimony. And, in any event, Rep. Bradford did not move for summary judgment on this issue.

because such a claim would amount to a claim against the Commonwealth of Pennsylvania, which is entitled to sovereign immunity.

Mr. Perrong filed an Amended Complaint and added Cleo as a defendant. He asserted claims against Rep. Bradford and Cleo for violating the TCPA by (1) making calls using a prerecorded message (Count One); and (2) making calls with an automatic telephone dialing system ("ATDS") (Count Two). Mr. Perrong also alleged that Rep. Bradford and Cleo violated the TCPA's implementing regulations by (1) making five telemarketing calls to Mr. Perrong's phone number, which is on the Do-Not-Call registry; (2) failing to have a written Do-Not-Call policy; and (3) failing to maintain Mr. Perrong on a Do-Not-Call list (Count Three).

Cleo moved to dismiss Mr. Perrong's claims against it. I granted Cleo's motion in part, explaining that Mr. Perrong could not maintain his claims based on the use of an ATDS or his claims under the TCPA's regulations.[3] Thereafter, Mr. Perrong settled his remaining claim against Cleo.

On December 15, 2023, Rep. Bradford moved for summary judgment as to Mr. Perrong's claims arising under Section 227(b)(1)(A) of the TCPA, and I permitted the

---

[3]     Though I dismissed those claims as against Cleo only, my reasoning applies to the same claims asserted against Rep. Bradford as well. However, Rep. Bradford did not seek dismissal of those claims after I ruled on Cleo's motion, and he has not moved for summary judgment on them either. Therefore, as a technical matter, they remain live in the case. However, I will provide Mr. Perrong an opportunity to explain why I should not dismiss those claims from this matter, to the extent he is still pursuing them.

Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives to file a brief in support of Rep. Bradford's motion as *amici*. The motion is ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B). If he fails to make this showing, then the court may "consider the fact undisputed for purposes of the motion" and/or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2), (3).

III.    **DISCUSSION**

A.    **TCPA Liability**

The TCPA makes it "unlawful for any ***person*** within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ...  an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). For purposes of the Communications Act, which includes the TCPA, a "person" "includes an individual, partnership, association, joint-stock company, trust, or corporation" "unless the context otherwise requires." 47 U.S.C. § 153(39). A person who causes someone else to make a call on his behalf can face liability under the TCPA under common law principles of agency. *See Campbell-Ewald v. Gomez*, 577 U.S. 153, 168 (2016); *see also In re Joint Petition Filed By Dish Netowrk LLC*, 28 FCC Rcd. 6574 (2013).

The parties don't dispute that someone made five calls to Mr. Perrong's cellphone using Rep. Bradford's prerecorded voice. There doesn't seem to be a dispute, at least for purposes of this motion, that Rep. Bradford caused the House Communications Office to make the calls at issue in this case. What's left is to ensure that Rep. Bradford is a person under the statute. He is.

"Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

8

"Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quotation omitted). Courts treat official capacity suits as a "suit against the entity," rather than the person who occupies the office. *See id.* at 166. Thus, defendants in official capacity claims can assert sovereign immunity as a defense. *See id.* at 167. "But sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) (quoting *Hafer*, 502 U.S. at 30-31).

Mr. Perrong has sued Rep. Bradford in his personal capacity. Rep. Bradford seems to contend otherwise based on the fact that his conduct was connected to his professional position. And his *amici* make much of the fact that he made the challenged phone calls in accordance with internal House procedures and ethical guidelines, as part of fulfilling constituent services as a Pennsylvania legislator. But "[i]t does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity." *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991). Instead, I must determine who is the real party in interest: the sovereign (i.e. the Commonwealth); or the individual (i.e. Rep. Bradford). "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 581 U.S. at 162. That is because "[t]he critical inquiry is who may be

legally bound by the court's adverse judgment[.]" *Id.* at 165. In this case, I have little trouble concluding that Rep. Bradford is the real party in interest.[4]

While Mr. Perrong's Amended Complaint is silent on the issue, he listed Rep. Bradford's personal address rather than his office address and seeks damages and injunctive relief against him personally. Mr. Perrong did not name Rep. Bradford as a defendant due to his official position; he did so because of Rep. Bradford's personal actions in directing the challenged phone calls. The fact that Rep. Bradford may have been acting within the scope of his role as a state legislator when he made the calls does not make this an official capacity suit. *See, e.g.*, *Melo*, 912 F.2d at 636; *Pennachietti v. Mansfield*, No. 17-cv-2582, 2017 WL 6311646, at *3 (E.D. Pa. Dec. 11, 2017); *Ali v. McClinton*, No. 16-cv-6373, 2017 WL 2588425, at *3 (E.D. Pa. June 14, 2017).

At the same time, there is no indication that the Commonwealth of Pennsylvania or the Pennsylvania House of Representatives is the real party in interest. Rep. Bradford does not suggest that a state law or regulation required him to make the challenged calls or that he made these calls on behalf of the Commonwealth. On the contrary, the evidence demonstrates that state representatives must apply for permission to make such calls and that they do so on an individual basis, with some seeking to do so more often than others.

---

[4]     Rep. Bradford points me to an unpublished decision from the Ninth Circuit that holds that sovereign immunity applies to personal capacity claims against legislators under the TCPA. *See Cheng v. Speier*, No. 22-16170, 2023 WL 4490352 (9th Cir. July 12, 2023). I have reviewed that case, and I respectfully disagree with it. Instead, I find Judge Bress's dissenting opinion to be more persuasive.

Finally, as for the critical inquiry, any adverse judgment against Rep. Bradford would not bind the Commonwealth. The fact that individual state representatives might read this decision and stop using prerecorded calls to reach their constituents is not the same as *requiring* the Commonwealth to change its own operations or procedures. And, of course, state legislators can still make robocalls to their constituents, as long as they ensure that the calls only go to those who have opted to receive them.

In his individual capacity, there's little question that Rep. Bradford is a "person" under the TCPA because he's an individual. He argues otherwise, but his arguments all focus on the idea that the definition of "person" does not extend to a sovereign. He's right, but the argument misses the point. Mr. Perrong couldn't pursue an official capacity claim against Rep. Bradford. (I held that when I ruled on Rep. Bradford's motion to dismiss. (ECF No. 11 at ¶ 3.)) But none of his arguments accounts for the distinction between an official capacity suit and a personal capacity suit. And a "government official in the role of personal-capacity defendant [like Rep. Bradford] ... fits comfortably within the statutory term 'person.'" *Hafer*, 502 U.S. at 27 (interpreting definition of "person" in context of 42 U.S.C. § 1983).

The same distinction means that Rep. Bradford's reliance on the FCC's decision in *In re Broadnet Teleservices LLC* is misplaced. That decision determined that a "state government caller making calls in the conduct of official government business is not a 'person' subject to" the TCPA. 35 FCC Rcd. 15052 ¶¶ 13, 22-28 (2020). The FCC based its

decision on the longstanding understanding that the word "person" in a statute excludes "the sovereign unless articulated otherwise." *Id.* at ¶ 53 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) and *Wilson v. Omaha Tribe*, 552 U.S. 653, 667 (1979)). That principle means that the TCPA does not reach official-capacity claims against state officials because those are claims against the sovereign. And it also means that *Broadnet* has nothing to say about personal capacity claims because those are not claims against the sovereign.

### B.   Qualified Immunity

Because Mr. Perrong has sued Rep. Bradford in his individual capacity, Rep. Bradford cannot rely on sovereign immunity to escape liability. *See Lewis*, 581 U.S. at 163 (quotation omitted). However, he "may be able to assert *personal* immunity defenses[.]" *Id.* (original emphasis) (citation omitted). For example, legislators like Rep. Bradford may rely on legislative and/or qualified immunity, where appropriate. *See HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 189 (3d Cir. 2021) (citations omitted). Rep. Bradford contends that he is entitled to qualified immunity.

### 1.   Qualified immunity and the TCPA

Neither party has addressed the threshold issue of whether qualified immunity is available as a defense under the TCPA, and the Third Circuit has not confronted this issue. However, I conclude that governmental officials may assert qualified immunity when defending against TCPA claims.

"'[Q]ualified immunity' shields governmental officials from suit and from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (quotation omitted). This defense is designed to balance two competing interests— "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (same).

In *Mack*, the Third Circuit determined that this defense is available to claims under the Religious Freedom Restoration Act of 1993 ("RFRA"). *See id.* at 226-27. That decision provides useful guidance. Like RFRA, the TCPA makes no mention of qualified immunity. Instead, liability under Section 227(b)(1)(A) appears mandatory unless the defendant made the challenged call for emergency purposes or with the called party's consent. In addition, the fact that the TCPA provides for statutory damages suggests that qualified immunity is an available defense for government officials. Indeed, "Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts." *Mack*, 63 F.4th at 222 (quotation omitted). Like RFRA, by the time Congress enacted the TCPA in 1991, the Supreme Court "understood the common law [since] 1871 to provide most officials a qualified immunity from liability for their actions." *Id.* at 223. In other words, "Congress enacted [the TCPA] against a 'legal backdrop,' in which state and federal officials sued for

13

violating the Constitution, and state officials sued for violating federal law, could invoke qualified immunity as a defense. Qualified immunity 'represent[ed] the norm' when it came to suits against public officials." *Id.* (quotations omitted). Thus, I can "presume that Congress drafted [the TCPA] mindful of and consistent with that status quo." *Id.*

This decision is in line with the current legal landscape, as well. Because the considerations underlying the doctrine of qualified immunity "are present regardless of the cause of action against the official, qualified immunity 'represents the norm' in suits against public officials." *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 814 (10th Cir. 2022) (quotation omitted). As a result, "many circuits have applied qualified immunity to individual-capacity suits under a variety of statutes," including statutes like the TCPA that prohibit acts by government officials and non-government officials alike.[5] *Mack*, 63 F.4th at 224 (quotation omitted). Given all this, I am convinced that qualified immunity is an available defense under the TCPA.

---

[5]     *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (42 U.S.C. § 1985(3)); *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (Family and Medical Leave Act); *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290 (11th Cir. 1998) (Fair Housing Act); *Cullinan v. Abramson*, 128 F.3d 301, 303 (6th Cir. 1997) (Racketeer Influenced and Corrupt Organizations Act); *Torcasio v. Murray*, 57 F.3d 1340, 1343 (4th Cir. 1995) (Rehabilitation Act and the Americans with Disabilities Act); *Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d 569, 572 (D.C. Cir. 1983) (Title VI of the Civil Rights Act of 1964 and the Crime Control Act of 1973).

### 2. Rep. Bradford violated Mr. Perrong's clearly established rights

Though Rep. Bradford can rely on the doctrine of qualified immunity, it does not shield him from liability in this case. Determining whether a government official is entitled to qualified immunity involves a two-prong inquiry. The first prong requires me to consider whether—in the light most favorable to Mr. Perrong—the facts show that Rep. Bradford violated a statutory right. *See Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). The second requires me to consider "whether the right was clearly established, such that 'it would [have been] clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Id.* (quotation omitted). As the party asserting this affirmative defense, Rep. Bradford "bears the burden of persuasion on both prongs at summary judgment." *Mack*, 63 F.4th at 227 (citation omitted).

Taken in the light most favorable to Mr. Perrong, there's no question that he received calls that violated the TCPA. Each of the calls came to his cellphone without his consent and played a message using Rep. Bradford's prerecorded voice.

As to the clearly-established prong, Rep. Bradford is entitled to summary judgment only if he satisfies the burden of demonstrating "that reasonable [officials] could not have known that their actions violated clearly established law." *Mack*, 63 F.4th at 228 (citation omitted). This, too, is a two-step inquiry. First, I must "'define the right allegedly violated at the appropriate level of specificity' and then 'ask whether that right was clearly established at the time of its alleged violation.'" *Id.* (quotation omitted). To address "the

15

crucial question whether the official acted reasonably in the particular circumstances that he or she faced[,]" the Supreme Court has "repeatedly stressed" that courts must define the right with "a high 'degree of specificity.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). Mr. Perrong's framing of the right to be free from "annoying" calls is untethered to the statutory text. (ECF No. 51 at 21.) Instead, the relevant right is the right that 47 U.S.C. § 227(b)(1)(A)(iii) creates: the right not to receive calls from persons (as the statute defines that term) that use an automatic dialing system or a prerecorded voice. I can rely on the statute to define the right because it's a specific pronouncement from Congress, rather than a broad Constitutional principle, and because the right is in a specific subparagraph of a statutory section. At that level of granularity, the right does not need more definition.

The right that Section 227(b)(1)(A)(iii) creates is clearly established. The statutory text is not ambiguous. And the Third Circuit has focused on the language of the statutory text to emphasize the provision's reach. *See, e.g., Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013); *Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017). Rep. Bradford argues that the law is not clearly established because there is no factually analogous Supreme Court precedent, binding opinions from the Third Circuit, or a "robust consensus of cases of persuasive authority in the Courts of Appeals." *Peroza-Benitez*, 994 F.3d at 165 (quotation omitted). But a "right may be 'clearly established' even without a 'precise factual correspondence between the case at issue and a previous case." *Id.* at 166 (quotation omitted). A "public official does not get the benefit of 'one liability-free

violation' simply because the circumstance of his case is not identical to that of a prior case." *Id.* (quotation omitted). In cases involving constitutional violations, the constitutional principles at play are often broad, which makes finding analogous factual cases particularly important because "we cannot expect [government] officials to anticipate the evolution of constitutional law[.]" *People of Three Mile Island Through Three Mile Island Alert, Inc. v. Nuclear Regul. Comm'rs*, 747 F.2d 139, 145 (3d Cir. 1984). But we can—and do—expect government officials to adhere to clear statutory prohibitions, and they don't have to wait for a case to come along to know that a statute prohibits certain conduct.

Rep. Bradford argues that a state legislator would not have known that the TCPA applied to him. But there's no reason why that's so. The TCPA applies to "individuals," of which Rep. Bradford is obviously one. Although the FCC has concluded that the TCPA does not apply to a state government, an individual legislator is not the government, nor does he act for the government when he exercises his discretion and makes individual decisions to publicize events to his constituents. And the distinction between an official capacity suit, which allows a legislator to claim sovereign immunity, and an individual capacity suit, which does not, has been clearly established for decades. *See, e.g.*, *Graham*, 473 U.S. at 165 (decided in 1985). Rep. Bradford might have made a mistake about the TCPA's application to him, but it was not because of a lack of legal clarity about the possibility that he could be liable.

## IV.     CONCLUSION

"Only the written word is the law[.]" *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020). In this case, that written word is the TCPA, and it could not be clearer that it applies to all calls that any individual makes using a prerecorded voice, including an individual serving as a state legislator. And it would have been clear to a reasonable state legislator that the TCPA applied, so Rep. Bradford has not shown that he is entitled to qualified immunity. I will therefore deny his motion for summary judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 13, 2024

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW R. PERRONG**, | **Case No. 2:23-cv-00510-JDW** |
| *Plaintiff,* | |
| v. | |
| **MATTHEW BRADFORD,** | |
| *Defendant.* | |

## ORDER

**AND NOW**, this 13th day of May, 2024, upon consideration of the Motion For Summary Judgment Of Representative Matthew Bradford (ECF No. 43), and for the reasons set forth in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

It is **FURTHER ORDERED** that on or before May 27, 2024, Andrew Perrong shall either (1) file a notice of dismissal as to Counts 2 and 3 of his Amended Complaint, or (2) show cause in a memorandum, not to exceed 10 pages, why I should not dismiss those claims for the same reasons I dismissed them against Cleo Communications, US, LLC in my prior Memorandum and Order (ECF Nos. 39-40).

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.