# In the United States Court of Appeals for the Third Circuit

No. 24-1925

ANDREW R. PERRONG

*v.*

MATTHEW BRADFORD;
CLEO COMMUNICATIONS

Matthew Bradford,
*Appellant*

On appeal from the United States District Court, Eastern District of Pennsylvania, at No. 23-510 (Hon. Joshua D. Wolson)

## OPENING BRIEF OF APPELLANT, MATTHEW BRADFORD, MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES AND REPRESENTATIVE FOR THE 70TH LEGISLATIVE DISTRICT

Karl S. Myers (Pa. No. 90307)
Paige C. Hogan (Pa. No. 331749)
STEVENS & LEE
555 City Avenue, Suite 1170
Bala Cynwyd, PA 19004
(215) 751-2864
karl.myers@stevenslee.com
paige.hogan@stevenslee.com

Counsel for appellant,
Representative Matthew Bradford

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUES PRESENTED........................................................5

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................6

CONCISE STATEMENT OF THE CASE ............................................................7

    A.    Introduction ...........................................................................7

    B.    The Pennsylvania House of Representatives has a recorded calling system for Representatives to share information about government programs and services with constituents...........................9

    C.    Perrong sues over five calls to Representative Bradford's constituents about government programs and services.......................12

    D.    The district court gives Perrong the opportunity to seek evidence that Representative Bradford acted in his individual capacity—but Perrong finds none .........................................................15

    E.    The district court reverses course, allowing Perrong to proceed to trial based solely on an unstated allegation of individual capacity lacking any evidentiary support .............................................17

    F.    Representative Bradford appeals to this Court ....................................21

SUMMARY OF THE ARGUMENT ......................................................................22

STANDARD OF REVIEW .....................................................................................25

ARGUMENT ...........................................................................................................27

    A.    Sovereign immunity protects Representative Bradford for recorded public service calls made through the House of Representatives system .......................................................................27

1. Sovereign immunity covers state legislators like Representative Bradford ...........................................................27

2. Federal courts have already held that sovereign immunity protects government officials from individual-capacity TCPA claims ...............................................................29

3. There is no factual dispute that Representative Bradford acted exclusively in his official capacity and that the House is the real party in interest..............................................32

4. The district court did not require Perrong to point to a genuine, material factual dispute—and thus did not properly apply the summary judgment standard......................35

5. The district court erroneously found Representative Bradford—not the House—the real party in interest...............39

B. Qualified immunity shields Representative Bradford for recorded calls to constituents about government programs and services for their benefit .......................................................42

1. Qualified immunity safeguards officials for well-intended acts; only incompetent, knowing violators are punished for violating "clearly established" rights ..................................42

2. The right Perrong claims is not "clearly established" because the TCPA does not prohibit the calls here .................44

3. The district court's qualified immunity analysis is wrong in nearly every respect ............................................................48

CONCLUSION ...................................................................53

# TABLE OF AUTHORITIES

**Page**

## Federal Court Decisions

*Ali v. McClinton,*
   2017 WL 2588425 (E.D. Pa. 2017) ....................................................38

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) .........................................................................25

*Benn v. First Jud. Dist. of Pa.,*
   426 F.3d 233 (3d Cir. 2005) ..................................................27, 28, 40

*Bradley v. W. Chester Univ.,*
   880 F.3d 643 (3d Cir. 2018) ............................................................25

*Brumfield v. Sanders,*
   232 F.3d 376 (3d Cir. 2000) ......................................................29, 41

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016) .................................................................31, 32

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................26

*Chavarriaga v. N.J. Dep't of Corr.,*
   806 F.3d 210 (3d Cir. 2015) .....................................................25, 26, 36

*Cheng v. Speier,*
   2023 WL 4490352 (9th Cir. 2023) ...........................................*passim*

*Cheng v. Speier,*
   609 F. Supp. 3d 1046 (N.D. Cal. 2022) ....................................*passim*

*Chevron v. Natural Res. Def. Council,*
   467 U.S. 837 (1984) ........................................................................47

*Constantine v. N.J. Dep't of Banking & Ins.,*
   2024 WL 1988829 (3d Cir. 2024) ....................................................27

*Cunningham v. Lester*,
990 F.3d 361 (4th Cir. 2021) .......................................................*passim*

*Daubert v. NRA Group, LLC*,
861 F.3d 382 (3d Cir. 2017) .............................................................51

*District of Columbia v. Wesby*,
583 U.S. 48 (2018)..............................................................42, 44, 51

*Doe v. Abington Friends Sch.*,
480 F.3d 252 (3d Cir. 2007) .......................................................25, 39

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010) .................................................................46

*Gager v. Dell Financial Services, LLC*,
727 F.3d 265 (3d Cir. 2013) ..............................................................51

*Guidotti v. Legal Helpers Debt Resol.*,
716 F.3d 764 (3d Cir. 2013) .......................................................26, 36

*HIRA Educ. Servs. N. Am. v. Augustine*,
991 F.3d 180 (3d Cir. 2021) .......................................................*passim*

*James v. N.J. State Police*,
957 F.3d 165 (3d Cir. 2020) .......................................................43, 45

*Johnson v. Townsend*,
314 Fed. Appx. 436 (3d Cir. 2008)..............................................29, 35

*Kadonsky v. N.J.*,
188 Fed. Appx. 81 (3d Cir. 2006)......................................................36

*Karns v. Shanahan*,
879 F.3d 504 (3d Cir. 2018) ..............................................................25

*Levys v. Shamlin*,
808 Fed. Appx. 97 (3d Cir. 2020)................................................25, 35

*Lewis v. Clarke*,
581 U.S. 155 (2017)......................................................................36, 39

*Liggins-McCoy v. Pa. Senate Democratic Caucus*,
  2023 WL 8451224 (3d Cir. 2023) ...................................................28

*Lombardo v. Pa. Dep't of Pub. Welfare*,
  540 F.3d 190 (3d Cir. 2008) ...................................................2, 27

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024)...................................................47

*Mack v. Yost*,
  968 F.3d 311 (3d Cir. 2020) ...................................................3

*Mack v. Yost*,
  63 F.4th 211 (3d Cir. 2023) ...................................................51

*Maliandi v. Montclair State Univ.*,
  845 F.3d 77 (3d Cir. 2016) ...................................................2

*Mammaro v. N.J. Div. of Child Prot. & Permanency*,
  814 F.3d 164 (3d Cir. 2016) ...................................................42

*McDonald-Witherspoon v. City of Phila.*,
  2021 WL 6101246 (3d Cir. 2021) ...................................................36, 41

*Melo v. Hafer*,
  912 F.2d 628 (3d Cir. 1990) ...................................................37

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)...................................................3

*In re Montgomery County*,
  215 F.3d 367 (3d Cir. 2000) ...................................................4

*Pearson v. Callahan*,
  555 U.S. 223 (2009)...................................................42

*Peck v. U.S. Dep't of Labor*,
  996 F.3d 224 (4th Cir. 2021) ...................................................46

*Pennachietti v. Mansfield*,
  2017 WL 6311646 (E.D. Pa. 2017) ...................................................38

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ..........................................................................*passim*

*People of Three Mile Island v. Nuclear Regulatory Comm'rs*,
   747 F.2d 139 (3d Cir. 1984) ...............................................................43

*Perrong v. Charlie for Governor*,
   2024 WL 919837 (E.D. Pa. 2024) .......................................................12

*Perrong v. Chase Data Corp.*,
   2024 WL 329933 (E.D. Pa. 2024) .......................................................12

*Perrong v. Montgomery County Democratic Comm.*,
   No. 23-2415, 2024 WL 1651274 (3d Cir. 2024) ...................................12

*Pleasure Island v. City of N.Y.*,
   2013 WL 2311837 (E.D.N.Y. 2013) ....................................................27

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*,
   506 U.S. 139 (1993) .............................................................................2

*Reichle v. Howards*,
   566 U.S. 658 (2012) ...........................................................................43

*Return Mail v. USPS*,
   587 U.S. 618 (2019) .....................................................................45, 47

*Rivera v. Redfern*,
   98 F.4th 419 (3d Cir. 2024) .....................................................25, 44, 51

*Rothman v. N.J. Dep't of Labor & Workforce Dev't*,
   848 Fed. Appx. 532 (3d Cir. 2021) .....................................................28

*Rush v. City of Phila.*,
   78 F.4th 610 (3d Cir. 2023) ..............................................................3, 4

*Saucier v. Katz*,
   533 U.S. 194 (2001) ...........................................................................44

*Sivella v. Twp. of Lyndhurst*,
   2021 WL 3356934 (3d Cir. 2021) ..................................................43, 45

*Summerville v. Fuentes*,
  2021 WL 4129563 (3d Cir. 2021) .......................................................3

*Tornheim v. N.Y. State Senate*,
  115 Fed. Appx. 482 (2d Cir. 2004)...................................................27

*Tsosie v. Dunbar*,
  504 Fed. Appx. 75 (3d Cir. 2012).....................................................36

*U.S. v. Fox*,
  94 U.S. 315 (1876)............................................................................46

*Vermont Agency of Natural Resources v. Stevens*,
  529 U.S. 765 (2000).............................................................46, 47, 48

*Veverka v. Royal Caribbean Cruises Ltd.*,
  649 Fed. Appx. 162 (3d Cir. 2016)..................................................35

*Waterfront Comm'n v. Governor of N.J.*,
  961 F.3d 234 (3d Cir. 2020) ................................................28, 34, 40

*Woodring v. Turzai*,
  2020 WL 2512978 (M.D. Pa. 2020) .................................................29

*Wright-Gottshall v. N.J.*,
  2024 WL 1826421 (3d Cir. 2024) ....................................................52

*Zaloga v. Borough of Moosic*,
  841 F.3d 170 (3d Cir. 2016) .......................................................42, 43

## State Court Decisions

*Battle v. Phila. Housing Auth.*,
  594 A.2d 769 (Pa. Super. 1991) .......................................................28

*DeVito v. Wolf*,
  227 A.3d 872 (Pa. 2020)...................................................................34

*Finn v. Rendell*,
  990 A.2d 100 (Pa. Commw. 2010)...................................................29

*Marshall v. Port Auth. of Allegheny County*,
  568 A.2d 931 (Pa. 1990) ..................................................................28

*Precision Mktg. v. Pa. Senate Republican Caucus*,
  78 A.3d 667 (Pa. Commw. 2013) ..............................................10, 29

## State Constitutions

PA. CONST. art. I, §11 ......................................................................28

PA. CONST. art. II, §1 .........................................................................9

PA. CONST. art. II, §16.......................................................................9

PA. CONST. art. II, §17......................................................................34

## Federal Legislative Materials

Telephone Consumer Protection Act,
  47 U.S.C. §227 ...........................................................................*passim*

28 U.S.C. §1291 ........................................................................1, 2, 3

28 U.S.C. §1331 ..................................................................................1

## State Legislative Materials

Pennsylvania Act 42 of 2019, P.L. 294 (July 2, 2019)
  (codified at 40 P.S. §9301 to §9314) ..............................................33

Pennsylvania Act 1A of 2024, S.B. 1001 (July 11, 2024)........................9

24 P.S. §25-2502.53 .........................................................................34

53 P.S. §4000.1501 ..........................................................................34

72 P.S. §9122 ...................................................................................34

73 P.S. §400.2303 ............................................................................34

1 Pa.C.S. §2310.................................................................................28

3 Pa.C.S. §10502...............................................................................34

24 Pa.C.S. §9302...............................................................................34

42 Pa.C.S. §102.................................................................................28

Pennsylvania House Rule 14 ...............................................................9

**Federal Rules**

Fed.R.Civ.P. 56 .....................................................................25, 26, 39

**Federal Agency Materials**

*In re: Alliant Fin.*,
    2024 WL 2316149 (FCC May 20, 2024).............................................7

*In re: Broadnet Teleservices LLC*,
    35 FCC Rcd. 15052 (2020)...............................................................47

*In re: Sumco Panama SA*,
    38 FCC Rcd. 7235 (FCC Aug. 3, 2023) .............................................7

*In re: U.S. Dep't of Health & Human Servs.*,
    38 FCC Rcd. 404 (2023)...................................................................47

*In re: Urth Access*,
    37 FCC Rcd. 14133 (FCC Dec. 8, 2022).............................................7

*U.S. v. Yodel Techs.*,
    2023 WL 4687493 (FTC 2023) .........................................................7

**Other**

RESTATEMENT (SECOND) OF AGENCY ..............................................29, 41

## STATEMENT OF JURISDICTION

Plaintiff-appellee, Andrew Perrong, invoked the district court's federal question jurisdiction under 28 U.S.C. §1331. (A36 ¶6, A115 ¶7.)[1]  He asserted claims for relief under federal statutes and regulations. (A45-A49, A126-A129.)

This Court has appellate jurisdiction under 28 U.S.C. §1291. On May 13, 2024, the district court conclusively denied the assertions of sovereign immunity and qualified immunity by defendant-appellant, Representative Matthew Bradford. (A12-15, A18-A20.)  The district court's decision is final and thus immediately appealable, as a matter of right, under the collateral order doctrine. Representative Bradford timely appealed on May 16, 2024. (A1-3.)

This Court has already tested appellate jurisdiction. When this appeal was docketed, the Court ordered the parties to make written submissions on the issue. (App. Doc. 4.)  Both complied. (App. Docs. 10 & 11.)  The Court then issued an order declining to refer the case for possible dismissal. (App. Doc. 14.)

That order was correct. As Representative Bradford explained in his submission, this Court has appellate jurisdiction under the collateral order doctrine

---

[1] References to the Joint Appendix are formatted "(A_.)."  Direct citations to the district court record are formatted "(Doc. _.)."  Citations to this Court's docket are formatted "(App. Doc. _.)."

to consider Representative Bradford's challenges to the district court's denials of his claims to sovereign immunity and qualified immunity. (App. Doc. 11.)

*First*, as for sovereign immunity, controlling decisions of the Supreme Court and this Court uniformly hold that district court denials of that protection are immediately appealable as of right under the collateral order doctrine. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 143-47 (1993) (holding district court denial of sovereign or Eleventh Amendment immunity immediately appealable under the collateral order doctrine); *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 82 (3d Cir. 2016) (holding same; district court's denial held "immediately appealable under the collateral order doctrine, imbuing us with jurisdiction under 28 U.S.C. §1291"); *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 193 (3d Cir. 2008) (holding same; "Defendants appeal from the District Court's order denying a claim of sovereign immunity by the Department, a state agency. We have subject matter jurisdiction under 28 U.S.C. §1291, as such orders are immediately appealable under the collateral order doctrine.").

Here, the district court unequivocally denied Representative Bradford's claim to sovereign immunity on legal grounds. (A12-A15.) It ruled that "Rep. Bradford cannot rely on sovereign immunity to escape liability." (A15.) Representative Bradford has an immediate right to appeal that decision.

*Second*, as for qualified immunity, controlling decisions of the Supreme Court and this Court uniformly hold that district court denials of that defense turning on questions of law are immediately appealable as of right under the collateral order doctrine.  *See Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985) ("we hold that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. §1291 notwithstanding the absence of a final judgment"); *Rush v. City of Phila.*, 78 F.4th 610, 615-16 (3d Cir. 2023) (holding this Court had appellate jurisdiction over an appeal from a denial of qualified immunity on legal grounds; "the second prong of the [qualified immunity] analysis—whether the conduct violated clearly established law—relates to the independent issue of immunity and may be determined separately from the merits"); *Summerville v. Fuentes*, 2021 WL 4129563, *2 (3d Cir. 2021) (holding same; "A denial of qualified immunity—to the extent it is premised on an issue of law—is immediately reviewable on appeal under the collateral order doctrine."); *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020) (holding same; "Under the collateral order doctrine, we have jurisdiction to review a district court's denial of summary judgment where the defendants asserted a defense under qualified immunity to the extent that it turns on an issue of law." (cleaned up)).

As this Court has explained, in this context, generally speaking, "the relevant issue of law is whether the right the defendant is alleged to have violated was 'clearly established' at the time the defendant acted or failed to act." *In re Montgomery County*, 215 F.3d 367, 374 (3d Cir. 2000); *see also Rush*, 78 F.4th at 615-16 (stating same). That was the basis for the district court's ruling here. Its analysis falls under the heading "Rep. Bradford violated Mr. Perrong's clearly established rights." (A18.) In that discussion, the court denied Representative Bradford qualified immunity because "[t]he right that Section 227(b)(1)(A)(iii) [of the Telephone Consumer Protection Act] creates is clearly established." (A19.) That was the reason the district court denied Representative Bradford qualified immunity. (A20.)

The district court's denial of qualified immunity was exclusively on a legal ground. Representative Bradford has an immediate right to appeal that decision.

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1. Did the district court erroneously deny Pennsylvania State Representative Matthew Bradford sovereign immunity for five recorded public service telephone calls through a House of Representatives system notifying constituents about government programs and services for their benefit?

2. Did the district court incorrectly deny Representative Bradford qualified immunity because the five calls here did not violate a clearly established right, given a state government actor like him is not a "person" subject to Telephone Consumer Protection Act liability?[2]

---

[2] Representative Bradford raised and preserved these issues in the district court, including in his motion to dismiss, answer to the complaint, answer to the amended complaint, and motion for summary judgment. (A50-A63, A112-A113, A151-A152, A192-A209, A268-A269, A518-A535.) The district court ruled on these issues in its order and memorandum denying summary judgment. (A4-A22.)

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

None.

## CONCISE STATEMENT OF THE CASE

### A.    Introduction

*"We've been trying to reach you concerning your car's extended warranty."*[3] *"You've been preselected for our economic relief personal loan because of your current financial situation."*[4] *"Hello, this is to inform you that the Student Loan payment suspension has been extended to December 31 of this year."*[5]

We all get harassing robocalls. Telemarketers are constantly after us to buy things. Scammers are always out to defraud us. Everyone (including the undersigned and their client) wishes these pesky calls would just stop.[6]

This case is not about that.

This dispute is over a handful of occasional public service telephone calls sponsored and paid for by a state government entity—the Pennsylvania House of Representatives. It set up and funded a system to enable Representatives to let the people of Pennsylvania know about available government programs and services

---

[3] *In re: Sumco Panama SA*, 38 FCC Rcd. 7235, ¶15 (FCC Aug. 3, 2023).

[4] *In re: Alliant Fin.*, 2024 WL 2316149, *2 (FCC May 20, 2024).

[5] *In re: Urth Access*, 37 FCC Rcd. 14133, ¶13 (FCC Dec. 8, 2022).

[6] *See, e.g.*, *U.S. v. Yodel Techs.*, 2023 WL 4687493, ¶¶2-4 (FTC 2023) (describing consumers' dislike of telemarketers' data harvesting and robocalling).

they might find useful.  The calls are typical communications that state legislators make to the constituents they serve and the people expect to receive from their elected officials.  They are not commercial telemarketing solicitations.  They instead seek to provide the public with government benefits and assistance.

Matthew Bradford, the House Majority Leader and Representative for the 70th Legislative District, voiced five of these calls to constituents in 2019 and 2020.  Occurring about once every three months, the calls shared information about government programs and services, including the Pennie state health insurance program, help available during the early days of the pandemic, and the Census.  The calls were meant to benefit Representative Bradford's constituents.

Andrew Perrong responded to these calls by suing.  He asserted Representative Bradford violated the Telephone Consumer Protection Act.

The district court initially suggested Representative Bradford may be protected by governmental immunity.  But the court allowed the case past the pleadings stage to give Perrong the opportunity to develop facts showing Representative Bradford acted in his individual or personal capacity.

After months of exhaustive discovery efforts, Perrong uncovered no evidence that Representative Bradford ever did anything here in his individual capacity.  Representative Bradford thus moved for summary judgment.  But the

district court, in an about-face, denied Representative Bradford both sovereign immunity and qualified immunity. The court in effect ruled that government officials never have these immunity protections for any recorded calls.

As shown below, the district court's ruling was based on several mistakes about the procedural posture of the case and principles of immunity law. Representative Bradford thus appealed, and now asks this Court to reverse the district court and remand for entry of judgment in his favor.

### B.    The Pennsylvania House of Representatives has a recorded calling system for Representatives to share information <u>about government programs and services with constituents.</u>

Pennsylvania's legislature is the General Assembly. It is made up of two chambers, the House of Representatives and Senate.[7] The people are represented by 203 Representatives and 50 Senators, each serving one legislative district.[8] Legislators serve constituents from Capitol offices and district offices in the 253 legislative districts across the Commonwealth.[9] For his part, Representative

---

[7] *See* PA. CONST. art. II, §1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

[8] *See* PA. CONST. art. II, §16 (requiring the Commonwealth to be divided into 203 House and 50 Senate districts, each represented by one legislator).

[9] *See, e.g.*, Act 1A of 2024, S.B. 1001, §262 (July 11, 2024) (appropriations for House operations); Pa. House Rule 14 (authorizing district office funding).

Bradford has an office in the Capitol and legislative district offices in Norristown and Cedars in Montgomery County.[10]  Like every legislator, he offers constituents his services and assistance through these district offices.[11]

To help legislators reach constituents, each of the House's and Senate's four caucuses maintains a recorded calling system.[12]  Representative Bradford is a member of the House Democratic Caucus.  The Caucus pays a government contractor for its calling system.  (A375 #3, A385 #12, A299:1-4., A349:8-16.)  System equipment is in the State Capitol in Harrisburg.  (A321:2-23.)

House funds are used to place the calls.  Individual legislators like Representative Bradford are not billed, and pay nothing personally.  (A299:1-4, A361:24-A362:9, A385 #12.)  The House also pays for the events described in the calls.  (A299:5-11.)  Legislators pay nothing personally for the events, either.

---

[10] https://www.legis.state.pa.us/cfdocs/legis/home/member_information/house_bio.cfm?id=1161

[11] https://www.pahouse.com/Bradford/Help-Services/Constituent-Services/.  As the district court acknowledged, "[c]onstituent service and things like that I think fall within a broad ambit of what a legislator does."  (A164.)

[12] House and Senate operations are organized by caucus based on the two major political party affiliations.  (A307:3-11); *Precision Mktg. v. Pa. Senate Republican Caucus*, 78 A.3d 667, 671-75 (Pa. Commw. 2013).

The calls are scripted and arranged by House employees in legislators' offices and House employees working in the Legislative Communications Office. (A313:10-A315:22, 347:10-20, 354:3-25, A375 #4.)  All call scripts are reviewed by senior House employees.  (A355:10-25.)  Questionable call requests undergo House Legal and Ethics review to ensure compliance.  (A319:8-A320:1, A354:3-A355:14, A292:16-A293:16, A361:14-20.)  All the people involved in this review process are House employees based in Harrisburg.  (A293:2-4 & 13-16.)

All calls using this government system are intended to inform constituents and connect them with available government services.  (A299:14-17.)  All calls must comply with a set standard: every call must have a legitimate legislative purpose and public benefit.  (A322:3-13, A313:13-14, A361:19-20, & A367:4-9, A374-A375 #3.)  Examples of compliant calls include those letting senior citizens know about property tax rebates and senior fairs.  (A322:22-A323:5.)

If a proposed call does not meet the above standard, then the request is rejected and the call is not placed.  Calls lacking an official legislative purpose "are never sent."  Requests to make them are "refused and that's it."  (A323:10-A324:19.)  For example, a former legislator once asked for a call congratulating the President on the passage of a federal law.  The request was denied and the call was never placed.  (A324:21-A325:8.)

- 11 -

For his part, Representative Bradford could not recall a single instance when he was denied a call request.  (A293:17-22.)  He thus understood that all the calls placed using his voice had a legitimate legislative purpose.  No evidence suggests that any of the calls here were made without a legitimate legislative purpose.

### C.   Perrong sues over five calls to Representative Bradford's constituents about government programs and services.

Andrew Perrong[13] sued Representative Bradford in February 2023 over five calls through the above system using a recording of his voice.  (A29, A35-A49.)  Perrong alleged the calls violated the Telephone Consumer Protection Act ("TCPA") and state law.  (A45-A48.)  Perrong served Representative Bradford by dispatching a process server to his home, not any of his several offices.  (Doc. 5.)

Perrong's pleading did not state whether Perrong sued Representative Bradford in his individual capacity or his official capacity.  (A35-A49.)  It did, however, identify Representative Bradford as a "member of the Pennsylvania House of Representatives."  (A35 ¶2, A36 ¶5, A38 ¶19.)

---

[13] Perrong is a frequent *pro se* TCPA litigant who recently became an attorney. *See, e.g.*, *Perrong v. Montgomery County Democratic Comm.*, No. 23-2415, 2024 WL 1651274 (3d Cir. 2024) (affirming dismissal of Perrong TCPA action); *Perrong v. Charlie for Governor*, 2024 WL 919837 (E.D. Pa. 2024) (entering summary judgment against Perrong in TCPA action); *Perrong v. Chase Data Corp.*, 2024 WL 329933 (E.D. Pa. 2024) (dismissing Perrong TCPA complaint).

The five calls Perrong complained about were placed over a 15-month period in 2019 and 2020, or about one every three months.  (A283-A284.)  Each recording lasted less than one minute.  In every one, Representative Bradford identified himself as a Pennsylvania State Representative.  He invited call recipients to sign up or respond by calling his House district office in Cedars or emailing his official House email address.

The five calls shared information with constituents about government programs and services.  Representative Bradford explained that they were "about connecting all of my constituents to important government services that are available in our community."  (A290:7-11.)  The calls were for the following:

- An information session about the Pennie state government health insurance program, featuring presenters from the state government.  (A283.)  This call's purpose was to make constituents aware of the availability of the state level health insurance marketplace.[14]  (A292:10-15.)

- Assistance and government resources available during the early days of the pandemic.  (A284.)  This included access to small businesses resources, unemployment compensation, and other

---

[14] The district court described this call as "not touting particular services" and instead "touting an opportunity to learn about an exchange."  (A186-A187.)  It was "informational, rather than telemarking or solicitation."  (*Id.*)

- 13 -

help while offices were physically closed.  (*Id.*)  This call was meant to remind constituents that, despite office closures, Representative Bradford's constituent services were still available over the telephone and electronically.  (A290:24-A291:5.)

- Notification of a government employment opportunity to work on the 2020 Census to ensure all constituents are counted. (A284.)  Representative Bradford stated during the call that he was working with the U.S. Census office in Norristown to help with its recruiting efforts.  (*Id.*)  This call was to assist with sufficient staffing, given difficulties the Census Bureau had with securing employees during the height of the pandemic.  (A291:9-14.)

- Inviting constituents to a shredding event.  (A283.)  This was meant to benefit constituents by protecting their confidential information and shield them from identity theft.  (A292:3-6.)

- Inviting constituents to a family fair at a local zoo. (A283.)  This call's purpose was to deliver services to constituents by inviting them to an event where they could be connected with government service providers and nonprofits.  (A291:18-23.)

Representative Bradford testified that these calls were made solely in his official capacity as a State Representative.  (A297:10-14.)  He affirmed that the calls were within his official duties.  (A386 #13.)  None were in his individual or personal capacity.  (A297:6-9, A384 #7.)

- 14 -

Representative Bradford also swore that he had no ulterior motive for the calls. He did not intend them to benefit his election prospects. He did not make the recordings for political purposes. And he was not trying to generate campaign contributions or political support. (A294:4-A295:3.) The calls instead were meant only to provide constituents with services in his capacity as a State Representative.

**D.    The district court gives Perrong the opportunity to seek evidence that Representative Bradford acted in his individual capacity—but Perrong finds none.**

Representative Bradford, through attorneys employed by the House, moved to dismiss on immunity and other grounds. (A50-A73.) The district court determined Representative Bradford is entitled to immunity for official capacity acts. (A24-A25 ¶¶3-4.) The court noted, however, that Perrong had not alleged if he was suing Representative Bradford in his individual or official capacity. (A24 ¶3.) The court thus found it could not determine if the calls were placed as part of official business or for another reason, like for a re-election campaign. The court determined it needed details, including about how the calls were financed and whether they were made from an office number. (A27 ¶8.)

Perrong later amended his pleading to add Cleo Communications as a defendant after learning during discovery that the House had contracted with an outside company for the calling system. In his amended complaint, Perrong asserted three TCPA-based claims. But Perrong still did not allege Representative

Bradford's capacity.  (A114-A130.)  He instead continued to identify Representative Bradford only as a "member of the Pennsylvania House of Representatives."  (A114 ¶2, A115 ¶5, A118 ¶20.)

Cleo moved to dismiss, asserting Perrong failed to state a TCPA claim.  (Doc. 29.)  The court dismissed two claims, but allowed the TCPA claim in Count 1 to proceed.  (A177-A188.)  Perrong and Cleo later settled.  (Doc. 42.)

In sum, after the district court's rulings and Cleo settlement, what remained of Perrong's action was one claim that Representative Bradford, acting in his individual or personal capacity, violated the TCPA.  The court allowed Perrong the opportunity to develop facts supporting that claim in discovery.

During discovery, Perrong served Representative Bradford with two sets of written discovery and took two depositions.  Representative Bradford timely responded to the written discovery.  (A371-A402.)  He also produced all responsive, non-privileged items he had, ultimately handing over 1,600 pages and 5 audio files.  After paper and electronic discovery, Perrong deposed Representative Bradford and Robert Caton, Senior Manager for Communications and Messaging for the House Democratic Caucus.  (A286-A369.)  Undersigned counsel also appeared during discovery after their engagement by the House.

The Court ultimately gave Perrong more than six months to develop facts supporting his individual-capacity TCPA claim against Representative Bradford. (Doc. 41.)

**E.    The district court reverses course, allowing Perrong to proceed to trial based solely on an unstated allegation of individual capacity lacking any evidentiary support.**

Once discovery was complete, the district court had the information it said it needed. The developed facts, recited above, showed that Representative Bradford did nothing in his personal capacity. It all pointed the other way: everything was in his official capacity as a State Representative. Since there was no factual dispute, Representative Bradford moved for summary judgment. (A189-A191.) In support, he filed a 15-page brief, a 67-page fact statement, and over 200 pages of exhibits. (A192-A517.) He later filed a 14-page reply brief. (A518-A535.)

Representative Bradford requested judgment on four independent grounds. (A195-A208, A522-A534.) *First*, responding to the court's desire for a developed factual record, Representative Bradford explained how discovery had revealed that he acted solely in his official capacity. (A199-A205.) *Second*, he asserted that he is not a "person" under the TPCA. This is because "person" "does not include the sovereign" under a settled Supreme Court rule of statutory interpretation. (A205-A206, A524-A526.) *Third*, Representative Bradford maintained that he is shielded by sovereign immunity because the evidence generated in discovery showed the

House is the real party in interest.  (A206-A207, A533.)  *Fourth*, he requested judgment on the basis of qualified immunity because Perrong did not have a "clearly established" right not to receive recorded calls about government services from state officials like Representative Bradford.  (A207-A208, A533-A534.)

In response, Perrong did not point to admissible evidence produced in discovery to show a dispute of material fact.  (Doc. 51.)  He mainly focused on legal issues, including regulatory guidance and immunity law.  (*Id.*)

The district court denied Representative Bradford's motion.  (A4-A22.)  It made few references to the court's earlier request for a developed factual record.  The court did not analyze Perrong's burden to show a genuine dispute of material fact in response to the motion.  It thus did not mention Perrong's failure to point to admissible evidence of personal capacity that could allow the case past summary judgment.  The court mostly eschewed the parties' adversarial submissions.

The district court's recitation of the factual history inflated Representative Bradford's involvement.  The court stated that a Representative "uses a calendar system" to request a recorded call.  (A5.)  But House employees do that.  (A313.)  The court said that a Representative "uploads [a recording] to a website."  (A5.)  House employees do that, too.  (A314, A346.)  The court also declared that Representative Bradford "made" calls here and "directed five calls to Mr.

Perrong." (A4, A6, A7, A8.) Again, House staff members, not Representative Bradford, made and directed the calls here. And these House employees direct calls to a general list of constituents, not specific people. (A132, A314-A315.)

The district court ruled for Perrong based on what he alleged in his complaint, thus treating Representative Bradford's summary judgment motion as a motion to dismiss. Because Perrong "asserts claims against Rep. Bradford in his personal capacity," that was all it took to deny summary judgment.[15] (A4.) The court's analysis also relied on decisions made at the motion to dismiss stage.

The district court began its discussion by finding Representative Bradford a "person" under the TCPA. (A11.) The court made no mention here of the Supreme Court's holding that "person" in a statute does not include a sovereign.

Next, the court decided Perrong could avoid sovereign immunity simply because he "has sued Rep. Bradford in his personal capacity." (A12.) It declared: "Because Mr. Perrong has sued Rep. Bradford in his individual capacity, Rep. Bradford cannot rely on sovereign immunity to escape liability." (A15.) The court

---

[15] To its credit, the district court wisely ignored Perrong's attempt to create a material issue of fact based on his inadmissible opinions and misleading questioning of the witnesses. (A530-A532.)

thus ruled in Perrong's favor based on what Perrong had alleged—not because Perrong had pointed to evidence showing a genuine dispute over a material fact.

The court also chose to overlook Perrong's "silence" on capacity, even though he had two chances to allege it. (A13.) The court inferred an individual-capacity allegation in Perrong's pleading because he had listed Representative Bradford's home address in the caption of the complaint. (*Id.*) The court similarly found Perrong was seeking damages from Representative Bradford personally. (*Id.*) Perrong's pleading does not actually seek that relief. (A49, A129.)

The district court next asserted there was "no indication" that the House is the real party in interest. (A13.) The court did not discuss any of the thorough, uniform evidence giving every indication of just that. It did admit, however, that "state representatives might read this decision and stop using prerecorded calls to reach their constituents." (A14.) The court also maintained that the House could be interested only if recorded calls were "required" of Representatives. (A13-A14.) The court cited no authority for this limit on immunity.

Lastly, the district court denied Representative Bradford qualified immunity. (A18-A20.) The court found the right Perrong asserted was "clearly established" based solely on the TCPA's text. (A19.) The court stated Representative Bradford had "no reason" to think the TCPA inapplicable to him. (A20.) The court did not

address here the Supreme Court's exclusion of the government from "person."

Nor did the court address the effect of another court of appeals' holding that

legislators who make recorded calls are not subject to TCPA liability.  The district

court also did not consider the finding of the Federal Communications Commission

("FCC") that the TCPA is inapplicable to state actors like Representative Bradford.

### F.    Representative Bradford appeals to this Court.

Representative Bradford immediately appealed to this Court.  (A1-A3.)  The

Court ordered the parties to address appellate jurisdiction.  (App. Doc. 4.)  For his

part, Representative Bradford explained why the collateral order doctrine gives

him an immediate right to appeal the district court's denials of sovereign immunity

and qualified immunity.  (App. Doc. 11.)  This Court then issued an order

declining to refer the case for possible dismissal.  (App. Doc. 14.)

Representative Bradford now timely files this merits brief and asks the Court

to reverse the district court's immunity rulings and remand for entry of judgment in

Representative Bradford's favor.

## SUMMARY OF THE ARGUMENT

The Pennsylvania House of Representatives uses a recorded calling system so legislators can share public service messages with constituents about government programs and services for their benefit.  The calls are customary interactions that legislators have with the people they are elected to serve and the taxpayers expect to receive.  These calls are good faith attempts to assist the public.  They are neither commercial telemarketing solicitations nor scams.

The district court held that these calls violate the Telephone Consumer Protection Act ("TCPA").  It imposed personal liability on the state legislators who voice them.  The court's startling holding is unprecedented—and wrong.

The district court's decision resulted from several errors.  The main one was a mistake about the case's posture.  The court had directed the parties to develop a factual record to see if there was any evidence Representative Bradford acted in his individual capacity.  Discovery revealed none.  The district court denied summary judgment anyway.  It found implicit personal-capacity allegations in Perrong's complaint, alone, entitled him to a trial.  This made the factual record the district court had asked for—and the civil rules required it to consider—wholly irrelevant.

The next set of district court errors relate to sovereign immunity.  It incorrectly found Representative Bradford the real party in interest based on

technical judgment considerations.  That violated the Supreme Court's directive for courts to consider a judgment's actual impact on the government.  The effect here likely will be to force the House to stop recorded calling altogether, as the district court itself admitted.  The court also restricted sovereign immunity protection to a legislator's "required" duties, but the law does not support that slim reading.

The district court's qualified immunity analysis fares no better.  The right Perrong claims is not "clearly established" by binding precedent or circuit consensus.  The state of the law—which government officials like Representative Bradford rely on—is the opposite.  The Supreme Court has long held that a government actor is not a "person" under laws like the TCPA.  And the only court of appeals to consider Perrong's claimed right found it does not exist.  Taking none of this into account, the district court decided Perrong's right was the general, out-of-context prohibition in the TCPA's text.  The court thus painted the constituent service calls here as no different than commercial harassment by telemarketers.

The district court's steady drumbeat was that Perrong was entitled to a trial just because he alleged Representative Bradford acted in his personal capacity. The net effect of this simplistic view is that it grants plaintiffs an automatic right to trial against federal and state officials in every TCPA case—and likely many others.  In the district court's view, officials across the country can never successfully assert an immunity defense in cases like this one.  Plaintiffs can easily

plead around those protections by alleging individual capacity with just a few keystrokes. That alone is enough to defeat summary judgment.

If the district court's unprecedented opinion holds sway, the House's calling program, and many others, likely will have to be shut down. New, unexpected potential liability will be created for federal and state officials across the country. Any official in a legislative, executive, or judicial branch who records a public service call on almost any topic will be exposed to TCPA liability. The district court's ruling, absent this Court's intervention, will hamstring the government entities we rightly expect to share information with us. Those acutely reliant on telephone communications—like senior citizens, people of less means, and others who lack internet access—may miss important and useful government notices.

Perhaps the decision here was animated by the dislike we all share for the commercial robocalls inflicted on us all the time. Or maybe it was a belief that government officials and entities should not be allowed to make recorded calls. But this is not the place to decide that question. "The proper forum for 'litigating' any such grievances is not a federal courtroom; it is the court of public opinion and the legislative branch." *Cunningham v. Lester*, 990 F.3d 361, 368 (4th Cir. 2021).

For these reasons, detailed below, Representative Bradford asks this Court to reverse the district court and remand for entry of judgment in his favor.

## STANDARD OF REVIEW

This Court does not defer to a district court's summary judgment decisions or immunity rulings. Review is *de novo* or plenary. *Rivera v. Redfern*, 98 F.4th 419, 422 (3d Cir. 2024); *Bradley v. W. Chester Univ.*, 880 F.3d 643, 650 (3d Cir. 2018); *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018). This Court uses the same summary judgment standard as the district court. *Karns*, 879 F.3d at 512.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" only if a reasonable jury could find for the non-movant on that issue. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)). A dispute is "material" if it could affect the outcome. *Bradley*, 880 F.3d at 650 (citing *Anderson*, 477 U.S. at 248, 252).

The party opposing summary judgment "cannot simply rest on his complaint." *Levys v. Shamlin*, 808 Fed. Appx. 97, 100 (3d Cir. 2020). Nor can he "merely deny the allegations in the moving party's pleadings." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). He "must do more than simply show that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218 (citation omitted).

A summary judgment opponent instead "must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial." *Chavarriaga*, 806 F.3d at 218 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986)).  He must cite to specific factual evidence developed in discovery, including depositions, documents, and interrogatory answers. *Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing Fed.R.Civ.P. 56(c)(1)(A)).

# ARGUMENT

**A.    Sovereign immunity protects Representative Bradford for recorded public service calls made through the House of Representatives system.**

This Court should reverse the district court because there is no genuine dispute as to any material fact that Representative Bradford is entitled to judgment as a matter of law on the issue of sovereign immunity.

**1.    Sovereign immunity covers state legislators like Representative Bradford.**

Sovereign immunity is made up of two distinct protections.  One is Eleventh Amendment immunity, which protects states from citizen lawsuits in federal court.  The other is state sovereign immunity, which protects a state from liability. *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008).

"The Supreme Court has consistently held that the Eleventh Amendment immunizes an unconsenting state from suits brought in federal court by its own citizens as well as by citizens of another state." *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 238 (3d Cir. 2005).  This protection also "shields subunits of the state," like state agencies and officers. *Constantine v. N.J. Dep't of Banking & Ins.*, 2024 WL 1988829, *2 (3d Cir. 2024).  That includes state legislative bodies and individual state legislators. *Tornheim v. N.Y. State Senate*, 115 Fed. Appx. 482, 483 (2d Cir. 2004); *Pleasure Island v. City of N.Y.*, 2013 WL 2311837, *5

(E.D.N.Y. 2013). This Court has applied the Eleventh Amendment to a wide variety of Pennsylvania entities. *See Benn*, 426 F.3d at 239 (collecting cases). It recently did so for the Pennsylvania Senate's Democratic Caucus. *Liggins-McCoy v. Pa. Senate Democratic Caucus*, 2023 WL 8451224, *2 (3d Cir. 2023).

The Eleventh Amendment protects state officials when the state is the real party in interest, no matter how the plaintiff pleads the claim. *Rothman v. N.J. Dep't of Labor & Workforce Dev't*, 848 Fed. Appx. 532, 533 (3d Cir. 2021). "Real, substantive" party interest is determined by the "effect of the relief sought" and whether it would "operate against" the state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02, 107 (1984); *Waterfront Comm'n v. Governor of N.J.*, 961 F.3d 234, 238-39 (3d Cir. 2020).

As for state sovereign immunity, the Pennsylvania Constitution states that suits "may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." PA. CONST. art. I, §11. The Legislature has asserted sovereign immunity for the Commonwealth "and its officials and employees acting within the scope of their duties" absent a specific legislative waiver. 1 Pa.C.S. §2310. This covers the branches of government, agencies, and other bodies. *See* 42 Pa.C.S. §102 (definition of "Commonwealth government"); *Marshall v. Port Auth. of Allegheny County*, 568 A.2d 931, 933-34 (Pa. 1990) (holding a port authority covered by sovereign immunity); *Battle v.*

*Phila. Housing Auth.*, 594 A.2d 769, 771 (Pa. Super. 1991) (same; housing

authority).  That includes the General Assembly, House, Senate, caucuses, and

individual legislators.  *Finn v. Rendell*, 990 A.2d 100, 105-06 (Pa. Commw. 2010);

*Precision Mktg. v. Pa. Senate Republican Caucus*, 78 A.3d 667, 671-75 (Pa.

Commw. 2013); *Woodring v. Turzai*, 2020 WL 2512978, *6-*7 (M.D. Pa. 2020).

A Pennsylvania official acts within the scope of his duties—and thus is

entitled to sovereign immunity—if the conduct: (1) is of a kind he is employed to

perform; (2) occurs substantially within authorized time and space limits; and (3) is

at least partly inspired by a purpose to serve the employer.  *Johnson v. Townsend*,

314 Fed. Appx. 436, 439-40 (3d Cir. 2008) (quoting *Brumfield v. Sanders*, 232

F.3d 376, 380 (3d Cir. 2000) and RESTATEMENT (SECOND) OF AGENCY §228).

### 2.     Federal courts have already held that sovereign immunity protects government officials from individual-capacity TCPA claims.

Courts rarely address sovereign immunity in this context.  That could be

because most would think the TCPA is not supposed to punish the government's

public service calls.  The few decisions that do exist hold that sovereign immunity

protects officials from individual-capacity TCPA claims.

In *Cunningham v. Lester*, 990 F.3d 361 (4th Cir. 2021), the plaintiff sued

three officials in the Department of Health and Human Services under the TCPA

for recorded calls notifying the public about health insurance coverage under the Affordable Care Act. He sued the officials "solely in their individual capacities" and "requested only monetary relief." *Id.* at 364. The district court dismissed on sovereign immunity grounds, finding the government the real party in interest. *Id.*

The court of appeals affirmed. It began by explaining that interested party jurisprudence reflects "a general refusal to privilege the form of a complaint over its substance." *Id.* at 365. Supreme Court precedent, including *Pennhurst*, requires realistic consideration of the "effect" of the relief sought. *Id.* at 366. The *Pennhurst* lawsuit, for example, was ostensibly against officials, but its practical impact would have meant closure and creation of state institutions. *Id.* Finding the plaintiffs there sought relief solely against the officials "would make the law a pretense." *Id.* at 366 (quoting *Pennhurst*). The Supreme Court thus "disavows" such "formalism." *Id.* at 366-67. The exercise is far more probing than simply "noting the caption and the type of remedy sought." *Id.* at 367 (cleaned up).

The court of appeals reasoned that although a "money judgment would nominally fall on the [agency officials] alone, remaining tethered to reality—as *Pennhurst* requires—means that we cannot avert our eyes from the effects that such a judgment will have on the State." *Id.* Imposing money judgments on the officials would effectively prevent the agency from using "tools and techniques" to help it carry out its function. *Id.* at 367-68. The sovereign immunity the agency is

supposed to have would become "a practical nullity." *Id.* at 368 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).

Allowing plaintiffs to "to sidestep the substantive focus of sovereign immunity doctrine through the subterfuge of artful pleading would open the door to repeat plays, in which the same pleading tactics are used, again and again, to hamstring other government agencies." *Id.* at 368. Agencies would become "vulnerable to attack" by litigants who would artfully plead and reduce "sovereign immunity writ large" to nothing. *Id.* Officials "would be swept up in endless suits for damages for nothing more than doing their jobs." *Id.* at 363.

The year after *Cunningham*, another federal court held sovereign immunity applied in circumstances nearly identical to those here. In *Cheng v. Speier*, 609 F. Supp. 3d 1046 (N.D. Cal. 2022), the plaintiff sued a member of the U.S. House of Representatives under the TCPA over five recorded calls she voiced that invited constituents to town hall events. *Id.* at 1049-50. The plaintiff asserted both individual and official capacity on the Representative's part. *Id.* at 1049.

The court dismissed the plaintiff's TCPA action. As to individual capacity, the court held sovereign immunity applied because the government, not the Representative, was the real party in interest. This was because "constituent communications and town halls are part of Congresswoman Speier's job duties"

and nothing suggested the calls were "made for a private purpose." *Id.* at 1054.

The court also found the relief sought was actually against the U.S. House because,

if granted, it "would alter how all members of Congress communicate with their

constituents and lead to a change in the allocation of funding for reimbursements."

*Id.* at 1054-55 (citing *Cunningham*).

As for official capacity, the court dismissed the claim because the Supreme

Court had determined that the federal government (of which the House and Senate

are indisputably part) is protected from TCPA liability by sovereign immunity.[16]

*Id.* at 1051-52 (citing *Campbell-Ewald*).

> **3.    There is no factual dispute that Representative
> Bradford acted exclusively in his official capacity
> and that the House is the real party in interest.**

The above principles, applied to the facts here, show that Representative

Bradford is covered by sovereign immunity in this case.

The undisputed facts, detailed in the Concise Statement of the Case,

establish that the House's recorded calling system is used solely for the public

purpose of serving legislative constituents.  It enables Representatives to reach the

---

[16] The court of appeals later affirmed in *Cheng* because the TCPA did not apply to
the Representative in the first place, as she did not qualify as a "person" under that
law.  2023 WL 4490352, *1.  That decision is discussed below.

community about government programs and services.  The House contracted with

and paid a contractor for the calling system.  The House also pays for the events

discussed in the calls.  System equipment is in the Capitol in Harrisburg.  All calls

are organized, scripted, approved or rejected, and placed by House personnel.  All

calls must have an official legislative purpose.  Put simply, this program is

exclusively the House's responsibility, through and through.

Representative Bradford's involvement was limited to reading House-

prepared scripts.[17]  Each time, Representative Bradford identified himself as a

Pennsylvania State Representative.  He mentioned no other capacity.  He gave his

House district office telephone number and email address.  He did not offer

personal contact information.  The calls notified constituents only about

government programs and services.  None mentioned anything private.

Several calls even had a direct connection to legislative enactments.  One

related to the Pennsylvania state health insurance exchange created in 2019.  *See*

Act 42 of 2019, P.L. 294 (July 2, 2019) (codified at 40 P.S. §9301 to §9314).

---

[17] As detailed in the Concise Statement of the Case, the district court's factual
narrative incorrectly suggests much more.  It insinuates Representative Bradford
personally used the House calendar system to request the calls, uploaded the call
recordings to a website, made the calls, and directed them to Perrong.  Discovery
revealed that House employees performed these tasks, not Representative
Bradford.  The district court's account could lead the reader to think
Representative Bradford had far more involvement here than he did.

Another was for available government resources during the pandemic after offices were ordered closed under legislative acts. *See generally DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020) (considering scope of closure-order authority under the Emergency Code, Disease Act, and Administrative Code). Yet another related to the Census. It determines Pennsylvania's U.S. House delegation and legislative district borders. *See* PA. CONST. art. II, §17 (providing for legislative reapportionment commission). Dozens of Pennsylvania statutes also depend on Census data. *See, e.g.*, 24 P.S. §25-2502.53 (school funding); 73 P.S. §400.2303 (industrial development grants); 53 P.S. §4000.1501 (municipal recycling programs); 3 Pa.C.S. §10502 (agriculture grants); 24 Pa.C.S. §9302 (public libraries); 72 P.S. §9122 (farmland valuation).

Sovereign immunity applies here. As for the Eleventh Amendment, the "real, substantive" party in interest is the House. This is a House program, from start to finish. The "effect" of the relief Perrong seeks would "operate against" the House. *Pennhurst*, 465 U.S. at 101-02, 107; *Waterfront Comm'n*, 961 F.3d at 238-39. If this Court affirms the district court, the House (not to mention the Senate and the rest of the Commonwealth's government) will have to consider stopping all recorded calls to avoid potential liability. *Cunningham*, 990 F.3d at 365-68; *Cheng*, 609 F. Supp. 3d at 1054-55. Even if the district court's ruling is incorrectly taken as exposing only Representative Bradford to liability, it still affects the House because of indemnity. (A161) (district court recognition that individuals

"acting in the course of their duties" are "frequently being indemnified by the Commonwealth even though they are being sued in their individual capacity").

As for state sovereign immunity, the challenged conduct is of a kind Representative Bradford was elected to perform. As the district court noted, "[c]onstituent service and things like that I think fall within a broad ambit of what a legislator does." (A164); *accord Cheng*, 609 F. Supp. 3d at 1054. There is no debate that the calls were within authorized time and space limits. And they were motivated by a purpose to serve constituents. *Johnson*, 314 Fed. Appx. at 439-40.

### 4. The district court did not require Perrong to point to a genuine, material factual dispute—and thus did not properly apply the summary judgment standard.

All this should have led the district court to find Representative Bradford protected by sovereign immunity. That it did not can be traced to two errors.

The court's chief mistake was that it did not hold Perrong to his summary judgment burden. At that stage of a case, the plaintiff's complaint gets no weight. A plaintiff "cannot create a genuine issue of fact by citing the pleadings." *Veverka v. Royal Caribbean Cruises Ltd.*, 649 Fed. Appx. 162, 168 (3d Cir. 2016). He "cannot simply rest on his complaint" to defeat summary judgment. *Levys v. Shamlin*, 808 Fed. Appx. 97, 100 (3d Cir. 2020). The plaintiff instead "must point to specific factual evidence showing that there is a genuine dispute on a material

issue requiring resolution at trial." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). This includes deposition testimony, produced documents, and interrogatory answers. *Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d Cir. 2013).

A plaintiff's summary judgment rebuttal burden is not relaxed in a sovereign immunity case. If anything, a complaint gets even less weight. As the Supreme Court has instructed, courts "must not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Courts, including this one, routinely find summary judgment proper in sovereign immunity cases like this where the plaintiff fails to show a material dispute of fact. *See, e.g.*, *McDonald-Witherspoon v. City of Phila.*, 2021 WL 6101246, *6 (3d Cir. 2021); *Tsosie v. Dunbar*, 504 Fed. Appx. 75, 77 (3d Cir. 2012); *Kadonsky v. N.J.*, 188 Fed. Appx. 81, 84 (3d Cir. 2006).

It looked as if the district court was going to properly apply these principles. (A24 ¶2) (citing *Lewis*, 581 U.S. at 162). The court said at the motion to dismiss stage that it was allowing Perrong's case to continue only to give him the chance to find evidence of individual capacity. (A24-A25 ¶¶3-4.) The court was unsure if the calls were placed as part of official business or for another reason, like for a re-

election campaign.  (A27 ¶8.)  The court said it wanted facts, including about how the calls were financed and whether they were made from an office number.  (*Id.*)

But then, at summary judgment, the district court ignored the facts it had asked the parties to develop in discovery.  Perrong cited no admissible evidence showing personal capacity that established a material dispute of fact.  The court denied summary judgment anyway.  It decided it did not want a record after all.

The court based its decision solely on Perrong's pleading.  On the first page of its ruling, the court said it was enough that Perrong "asserts claims against Rep. Bradford in his personal capacity."  (A4.)  This, even though the complaint was "silent" on capacity.  (A13.)  The court still decided "Mr. Perrong has sued Rep. Bradford in his personal capacity."  (A12, A15.)  The court discerned this because Perrong "listed Rep. Bradford's personal address rather than his office address and seeks damages and injunctive relief against him personally."  (A13.)  For those reasons, the court concluded Perrong could evade summary judgment, as he "did not name Rep. Bradford as a defendant due to his official position."[18]  (*Id.*)

_____

[18] None of the cases the district court relied on here, decided in other settings of substantive law, support exclusive reliance on a plaintiff's complaint at the summary judgment stage.  *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (observing, in section 1983 due process and First Amendment case, that courts must determine capacity not just by complaints but also the "course of

(footnote continued on next page)

The court's reading was not accurate.  Perrong never alleged individual capacity.  It appears nowhere in the complaint.  He instead alleged Representative Bradford is a "member of the Pennsylvania House of Representatives."  (A35 ¶2, A36 ¶5, A38 ¶19.)  Even after the district court flagged this issue, (A24-A25 ¶¶3-4), Perrong still did not allege individual capacity in his amended complaint.  He instead continued to assert Representative Bradford is a "member of the Pennsylvania House of Representatives."  (A114 ¶2, A115 ¶5, A118 ¶20.)

The same goes for the court's finding that Perrong "seeks damages" against Representative Bradford "personally."  (A13.)  Also incorrect.  Here is Perrong's demand for relief: "Because of Defendant's violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation…."  (A49, A129.)  Perrong did identify Representative Bradford as an alleged TCPA perpetrator.  That much is true.  But Perrong never demanded personal payment; he did not care who paid.

While allowing Perrong to rely exclusively on pleading implications, the district court paradoxically recognized that he could not—because he had to rely

---

proceedings"); *Pennachietti v. Mansfield*, 2017 WL 6311646, *3 (E.D. Pa. 2017) (ruling on a motion to dismiss, not a motion for summary judgment, in a RICO case where the defendant asserted tribal sovereign immunity); *Ali v. McClinton*, 2017 WL 2588425, *3 (E.D. Pa. 2017) (ruling on a motion to dismiss, not a motion for summary judgment, where the plaintiff asserted a whistleblower claim under a statute the court found waived the Commonwealth's sovereign immunity).

on evidence.  The court acknowledged that Perrong had to "show where in the record there exists a genuine dispute over a material fact."  (A10) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)).  It explained that if Perrong "fails to make this showing, then the court may 'consider the fact undisputed for purposes of the motion.'"  (A10) (quoting Fed.R.Civ.P. 56).  And the court pointed out that "courts may not simply rely on the characterization of the parties in the complaint."  (A12) (quoting *Lewis*).  But it did just that.

In summary, the district court did not hold Perrong to his summary judgment or sovereign immunity burdens.  It mentioned, but discarded, those rules.  Neither Perrong nor the court pointed to evidence creating a material issue of fact.  The court instead opted to base its decision solely on a misreading of Perrong's complaint.  The district court thus allowed this case to trial based only on an unstated individual capacity claim lacking a shred of evidentiary support.

### 5.    The district court erroneously found Representative Bradford—not the House—the real party in interest.

The district court's second reversible mistake was its finding that Representative Bradford was the real party in interest.  The court made two contentions, each incorrectly narrowing the House's interest.

*First*, the district court focused on a potential judgment's technical application only to Representative Bradford.  It found that "any adverse judgment

- 39 -

against Rep. Bradford would not bind the Commonwealth." (A14.) This formalism runs headlong into the Supreme Court's *Pennhurst*-based command to focus on real and substantive interests and the operative effect of requested relief. *Pennhurst*, 465 U.S. at 101-02, 107; *Waterfront Comm'n*, 961 F.3d at 238-39; *see also Benn*, 426 F.3d at 239 (rejecting a "formalistic question of ultimate financial liability" (citation omitted)). If Perrong prevails, the House, Senate, and rest of the Commonwealth government must consider stopping all recorded calls that share information with constituents about available programs.[19] *Cunningham*, 990 F.3d at 365-68; *Cheng*, 609 F. Supp. 3d at 1054-55. This is a significant impact on Commonwealth operations. The district court candidly admitted as much, thus proving the point. (A14) ("state representatives might read this decision and stop using prerecorded calls to reach their constituents"). And the people who previously received the calls no longer will get these notices. They may miss out on the chance to benefit from the programs as a result.[20]

---

[19] Plaintiffs likely will use the district court's decision to support enhanced penalties for future calls as willful or knowing violations. 47 U.S.C. §227(b)(3).

[20] The district court's finding also cannot be squared with its acknowledgement of likely indemnity by the House. (A161) (noting that individuals "acting in the course of their duties" are "frequently being indemnified by the Commonwealth even though they are being sued in their individual capacity").

*Second*, the district court found there was "no indication" that either the House is the real party in interest or that recorded calls are "required" of a State Representative. (A13-A14.) The court cited no support. None exists. The court's "no indication" finding fully disregards the factual record, detailed above. The facts show <u>every</u> indication of the House's interest.

The same goes for the court's narrowing of sovereign immunity as covering only an official's "required" duties. That, too, has no support. Sovereign immunity fully applies to officials' permissive and discretionary acts. Only *ultra vires* acts lacking any authorization whatsoever are unprotected. *See Pennhurst*, 465 U.S. at 101 n.11 ("a state officer may be said to act *ultra vires* only when he acts 'without any authority whatever'" (citation omitted); *McDonald-Witherspoon v. City of Phila.*, 2021 WL 6101246, *6 (3d Cir. 2021) (holding sovereign immunity covered probation officers and noting that "[a]ctions that are not expressly authorized by the employer may still be within the scope of employment"); *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000) (holding officers' false statements were within the scope of employment); RESTATEMENT (SECOND) OF AGENCY §230 & §231 (forbidden, criminal, and tortious acts can fall within the scope of employment).

**B.      Qualified immunity shields Representative Bradford
for recorded calls to constituents about government
programs and services for their benefit.**

This Court also should reverse the district court for the independent reason

that there is no genuine dispute as to any material fact that Representative Bradford

is entitled to judgment as a matter of law on the issue of qualified immunity.

**1.      Qualified immunity safeguards officials for well-
intended acts; only incompetent, knowing violators
are punished for violating "clearly established" rights.**

Qualified immunity shields government officials "from harassment,

distraction, and liability when they perform their duties reasonably." *Mammaro v.*

*N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  It is "tilted in favor of shielding

government actors and 'gives ample room for mistaken judgments by protecting all

but the plainly incompetent or those who knowingly violate the law.'" *Zaloga v.*

*Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (citation omitted).

To avoid qualified immunity, a plaintiff must point to a "clearly established"

right that was so apparent that "every reasonable official would understand that

what he is doing is unlawful." *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d

180, 190 (3d Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63

(2018)).  This "ensures that officials can reasonably anticipate when their conduct

may give rise to liability for damages." *Zaloga*, 841 F.3d at 175 (cleaned up; quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

"Existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Reichle*, 566 U.S. at 664 (emphasis in original)); *HIRA*, 991 F.3d at 190.  Officials are not required "to predict the course of the law." *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 148 (3d Cir. 1984).  The claimed right instead must be "derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *James v. N.J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (citation omitted).  "An absence of relevant Supreme Court precedent strongly supports a finding that a particular right is not clearly established." *Sivella v. Twp. of Lyndhurst*, 2021 WL 3356934, *3 (3d Cir. 2021) (emphasis in original).  The lack of Supreme Court or Third Circuit precedent favoring the plaintiff "dooms its case." *HIRA*, 991 F.3d at 191.

This Court uses a two-step inquiry to analyze a qualified immunity claim.

*First*, the Court considers if the plaintiff sufficiently alleged the violation of a right.

*Second*, the Court determines whether the right was "clearly established" when the conduct occurred.  *HIRA*, 991 F.3d at 190.

The Court in turn applies a two-factor test to decide if a right is "clearly established." *Rivera v. Redfern*, 98 F.4th 419, 422 (3d Cir. 2024).

*First*, the right alleged must be defined with a "high degree of specificity." *HIRA*, 991 F.3d at 190-91 (cleaned up; *quoting Wesby*, 583 U.S. at 63). This is done in "the specific context of the case, not as a broad general proposition." *Rivera*, 98 F.4th at 422 (citation omitted). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (citation omitted). A precedential case must "clearly prohibit the official's conduct in the particular circumstances before him." *HIRA*, 991 F.3d at 191 (cleaned up; *quoting Wesby*, 583 U.S. at 63).

*Second*, having defined the "clearly established" right, the Court decides whether it was "sufficiently clear that a reasonable official would understand that what he was doing violated that right." *Rivera*, 98 F.4th at 423 (cleaned up; quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

## 2. The right Perrong claims is not "clearly established" because the TCPA does not prohibit the calls here.

Applying these principles, the right Perrong claims here—properly defined with high specificity—is the right under the TCPA not to receive recorded telephone calls from legislators about government programs and services for

constituent benefit.  Neither Perrong nor the district court cited any decision of the Supreme Court or this Court holding that this right exists.  Nor did they reference a "robust consensus" of other-circuit precedent establishing that right.  *James*, 957 F.3d at 170; *Sivella*, 2021 WL 3356934, *3.  The absence of case authority, standing alone, "dooms" Perrong's case.  *HIRA*, 991 F.3d at 191.

This inability to cite supporting opinions is understandable, as no such decision could exist.  That is because the law is the opposite.  Calls like the ones here do not violate the TCPA; they comply with it.  Perrong's claim of a "clearly established" right cannot even get off the starting line.

To begin, Perrong claims violation of the recorded calling proscription in TCPA section 227(b).  (A126-A127 ¶¶60-61.)  This statute makes it unlawful for a "person" to make a call using a prerecorded voice.  47 U.S.C. §227(b)(1)(B).[21]

Under settled Supreme Court precedent, the statutory term "person" does not include state government officials in cases like this.  The Court has held, time and again, as a matter of statutory construction, that the word "person" in a statute does not include government actors.  *See, e.g.*, *Return Mail v. USPS*, 587 U.S. 618, 626 (2019) (collecting cases on the Court's "longstanding interpretive presumption that

---

[21] This statute also provides for the exemption of a person's "calls that are not made for a commercial purpose."  47 U.S.C. §227(b)(2)(B)(i).

'person' does not include the sovereign"). This interpretive rule "is a storied redwood of nineteenth-century origin." *Peck v. U.S. Dep't of Labor*, 996 F.3d 224, 231 (4th Cir. 2021) (citing *U.S. v. Fox*, 94 U.S. 315, 321 (1876)). Courts presume Congress knew of this interpretation rule when it enacted the TCPA. *See Farina v. Nokia Inc.*, 625 F.3d 97, 112 (3d Cir. 2010) ("Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts." (citation omitted)).

The Supreme Court has applied this rule in circumstances like those here. For instance, in *Vermont Agency of Natural Resources v. Stevens*, 529 U.S. 765 (2000), the Court considered whether an agency of the State of Vermont qualified as a "person" as that word is used in the statutory text of the federal False Claims Act. The Court said "no." It applied "to this text our longstanding interpretive presumption that 'person' does not include the sovereign" and found it "particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." *Id.* at 780-81 (citations omitted). The Court reasoned that this rule "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *Id.* at 781.

The *Vermont Agency* holding has been applied to the meaning of "person" in the TCPA. The FCC applied the Supreme Court's interpretive rule in finding "that a state government caller making calls in the conduct of official government

business is not a 'person' subject to section 227(b)(1) of the TCPA" *In re: Broadnet Teleservices LLC,* 35 FCC Rcd. 15052, ¶13 (2020).  This was because of the Supreme Court's decisions in *Vermont Agency* and *Return Mail*.[22]  *Id.* at ¶¶2, 9, 22-26 & notes 5, 26, 53, 54.  The FCC also noted "that subjecting state governments to the TCPA's prohibitions when conducting official business would significantly constrain their ability to communicate with their citizens." *Id.* at ¶25. The FCC reaffirmed these findings last year.  *In re: U.S. Dep't of Health & Human Servs.*, 38 FCC Rcd. 404, ¶¶18-19 (2023).

What is more, the only court of appeals that has addressed a claim like Perrong's found the right he asserts does not exist.  In *Cheng v. Speier*, 2023 WL 4490352 (9th Cir. 2023), the court considered the plaintiff's appeal after the district court dismissed on sovereign immunity grounds.  609 F. Supp. 3d at 1054-55, 1051-52.  As noted, the plaintiff sued a U.S. House of Representatives member in her individual and official capacities under the TCPA over five recorded calls using her voice inviting constituents to town halls.  *Id.* at 1046, 1049-50.

---

[22] There is no issue of agency deference here.  The FCC applied the Supreme Court's interpretation rule.  It did not attempt to resolve a statutory ambiguity. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (overruling *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984), and holding that courts are not to defer to agency interpretations of ambiguous statutes).

The court of appeals affirmed, but found it unnecessary to reach the immunity issue.  It held the TCPA did not apply to the Representative's calls to begin with.  2023 WL 4490352, *1.  Applying the Supreme Court's *Vermont Agency* ruling, the court of appeals quickly and easily found the Representative did not qualify as a "person" under the TCPA.  *Id.*  It also pointed out the FCC's findings which, as related above, were tied to *Vermont Agency.*  *Id.*

In sum, there is no Supreme Court or Third Circuit precedent holding that the right Perrong claims is "clearly established."  Nor is there a robust consensus of other-circuit precedent finding that right exists.  On the contrary, the Supreme Court has mandated that a "person" does not include state government actors in situations like this one.  The FCC faithfully applied this rule in making that finding specifically as for state officials under the TCPA.  And the only court of appeals that has considered the right Perrong claims would not even give it the time of day.

### 3.    The district court's qualified immunity analysis is wrong in nearly every respect.

All this should have led the district court to find Representative Bradford easily covered by qualified immunity.  Due to a series of errors, it did not.

The basic problem with the district court's analysis is that it did not follow precedential directions from the Supreme Court and this Court.  As explained, to find for Perrong, the district court had to rely on a Supreme Court, Third Circuit, or

other-circuit-consensus holding that the context-specific right he is claiming exists. The district court never pointed to any such decisional authority.

The district court also omitted from its qualified immunity analysis any discussion of the Supreme Court's binding rule about the meaning of "person" and the FCC's ensuing application of it to the TCPA. The court instead only mentioned this rule in its sovereign immunity analysis.[23] (A14-A15.) The district court thus overlooked how the exclusion of state actors from the concept of "person" might impact the qualified immunity analysis by negating the right that Perrong claims as "clearly established."

The court made an identical mistake in its treatment of *Cheng*—the only appellate decision on Perrong's claimed right. The court of appeals judges who decided *Cheng* are "reasonable officials," of course, and they found legislators' recorded calls lawful. *See HIRA*, 991 F.3d at 190 (explaining that clearly established rights are those so apparent that "every reasonable official would understand that what he is doing is unlawful"). *Cheng* alone should have caused the district court to find qualified immunity here. But it never mentioned *Cheng* in its qualified immunity analysis. It instead dropped a footnote on it in the sovereign

---

[23] And there, the court gave this longstanding Supreme Court statutory interpretation rule the back of the hand by calling it just an "idea." (A14.)

immunity narrative.  (A13 n.4.)  That footnote also suggests the district court did not understand what *Cheng* actually decided, as the court mischaracterized the court of appeals as deciding the appeal on sovereign immunity grounds.  (*Id.*)  And the district court said only that it "disagreed" with *Cheng* and found the dissent there "more persuasive."  (*Id.*)  It did not explain why.[24]

In short, the district court did not consider in its qualified immunity analysis: (1) the lack of a binding decision or circuit consensus supporting Perrong's claimed right; (2) the Supreme Court's "person" rule; (3) the FCC's specific application of that rule to protect state officials under the TCPA; or (4) the on-point appeals court decision in *Cheng*.  The court disregarded the state of the law.  It criticized Representative Bradford as having "no reason" to think the TCPA inapplicable to him.  (A20.)  But he had many: all the reasons the court ignored.

Rather than reckon with all that, the district court opted for a simpler approach.  It found Perrong's "clearly established" right was just the general one in

---

[24] The *Cheng* dissent cannot save the district court's analysis anyway.  It contested a procedural matter: whether it was appropriate to resolve the case on an alternative basis.  2023 WL 4490352, *2 (Bress, J., dissenting).  The dissenting judge thought the court should have dealt with sovereign immunity and then remanded for further proceedings, including on whether the Representative might have another immunity defense.  *Id.* at *3.  This jurist thus was receptive to qualified immunity, but thought it better to first develop a record like the one here—which the district court asked for, but then chose to ignore.

the TCPA's text.  (A19.)  The court held: "the relevant right is the right that 47

U.S.C. §227(b)(1)(A)(iii) creates"—the right "not to receive calls" using

prerecorded voices.  (A19.)  The court thought it good enough that the right was

found in a "specific subparagraph of a statutory section."  (*Id.*)  The court cited

nothing supporting its broad framing based on out-of-context statutory language.[25]

Nor could it.  The Supreme Court and this Court forbid generalizations and

abstractions, and instead mandate specifics from a case's factual context.  *Wesby*,

583 U.S. at 63-64; *Rivera*, 98 F.4th at 422.  This holds true for a statutory-based

claim to a clearly established right.  *Mack v. Yost*, 63 F.4th 211, 229 (3d Cir. 2023)

(rejecting the plaintiff's broad framing of a statutory-based right).  And there is no

support for the district court's creative suggestion that "clearly established" rights

can be detected in a statute just because it has "specific subparagraphs."

The district court's analysis reshaped this Court's two detailed, multi-factor

qualified immunity tests into a one broad inquiry: did the plaintiff sufficiently

allege the violation of a right?  This Court has already rejected that method.  *See*

*HIRA*, 991 F.3d at 191 (explaining that the plaintiff's argument "would show only

that [the plaintiff] has stated a claim; it does nothing to show the Legislators

---

[25] The court mentioned *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d
Cir. 2013), and *Daubert v. NRA Group, LLC*, 861 F.3d 382 (3d Cir. 2017).  But
both dealt with commercial entities and had nothing to do with qualified immunity.

violated <u>clearly established</u> law" (emphasis in original)); *Wright-Gottshall v. N.J.*, 2024 WL 1826421, *3 (3d Cir. 2024) (rejecting broad framing). It should do so again here. And it is not up to the district court to revise this Court's qualified immunity standards anyway.

## <u>CONCLUSION</u>

For these reasons, appellant, Matthew Bradford, Majority Leader of the

Pennsylvania House of Representatives and Representative for the 70th Legislative

District, requests that the Court reverse the district court's May 13, 2024 order and

remand for entry of judgment in Representative Bradford's favor.

Respectfully submitted,

/s/ Karl S. Myers
Karl S. Myers (Pa. No. 90307)
Paige C. Hogan (Pa. No. 331749)
STEVENS & LEE
555 City Avenue, Suite 1170
Bala Cynwyd, PA 19004
(215) 751-2864
karl.myers@stevenslee.com
paige.hogan@stevenslee.com

Counsel for appellant,
Representative Matthew Bradford,
Majority Leader of the Pennsylvania House
of Representatives and Representative for
the 70th Legislative District

Dated: July 30, 2024

## <u>COMBINED CERTIFICATIONS OF COUNSEL</u>

1.      <u>Bar Membership:</u>  The undersigned certifies that Karl S. Myers and

Paige C. Hogan are members of the bar of this Court.

2.      <u>Word Count:</u>  The undersigned certifies that this brief uses a

proportionally spaced, 14-point Times New Roman typeface, and that it complies

with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the

parts of the document exempted by Fed. R. App. P. 32(f), this brief contains

11,140 words.

3.      <u>Service:</u>  The undersigned certifies that he will serve this brief by the

Court's electronic filing system on the date below on counsel of record here.

4.      <u>Identical Text:</u>  The undersigned certifies that the text of the

electronically-filed brief is identical to the text of the 7 hard copies that will be

delivered within 5 days of this electronic filing to the Clerk of the Court.

5.      <u>Virus Check:</u>  The undersigned certifies that virus detection was run

on this file and that the program detected no virus.

<u>/s/ Karl S. Myers</u>
Karl S. Myers

Dated: July 30, 2024