No. 24-1925

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ANDREW R. PERRONG

*Appellee*

v.

MATTHEW BRADFORD, et al.

*Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Case No. 23-510

## Amicus Curiae Brief of Governor Josh Shapiro
## in Support of Appellant Matthew Bradford

JENNIFER C. SELBER
*GENERAL COUNSEL*

Kenneth L. Joel
*Deputy General Counsel*
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 649-8669
kennjoel@pa.gov

Thomas P. Howell
*Deputy General Counsel*
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 772-4252
THOWELL@pa.gov

*Counsel for Governor Josh Shapiro*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF INTEREST ............................................................1

SUMMARY OF ARGUMENT ............................................................3

ARGUMENT .................................................................................6

**I.**    **THE DISTRICT COURT'S OPINION, IF UPHELD, WOULD RENDER SUMMARY JUDGMENT MOTIONS MEANINGLESS AND WOULD FORCE DEFENDANTS TO TRIAL BASED MERELY ON THE NON-MOVANT'S PLEADINGS**....................6

**II.**    **GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE NOT "PERSONS" FOR PURPOSES OF THE TCPA** ........................................................................9

**III.**   **GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE ENTITLED TO IMMUNITY FOR CLAIMS BROUGHT UNDER THE TCPA**.................................12

**IV.**   **GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR CLAIMS BROUGHT UNDER THE TCPA**...15

CONCLUSION .............................................................................17

# TABLE OF AUTHORITIES

## Cases

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ...................7

*Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007) ...............................10

*Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371 (Pa. 2021) ...................13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) .................................8

*D.C. v. Wesby*, 583 U.S. 48, 63 (2018) ...................................................16

*Financial Oversight and Management Board for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) ....................13

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) ........................................................................................10

*Hafer v. Melo*, 502 U.S. 21 (1991) ...................................................10, 11

*Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996) ........................14, 15

*Lombardo v. Pa. Department of Public Welfare*, 540 F.3d 190 (3d Cir. 2008)  13, 14

*Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867, 873 fn 7 (3d Cir. 2022) .........12

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ....................................16

*Perrong v. Bradford*, 2024 WL 2133801, *1-*3, *7-*8 (E.D. Pa. 2024) ...........7, 16

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021) ...............................17

*Vermont Agency of Natural Resources v. U.S. ex rel Stevens*, 529 U.S. 765, 780-81 & fn 9 (2000) ......................................................................12

## Constitutions

Pa. Const. Article IV, § 2 .......................................................................1

Pa. Const. Art I, § 11 ...........................................................................13

**Statutes and Legislation**

47 U.S.C. § 153(39) ................................................................................. 11

42 U.S.C. § 1983 ....................................................................................... 10

1 Pa.C.S. § 2310 ....................................................................................... 13

**Other Authorities**

35 FCC Rcd. 15052 ¶¶ 22-28 (2020) ...................................................... 12

## **STATEMENT OF INTEREST**

Governor Josh Shapiro, *amicus curiae*, files this brief in support of Representative Matthew Bradford's appeal to the Third Circuit, which seeks reversal of the district court's denial of Representative Bradford's motion for summary judgment. This brief was authored by the undersigned counsel and: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (3) no person—other than the amicus, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief.

Governor Shapiro's interest in this case stems from the fact that the Pennsylvania Constitution vests the Governor of the Commonwealth of Pennsylvania with the "supreme executive power" and obligates him to "take care that the laws [are] faithfully executed." Pa. Const. Article IV, § 2. Governor Shapiro fulfills these duties by overseeing and directing the operation of the Executive Branch of the Commonwealth including the 30-plus Executive Agencies under his direct jurisdiction.

Part and parcel of Governor Shapiro's role as the "supreme executive" is to communicate (through various media) with Pennsylvanians on any number of issues and topics. Governor Shapiro accomplishes this not only through his own statements but by communications by and through the Executive Agencies (all of which have

1

public facing functions and responsibilities) and individuals who work in those Executive Agencies.

Moreover, as a government/state official who heads Pennsylvania's Executive Branch, Governor Shapiro (along with Executive Agency heads, other state officials, and Commonwealth employees) is frequently sued for monetary, declaratory, and injunctive relief. As defendants in litigation, Governor Shapiro, and others serving the Executive Branch, have a keen interest in the proper application of Rule 56 and the doctrines of immunity—sovereign, qualified, and high official.

The issues before this court—the evisceration of the burdens on parties seeking and defending against summary judgment, the application of the Telephone Consumer Protection Act (TCPA) to state government officials communicating official information through official processes to constituents, the abrogation of immunity for such actions, and the rejection of qualified immunity for such conduct—will have a direct and substantial impact on Governor Shapiro and the Executive Branch. Governor Shapiro recognizes that the views of the Pennsylvania General Assembly—through Representative Bradford's briefing and the *amicus* brief jointly submitted by the House Republican Caucus, the Senate Republican Caucus, and the Senate Democratic Caucus—were heard below and will be provided

to this court.[1]  Governor Shapiro believes that this court will further benefit from his perspective as the head of the Executive Branch.

## SUMMARY OF ARGUMENT

The district court's opinion, if allowed to stand, frustrates and encumbers a state official's ability to communicate important governmental information to Pennsylvanians, in a manner never intended by the TCPA.  The district court's opinion not only affects each member of the General Assembly (regardless of political affiliation) but, if it is adopted by this Court, it would paralyze Governor Shapiro and the Executive Branch (and future Governors and Administrations) in performing one of their core functions—communicating with Pennsylvanians.  This court must reverse the district court and must enter summary judgment in favor of Representative Bradford for any of the following reasons.

First, the district court denied Representative Bradford's motion for summary judgment and concluded that Representative Bradford is a "person" subject to liability under the TCPA.  The lower court reached this conclusion even though Perrong didn't file his own motion for summary judgment and despite the record developed in the litigation that showed not only the official governmental nature of

---

[1]    It's worth noting that, despite today's political climate, the General Assembly's Democrats and Republicans have joined together in a single filing to support Representative Bradford.

3

the communications at issue but also that Representative Bradford followed official governmental processes to gain approval for and disseminate such communications.

Indeed, in response to the summary judgment record proffered by Representative Bradford, Perrong offered nothing except his own self-serving allegations found in his Amended Complaint. Rule 56 demands far more. At summary judgment, Rule 56 and binding case law require Perrong to come forward with admissible evidence showing a genuine dispute as to some material fact in the case—and he did not. The district court's bald conclusion that Representative Bradford was a "person" under the TCPA—in the face of the record developed and presented and even though Perrong filed no motion asking for this—was error.

Second, the undisputed material facts provided by Representative Bradford demonstrate that he was acting as a government/public/state official communicating governmental/public information to his constituents. Put simply, he was not acting in his personal capacity but in his official capacity as a member of the General Assembly. As a result, he is not a "person" for purposes of the TCPA.

Third, since government/public/state officials communicating government/public/state information to their constituents are acting in their official governmental roles, they are immune from TCPA claims. The purpose of immunity is to protect governmental officials performing governmental functions from being

sued in the first place.  The doctrine is long-established and is based on the policy that governmental officials must be free to act without fear of civil litigation and must not be burdened by the litigation process itself.  Here, the district court's opinion means that Governor Shapiro, members of the Executive Branch, and any other governmental official can be forced to defend themselves and go to trial simply for communicating governmental information to the public through automated calls. And that result is wrong.

Finally, even if Perrong (or others) could evade summary judgment by saying "I'm seeking damages from X personally and I used X's home address in a pleading" the district court's qualified immunity analysis nevertheless ignores binding case law.  Simply asserting that the TCPA prohibits certain actions and Representative Bradford is an individual and, thus, a "person" under the TCPA is insufficient to overcome qualified immunity.  Instead, the right at issue must be specifically defined with relation to the facts of the case and, when properly defined, that right must have been clearly established by a robust consensus of precedential authority at the time.

Here, the summary judgment record before the district court undisputedly demonstrated that Representative Bradford *qua* Representative Bradford communicated governmental information and was approved to do so after complying with a robust governmental process.  The question for the district court, then, was whether the right to be free from calls made by a governmental official

5

communicating governmental business that had been approved by the government after a governmental process of review was "clearly established" at the time the calls were made.

Before the lower court's opinion and order, however, no court had found such a right to exist, let alone "clearly established" such a right. Indeed, the Ninth Circuit—albeit in a non-precedential opinion—held just the opposite. Thus, the district court erred in rejecting Representative Bradford's qualified immunity defense.

## **ARGUMENT**

## I.    THE DISTRICT COURT'S OPINION, IF UPHELD, WOULD RENDER SUMMARY JUDGMENT MOTIONS MEANINGLESS AND WOULD FORCE DEFENDANTS TO TRIAL BASED MERELY ON THE NON-MOVANT'S PLEADINGS.

Representative Bradford unquestionably (and undisputedly for purposes of his motion for summary judgment) is a member of the General Assembly and is a public/governmental/state official. Further, before the challenged communications were sent, Representative Bradford unquestionably (and undisputedly for purposes of his motion for summary judgment) complied with the House's rules. Other government officials or employees unquestionably (and undisputedly for purposes of Representative Bradford's motion for summary judgment) reviewed those proposed communications for possible legal and ethical concerns and approved the

communications to be sent. Representative Bradford (unquestionably and undisputedly for purposes of his motion for summary judgment) expended no personal funds for these communications. And the five communications at issue (unquestionably and undisputedly for purposes of Representative Bradford's motion for summary judgment) all provided his constituents with information directly related to public programs and services and provided Representative Bradford's legislative contact information for follow up. Put simply, Representative Bradford *qua* Representative Bradford communicated with his constituents and provided them with governmental information about governmental programs and events.[2]

Given Representative Bradford's summary judgment filings, Perrong could not "rest solely on assertions made in the pleadings, legal memoranda, or oral argument" but had to step up and "rebut the motion with facts in the record." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex*

---

[2] This is not a situation where a private individual or business robocalled thousands of individuals randomly or sequentially to get business, and, at this risk of stating the obvious, the recipients of these calls were his "constituents" (and received the calls) *only* by virtue of Representative Bradford's official role. In fact, the district court found that all of the calls at issue were made to Representative Bradford's constituents, were about programs or events relevant to those constituents, and included Representative Bradford's legislative phone number and email address as contact information. *See Perrong v. Bradford*, 2024 WL 2133801, *1-*3 (E.D. Pa. 2024). Representative Bradford would have no reason to randomly call people living in other legislative districts or other states to tell them about such programs or events affecting his district.

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (relying on Rule 56(e)).  The district court, while paying lip-service to this maxim, completely ignored it.  *See Perrong*, 2024 WL 2133801, *4.

To that end, the district court failed to cite a single piece of evidence submitted by Perrong (because apparently no evidence was submitted) to support its finding that Perron had "sued Rep. Bradford in his personal capacity." *Id*. at *4.  Instead, the district court references the Amended Complaint—albeit noting that the pleading is silent on the issue of capacity—for the "fact" that Perrong listed "Rep. Bradford's personal address rather than his office address" and that Perrong seeks "damages and injunctive relief against him personally." *Id*. at *5.  By denying summary judgment based on what was alleged in the Amended Complaint, rather than any proffered evidence that disputes the facts set forth in the motion, the district court ignored long-standing Supreme Court and Third Circuit precedent as well as Rule 56 itself. The district court's decision, if allowed to stand, would be the end of summary judgment and the beginning of a new era where non-movants could get to a jury based only on their allegations, even in the face of undisputed facts to the contrary.[3]

---

[3]    The district court's conclusion is further flawed because Perrong filed no affirmative motion for summary judgment.  In other words, beyond denying Representative Bradford's motion, the district court—on its own and without being asked to do so by Perrong—issued an opinion that concludes that Representative Bradford is a "person" for purposes of the TCPA.

II.   **GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE NOT "PERSONS" FOR PURPOSES OF THE TCPA.**

A critical part of a government/public/state official's role is to communicate information of interest to constituents.  Governor Shapiro regularly addresses Pennsylvanians and does so in through any number of media.  So, too, do members of the Executive Branch including cabinet heads and other high-ranking public officials.  Such communications can be about any number of matters:  the collapse of I-95 in Philadelphia and attendant road detours; registering and getting out to vote; COVID-19 efforts; the East Palestine train derailment; office and school closures; etc.  Such communications are certainly official in that they are made by officials and communicate official information to constituents.  Put simply, while Josh Shapiro as a private citizen has no reason or ability to robocall his neighbors and tell them about a sale he saw at the local store, Governor Shapiro, as the head of the Executive Branch of Pennsylvania, and his team, certainly have the obligation to use whatever methods are available to communicate to Pennsylvanians matters of public interest and importance.

In other words, when Governor Shapiro (or his team) is communicating with Pennsylvanians, they are not acting in their personal capacities—they are acting as state/government representatives and officials.  The district court was required to factually analyze Representative Bradford's role in obtaining approval for and

9

making the calls and the substance and purpose of the communication. Only by assessing the facts of this case could the district court properly conclude whether Representative Bradford was acting officially (in which case he is not a "person" for purposes of the TCPA) or personally (in which case he is a "person" under the statute). And the district court's conclusion that Representative Bradford was a "person" for purposes of the TCPA—based on the pleading artifice and not an analysis of the facts—was error. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (listing several factors to determine whether an entity is an arm of the state); *see also Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007) (concluding that the application of the *Fitchik* factors requires "a fact-intensive review that calls for individualized determinations").

The district court compounded its error by heavily relying on *Hafer v. Melo*, 502 U.S. 21 (1991). *Hafer* involved whether the Auditor General, who was sued by former employees for firing them after she assumed office, was subject to a suit for damages under 42 U.S.C. § 1983. The Supreme Court, reviewing the case at the motion to dismiss stage, held that Hafer was a "person" for purposes of that statute. Critically, the Court reasoned that through § 1983, "Congress sought 'to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position.'" 502 U.S. at 27. As such, § 1983 "authorize[s] suits

to redress deprivations of civil rights by persons acting 'under color of any [state] statute, ordinance, regulation custom, or usage.'" *Id*. at 27.

In short, the Supreme Court reasoned that by requiring "action under color of state law" Congress intended to hold state officials liable because of actions taken through their official authority. *Id*. at 28; *see also id*. at 28 (rejecting Hafer's argument that officially taken actions should not give rise to claims and finding that the argument "finds no support in the broad language of § 1983" and, to the contrary, "it ignores our holding that Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it") (cleaned up). In other words, § 1983 was specifically enacted to take authority away from the states in the aftermath of the Civil War and provide a cause of action against state officials under the 14th Amendment.

Perrong's claim is not brought pursuant to § 1983, nor does it raise Constitutional claims. Further, the TCPA was enacted for far different reasons and has far different language than § 1983. To that end, while the TCPA imposes liability on "persons" it doesn't include language—like that found in § 1983—imposing liability on those persons "acting under color of state law." Further, the TCPA's statutory definition of "person" doesn't include states or state officials. *See* 47 U.S.C. § 153(39). And determining who is to be included within the statutory term

11

"person" must be viewed against the Supreme Court's "longstanding interpretive presumption that 'person' does not include the sovereign" state because "comity and respect for our federal system demand that something more than mere use of the word 'person' demonstrate the federal intent to authorize unconsented private suit against them." *Vermont Agency of Natural Resources v. U.S. ex rel Stevens*, 529 U.S. 765, 780-81 & fn 9 (2000) (this presumption is "particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before"). *See also* 35 FCC Rcd. 15052 ¶¶ 22-28 (2020) (concluding that the word "person" in the TCPA doesn't include "state government callers in the conduct of official business" and basing this conclusion on the longstanding presumption that the word "person" doesn't include the sovereign unless there is an "affirmative showing to the contrary"—a presumption that the Supreme Court has extended to state governments).[4]

## III. GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE ENTITLED TO IMMUNITY FOR CLAIMS BROUGHT UNDER THE TCPA.

Government officials making public/official communications to constituents about public/official matters are entitled to immunity from TCPA claims.   In Pennsylvania, immunity is established by our Constitution and statutes. *See*, *e.g.*,

---

[4]    This Court treats FCC rulings as "persuasive authority." *See Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867, 873 fn 7 (3d Cir. 2022).

Pa. Const. Art I, § 11; 1 Pa.C.S. § 2310 (the Commonwealth and its officials and employees acting within the scope of their duties "shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive").

The policy behind the "fundamental" constitutional protection of sovereign immunity is straightforward. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371 (Pa. 2021). To that end, it "obviously serves to protect government policymaking prerogatives and the public fisc." *Id*. at 371; *see also id*. at 372, 373 (noting that the protections of sovereign immunity extend "to each of our three branches of government" and the defense—which protects one against litigation itself—is irreparably lost if a defendant is forced to proceed to trial).

This court has held that the doctrine of sovereign immunity bars even federal claims against the sovereign in cases where Pennsylvania hadn't specifically waived the immunity for the claim.[5] For example, in *Lombardo v. Pa. Department of Public*

---

[5]    Of course, Congress, in certain circumstances (like legislation enacted pursuant to Section 5 of the Fourteenth Amendment), can abrogate a state's Eleventh Amendment immunity from suit in federal court; however, the standard for finding a congressional abrogation is "stringent" and, besides needing the constitutional authority to do so, Congress "must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'" *Financial Oversight and Management Board for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023). Here, nothing in the language of the TCPA evinces such clarity and the TCPA certainly wasn't enacted pursuant to Congress's Section 5

*Welfare*, 540 F.3d 190 (3d Cir. 2008), age discrimination claims (brought pursuant to the federal ADEA) were alleged.  This court "look[ed] to state law to determine if the Commonwealth maintains … immunity from liability.  Under Pennsylvania law, the Commonwealth enjoys sovereign immunity unless the General Assembly 'specifically waives sovereign immunity.'"  *Lombardo*, 540 F.3d at 195.  And, this court concluded that Pennsylvania had not waived sovereign immunity for ADEA claims.  *Id*.[6]

Beyond sovereign immunity, Pennsylvania law recognizes a "high official immunity" that is absolute.  *See Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996).  This immunity "rests upon the … idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff…."  *Id*. at 1195 (further quotations and

---

powers and the district court's ruling would open the door to future "end-runs" around the Eleventh Amendment.  In short, the district court's decision erodes state sovereignty in ways that were neither intended by Congress, nor consented to by the states.  Such an intrusive expansion of federal authority into how the state conducts state business should not be countenanced.

[6]    The *Lombardo* court concluded that the Commonwealth's removal of the matter from state to federal court waived its Eleventh Amendment immunity (meaning that the claims could be adjudicated in the federal form); however, the court made clear that the Commonwealth's sovereign immunity for the ADEA claims remained.  *Id*. at 200.  Here, of course, the case began in federal court, so the ramifications of removal are not material.

citations omitted).  And this immunity is not only "designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury" but has a "deeper purpose"—the "protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business." *Id*. at 1195-96 (further quotations and citations omitted).

Without question, Governor Shapiro and other high-ranking members of the Executive Branch enjoy this immunity from suit.  *Id*. at 1198-99 (making clear that in determining whether this immunity applies, a court must assess, on a case-by-case basis, the nature of the official's duties, the importance of his office, whether or not she has policy-making functions, and whether the actions were taken in the course of her duties and scope of authority).  The district court's opinion and order disregarded such considerations, and if permitted to remain, would present a significant impediment to the secure conduct of executive governmental business.

## IV.    GOVERNMENTAL/PUBLIC OFFICIALS COMMUNICATING GOVERNMENTAL/PUBLIC INFORMATION TO THEIR CONSTITUENTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR CLAIMS BROUGHT UNDER THE TCPA.

Finally, the district court's cursory qualified immunity analysis misunderstands the doctrine and was error.  The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). To be clearly established, a "legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law' … [and this] means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id*. at 63. Further, the Supreme Court has repeatedly instructed the lower courts not to "define clearly established law at a high level of generality, since doing do avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (also noting that the rule "must obviously resolve whether the circumstances with which the [official] was confronted" constituted a clearly established right and that the rule must be "so well defined that it is clear" to a defendant that her "conduct was unlawful in the situation [s]he confronted").

Here, the district court's identification of the right at issue and its "clearly established" analysis were superficial at best. To that end, the lower court merely quoted the provision of the TCPA and the definition of "person" and concluded that Representative Bradford is an individual and his actions were inconsistent with the

text of the TCPA and, thus, "violated" Perrong's clearly established rights.  *See Perrong*, 2024 WL 213f3801, *7-*8.

The qualified immunity analysis, however, needs to be undertaken with far more granularity:  That is, was it clearly established, in 2019 and 2020, that calls made by government/public officials, that were approved through a governmental/official process, and that conveyed governmental/public information to a government/public official's constituents—violated the TCPA.  Until the district court's opinion, no case had so held and, in fact, the Ninth Circuit—albeit in a non-precedential opinion—held the opposite.  In short, the right at issue was not "clearly established" at the time of Representative Bradford's actions, and this district court's superficial and cursory qualified immunity must be rejected.  *See also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021) (per curiam) (reversing the Ninth Circuit on the issue of qualified immunity because "[n]either Cortesluna nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here").

## <u>CONCLUSION</u>

For all the foregoing reasons, Governor Josh Shapiro respectfully requests that the Court reverse the district court and enter summary judgment in favor of Representative Bradford.

August 2, 2024                          Respectfully submitted,


                                        JENNIFER C. SELBER
                                        *GENERAL COUNSEL*


                                        */s/ Kenneth L. Joel*
                                        Kenneth L. Joel
                                        *Deputy General Counsel*
                                        Governor's Office of General Counsel
                                        333 Market Street, 17th Floor
                                        Harrisburg, PA 17101
                                        (717) 649-8669
                                        kennjoel@pa.gov


                                        */s/ Thomas P. Howell*
                                        Thomas P. Howell
                                        *Deputy General Counsel*
                                        Governor's Office of General Counsel
                                        333 Market Street, 17th Floor
                                        Harrisburg, PA 17101
                                        (717) 772-4252
                                        THOWELL@pa.gov


                                        *Counsel for Governor Josh Shapiro*

# CERTIFICATES

I, Kenneth L. Joel, certify that:

1.      I am a member of the bar of this Court in good standing;

2.      Antivirus software was run on this file and no virus was detected;

3.      The text of this brief is identical to the text in paper copies that will be filed

with the Court; and

4.      This response contains 4019 words and therefore complies with Fed.R.A.P.

32(a)(7)(b)(i) and Fed.R.A.P. 29(a)(5). In making this certificate, I have relied

on the word count of the word-processing system used to prepare the brief.


August 2, 2024                              /s/ *Kenneth L. Joel*
                                           Kenneth L. Joel
                                           *Counsel for Governor Josh Shapiro*

## CERTIFICATE OF SERVICE

I, Kenneth L. Joel, hereby certify that a copy of this response has been

served on all counsel of record using the Court's CM/ECF system.


August 2, 2024                              /s/ *Kenneth L. Joel*
                                           Kenneth L. Joel
                                           *Counsel for Governor Josh Shapiro*