# In the United States Court of Appeals for the Third Circuit

---

No. 24-1925

ANDREW R. PERRONG

*v.*

MATTHEW BRADFORD;
CLEO COMMUNICATIONS

---

On appeal from the United States District Court, Eastern District
of Pennsylvania, at No. 23-510 (Hon. Joshua D. Wolson)

---

### BRIEF OF *AMICI CURIAE*,
**REPUBLICAN AND DEMOCRATIC CAUCUSES OF THE PENNSYLVANIA SENATE AND THE REPUBLICAN CAUCUS OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES IN SUPPORT OF APPELLANT, MATTHEW BRADFORD**

---

Rodney A. Corey, Esq. (Pa. 69742)
James G. Mann, Esq. (Pa. 85810)
Office of Chief Counsel
House Republican Caucus
Suite B6, Main Capitol
Harrisburg, Pa. 17120
(717) 783-1510

Ronald N. Jumper, Esq. (Pa. 64346)
Shannon A. Sollenberger, Esq. (Pa. 308878)
Office of Chief Counsel
Senate Democratic Caucus
Room 535, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-3736

Crystal H. Clark, Esq. (Pa. 91069)
General Counsel
Senate Republican Caucus
Room 350, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-6259

*Counsel for Amici Curiae*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF INTERST OF PROPOSED *AMICI CURIAE* ..............................1

SUMMARY OF ARGUMENT ....................................................................2

ARGUMENT ......................................................................................4

A. THE DISTRICT COURT ERRED IN FINDING THAT REP. BRADFORD WAS NOT ENTITLED TO SOVEREIGN IMMUNITY WHERE IT'S CLEAR THAT THE COMMONWEALTH IS THE REAL PARTY IN INTEREST, NOT REP. BRADFORD ..........................................................5

    I.    Providing information to Pennsylvania residents concerning government programs serves a legislative purpose under the House Rules, which is a prerequisite to the use of official resources ..............6

    II.    The Pennsylvania Senate's various Rules also permit legislatively-sponsored "mass" communications.......................................................9

    III.    State law, as well as legislative policies and practices, acknowledge that officials and employees may be sued for actions occurring within the scope of their duties, and therefore provide for the payment of legal expenses for government officials irrespective of how the suit is couched ............................................................................12

B. THE DISTRICT COURT'S REFUSAL TO GRANT REP. BRADFORD QUALIFIED IMMUNITY MEANS THAT NO GOVERNMENT OFFICIAL CAN RELY ON PRIOR JUDICIAL OR ADMINISTRATIVE DECISIONS TO REASONABLY DETERMINE WHETHER THEIR ACTIONS WILL VIOLATE THE LAW......................................................16

CONCLUSION……………………………………………………………...19

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton, 483 U.S. 635, 640 (1987) ....................................................17

In re: Broadnet Teleservices, 35 FCC Rcd. 15052, ¶¶13, 22-28 (2020)..................16

Pennhurst State Sch. & Hosp. v. Haldeman, 465 U.S. 89, 107 (1984).....................5

Precision Mktg., Inc. v. Com., Republican Caucus of the Senate of PA/AKA

   Senate of PA Republican Caucus, 78 A.3d 667, 672 (Pa. Cmwlth. 2013) ......1, 13

Schneyder v. Smith, 653 F.3d 319, 329-30 (3d Cir. 2011).....................................17

Sivella v. Twp. of Lyndhurst, 2021 WL 3356934, *3 (3d Cir. 2021) ......................18

Waterfront Comm'n of New York Harbor v. Governor of New Jersey, 961 F.3d

   234, 239 (3d Cir. 2020)...........................................................................16

**Statutes**

1 Pa.C.S. §2310...........................................................................................13

42 Pa.C.S. § 8501 et seq. ................................................................. 13, 14

42 Pa.C.S. §8522.........................................................................................13

42 Pa.C.S. §8525.........................................................................................14

46 P.S. § 42.101a.......................................................................................11

46 P.S. § 42.102.........................................................................................11

46 P.S. § 42.121...........................................................................................8

**Other Authorities**

2019-2020 Legislative Handbook..............................................................................8

Ethical Conduct Rules of the Senate (S.R. 1, P.N. 1 of 2019)...................................9

Financial Operating Rules of the Senate (S.R. 2, P.N. 2 of 2019)......................9, 10

General Election Returns 2020 ..................................................................................7

Government and Government Contractor Calls Under the Telephone Consumer

    Protection Act of 1991, 86 FR 9299-01 ...............................................................16

H.R. 1, P.N. 1 of 2019 ...............................................................................................7

House Rule 14, "Members' and Employees' Expenses," .........................................7

Insurance Coverage - Commonwealth of Pennsylvania..........................................14

In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of

    1991 U.S. Dep't of Health & Hum. Servs. Petition for Declaratory Ruling, No.

    CG02-278, 2023 WL 415622, at *6, (OHMSV Jan. 23, 2023) ..........................17

Pennsylvania House of Representatives Ethical and Professional Conduct Rules ...7

Pennsylvania House of Representatives General Operating Rules .........................6

Primary Election Returns 2020.................................................................................7

Rule 3, Senate Financial Operating Rules ..............................................................10

Rule 6(a), Senate Financial Operating Rules....................................................10, 11

Rules of the Senate of Pennsylvania (S.R. 3, P.N. 3 of 2019).................................10

Senate COMO Policy 2008:01, "Payment of Legal Expenses," .............................12

Senate COMO Policy 2018:01, "Electronic Communication Expenses" ...............11

**Rules**

Fed. R. App. 29 ...............................................................................................2

**Constitutional Provisions**

Pa. Const., Art. II, § 1..................................................................................6

Pa. Const., Art. I, § 11 ...............................................................................13

Pa. Const., Art. II, § 11 ..............................................................................6

**STATEMENT OF INTEREST OF PROPOSED *AMICI CURIAE***

*Amici Curiae*, the Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives (collectively hereinafter "the Caucuses"), file this brief in support of Appellant Representative Matthew Bradford's Appeal (hereinafter "Appellant" or "Rep. Bradford").

Appellant is a Member, and current Leader, of the Democratic Caucus of the Pennsylvania House of Representatives ("House Democratic Caucus").  The House Democratic Caucus is comprised of the elected Democratic State Representatives. *Amici*, the remaining three Caucuses of the Pennsylvania House and Senate, comprise the remainder of the elected Members of the Pennsylvania General Assembly (House and Senate). Republicans elected to the House of Representatives belong to the House Republican Caucus. Elected members of the Pennsylvania Senate are in turn members of their respective Caucuses, generally aligning with their political party. The four political party Caucuses have existed since 1857. Precision Mktg., Inc. v. Com., Republican Caucus of the Senate of PA/AKA Senate of PA Republican Caucus, 78 A.3d 667, 672 (Pa. Cmwlth. 2013).

The issues before this Court, concerning application of sovereign and qualified immunity to Pennsylvania legislators in connection with claims under the Telephone Consumer Protection Act (TCPA), will have a direct and substantial

impact on the Caucuses and the individual members thereof regarding their ability as legislators to engage in legitimate legislative communications with Pennsylvania's residents. As such, *Amici Curiae's* interest in this case stems from the fact that the members of the individual Caucuses are similarly situated to Rep. Bradford.

Therefore, *Amici* believe that this Court will benefit from their perspective on this dispute. In accordance with an Order of the Court accepting their then-proposed brief, *Amici* previously filed a similar brief in support of Rep. Bradford before the United States District Court for the Eastern District of Pennsylvania. (See Docs. 47 and 48).[1]

In compliance with Fed. R. App. 29(a)(4)(E), no person or entity other than *Amici Curiae* or its counsel paid for or authored this brief.

## SUMMARY OF ARGUMENT

Mass communications to constituents regarding the availability of government services and programs are a regular part of the official business conducted by House and Senate members. Specifically, the calls placed by Rep. Bradford fall well within the type of acceptable legislative communications envisioned by House and Senate rules relating to the appropriate use of legislative

---

[1] References to the Joint Appendix are formatted "(A_.)." Direct citations to the district court record are formatted "(Doc. _.)." Citations to this Court's docket are formatted "(App. Doc. _.")

2

resources and were made at times authorized by House Rules. Because such communications occur within the course and scope of a legislator's legislative activities and on behalf of the government to promote government programs, they are entitled to sovereign immunity, and the District Court's denial of sovereign immunity in this matter was in error.

Even if it could be said that there was a question as to whether such communications are legislative activities entitled to sovereign immunity, the District Court erred in failing to grant Rep. Bradford qualified immunity given that all prior administrative and judicial decisions held that state government actors – like the Appellant and *amici* herein – are not "persons" subject to liability under the TCPA. For these reasons, the Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives respectfully request that this Court reverse the District Court's May 13, 2024 Order and remand for entry of judgment in Rep. Bradford's favor.

## **ARGUMENT**

The fundamental question underpinning this litigation involves the ability of *all* of Pennsylvania's legislators to engage in mass communications with their constituents concerning government programs and initiatives.  It extends beyond political party, the specific subject matter of the calls at issue here, or the particular chamber of the General Assembly.  As the District Court's Opinion recognized, its decision that Rep. Bradford was not entitled to sovereign or qualified immunity "might" be read by individual legislators – and, by extension, the Caucuses or other governmental agencies – to stop using prerecorded calls to reach their constituents. (A14.).

Affirmation by this Court of the District Court's Order would, by implication, establish that Pennsylvania State Representatives and Senators are not engaged in official business when using mass communications for these purposes and therefore would not be entitled to immunity for these actions – a determination that would run contrary to decades of legislative practice in Pennsylvania, as well as decades of case law regarding sovereign immunity and every case analyzing the meaning of "person" under the TCPA as it relates to state government actors. The District Court's rejection of this precedent – whether legislative, administrative, and judicial – was in error and should be reversed.

**A.    THE DISTRICT COURT ERRED IN FINDING THAT REP. BRADFORD WAS NOT ENTITLED TO SOVEREIGN IMMUNITY WHERE IT'S CLEAR THAT THE COMMONWEALTH IS THE REAL PARTY IN INTEREST, NOT REP. BRADFORD.**

The District Court spent a considerable amount of time in its May 13, 2024, Opinion and Order discussing how and why it believed that Appellee was suing Rep. Bradford in his personal rather than official capacity, ultimately finding that Rep. Bradford is the "real party in interest" and that he is therefore not entitled to sovereign immunity. However, in so finding, the District Court ignored the fact that Rep. Bradford at all times acted in his legislative capacity to promote government programs and initiatives. It also ignored that he would have no cause to make "robocalls" on these matters absent his legislative position.  The absence of anything to be gained by an official in taking a particular action has been found by the Supreme Court to be significant to the question of whether the official or the governmental entity is the "real party in interest." <u>Pennhurst State Sch. & Hosp. v. Haldeman</u>, 465 U.S. 89, 107 (1984). Appellee's vague pleading style regarding the capacity in which he was suing Rep. Bradford doesn't change the absence of a personal interest in the calls he made, but the District Court gave no consideration to that matter.

Moreover, relying on this vague pleading – or even a more explicit statement that he's being sued in his "personal" capacity – doesn't change the fact that Rep.

Bradford was acting in a legislative capacity in making the calls in question. To suggest otherwise ignores the practical fact that the government for which he was performing services at issue will be responsible for the costs associated with the litigation over those actions.  By extension, any claims against members of the Caucuses for engaging in similar mass communications with constituents could also implicate legal expense policies of the Caucuses. The District Court's failure to consider, let alone acknowledge, these practical realities in determining whether immunity applied in this case was in error, and is an error that will be perpetuated to the detriment of all government entities in similar circumstances.

I.    **Providing information to Pennsylvania residents concerning government programs serves a legislative purpose under the House Rules, which is a prerequisite to the use of official resources.**

The Pennsylvania Constitution provides that the "legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  Pa. Const., Art. II, § 1.  Further, both the Pennsylvania House and Senate have the power to adopt their own rules.  Pa. Const., Art. II, § 11.

On January 1, 2019, at the beginning of the 2019-2020 legislative term, the Pennsylvania House of Representatives adopted General Operating Rules, as well

as Ethical and Professional Conduct Rules, by a bipartisan vote of 142-58.  H.R. 1, P.N. 1 of 2019.[2]

House Rule 14, entitled "Members' and Employees' Expenses," expressed the general rule that legislative funds may be utilized for "any legislative purpose or function."  (A404-405.).  Mass communications related to government programs and statutes are clearly a recognized means to facilitate the delivery of services provided by Pennsylvania State Representatives in their official capacity. This is so given that the Ethical and Professional Conduct Rules contemplated the use of mass communications, including telemarketing activities and robocalls, by defining them and placing restrictions on their use during certain times. (A414-415.).[3]

---

[2]

https://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2019&sInd=0&body=h&type=r&bn=1, last accessed July 29, 2024. A complete copy of the Rules is also included at A404-417.

[3] Mass communications are limited by House Rule during a restricted period before an election. (A415.). Specifically, mass communications are prohibited within 60 days of a primary or general election. Mass communications during other periods are not prohibited, provided they have a legislative purpose. In this case, in 2020, restricted periods occurred between April 3 and June 2, 2020 and again September 4 through November 3, 2020. See Primary Election Returns 2020, available at https://www.electionreturns.pa.gov/_ENR/Home/SummaryResults?ElectionID=83&ElectionType=P&IsActive=0, last accessed on July 29, 2024, and General Election Returns 2020, available at https://www.electionreturns.pa.gov/_ENR/General/SummaryResults?ElectionID=83&ElectionType=G&IsActive=0, last accessed on July 29, 2024. Four of the calls listed in the amended complaint (September 20 and October 10, 2019 as well as

The House Comptroller serves as "the chief fiscal officer of the House." 46

P.S. § 42.121h.  In this capacity, the Comptroller prepares and distributes a

Legislative Handbook which serves as a guide to House expenses.  (See Exhibit

A.).[4] The Legislative Handbook notes that all "Events or Fairs" must support a

"legislative purpose" in order for expenses associated with the event to be

reimbursed. (Id.).[5] "Legislative Purpose" is explained as follows:

> Legislative Purpose:  This threshold must be satisfied EVERY time a
> member seeks reimbursement.  Every legislative event needs to have a
> logical and substantive connection to **government work or programs**
> in order for the Comptroller to release taxpayer funds…

(Id.) (*Emphasis in bold added.*).

Of note, this general proposition concerning "legislative purpose" is not

limited to <u>state</u> programs or <u>state</u> legislation – it refers generally to <u>government</u>

work and programs.  As such, it includes events encompassing local and federal

government programs, initiatives, laws and ordinances.  As the closest state elected

---

January 31 and December 30, 2020) did not occur during a restricted period.
(A119.). The fifth call fell within a narrow exception to the restricted period
adopted in 2020 by the House, which permitted mass communications if they were
"limited to information directing constituents to public and private resources and
services available to mitigate the impact" of the COVID-19 emergency. (A419-420
and A422-425.). The April 17, 2020 call related to this issue, and therefore fell
within the narrow exception to mass communications within the restricted period.
(A284.).
[4] Excerpts from the 2019-2020 Legislative Handbook were previously submitted
by *amici* to the District Court as part of their original amicus brief. (Doc. 48.).
[5] A mass communication would be considered an "event".

officials to the people of Pennsylvania (elected by House and Senate districts rather than statewide), Pennsylvania State Representatives and Senators often serve as a one-stop shop for constituents seeking information to answer their government questions.  Indeed, government entities beyond the General Assembly routinely partner with a State Representative or Senator to aid in the delivery of government information and services to constituents. As such, communications – regardless of form – on these issues are a regular part of the official business done by members and paid for by either the Senate or House.

## II.    The Pennsylvania Senate's various Rules also permit legislatively-sponsored "mass" communications.

Like their counterparts in the House, the Pennsylvania Senate also begins each legislative term by adopting various Rules for the operation of the Senate, both legislatively and administratively. Collectively, they are comprised of the Ethical Conduct Rules of the Senate (S.R. 1, P.N. 1 of 2019),[6] the Financial

---

6
https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0001&pn=0001, last accessed July 29, 2024.

Operating Rules of the Senate (S.R. 2, P.N. 2 of 2019),[7] and the Rules of the Senate of Pennsylvania (S.R. 3, P.N. 3 of 2019).[8]

The Ethical Conduct Rules can generally be categorized as prohibiting the use of the official resources of the Senate for anything other than "official action." See S.R. 1, P.N. 1, pgs. 5-9. The Financial Operating Rules, among other things, outline generally the kinds of expenses which can be directly paid and/or reimbursed by the Senate. For instance, Rule 3 of the Financial Operating Rules permits the payment of "ordinary and necessary expenses for meals, lodging and incidental items" when the Senator is "engaged in the performance of legislative duties." S.R. 2, P.N. 2, p. 8, lines 16-22. Rule 6(a) authorizes Senate offices within the Capitol to incur expenses for utility services, insurance, printing services, telephone and data services, and postage and communications, among other things. Of course, in order to obtain payment for these expenses, vouchers must be submitted which appropriately document the expenses and "legislative purpose for each expenditure." S.R. 2, P.N. 2, p. 15, lines 20-24. As such, any expense incurred

---

[7] https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0002&pn=0002, last accessed July 29, 2024.

[8] https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0003&pn=0003, last accessed July 29, 2024.

by a Member's office must have a "legislative purpose" in accordance with both the Ethical Conduct Rules and Financial Operating Rules in order to be paid or reimbursed by the Senate, or when using Senate resources.

In addition, Rule 6(a)(10) of the Senate's Financial Operating Rules permits additional expenses other than those specified in those Rules to be paid if they are provided for in the "policies of the Senate Committee on Management Operations." The Senate's Committee on Management Operations ("COMO") was first established in 1981 in the Legislative Officers and Employees Law. See 46 P.S. 42.101a. Rules, regulations, policies and procedures promulgated by COMO are published by the Chief Clerk of the Senate in a handbook format. 46 PS 42.102(b).

COMO Policy 2018:01 entitled "Electronic Communication Expenses" specifically addresses the permissibility of certain electronic communications by Senate offices. (See Exhibit B.).[9] In particular, it permits the reimbursement of electronic communication expenses of Senate members relating to: "(1) Constituent Automated Messaging (Electronic email blasts to constituents, SMS texts); (2) tele-town halls; and (3) Auto-dialing regarding specific Senate events being held for the benefit of constituents." Id.  Payments for such communications

---

[9] COMO Policy 2018:01 was previously submitted by *Amici* to the District Court as part of their original amicus brief. (Doc. 48.).

are permitted from Member postage and communications accounts, caucus

operations accounts, and legislative accountable expense accounts. Id.

In short, as long as "electronic communication expenses" were being

incurred for a legislative purpose – like those made by Rep. Bradford here – they

would be reimbursable by the Senate and consistent with the Senate's Ethical

Conduct Rules.

> **III.    State law, as well as legislative policies and practices, acknowledge that officials and employees may be sued for actions occurring within the scope of their duties, and therefore provide for the payment of legal expenses for government officials irrespective of how the suit is couched.**

Senate COMO Policy 2008:01, "Payment of Legal Expenses," provides that

contracts for legal services may be reimbursed from Senate funds under several

circumstances, such as where the services are incurred as a result of a member's

"official legislative duties or activities performed in good faith." (See Exhibit C.).

In addition, costs of services can be reimbursed where they "resolve a legal matter

affecting the authority, powers or actions of the Senate of Pennsylvania or an

official authority, power or action of a particular member…" Id. Services which are

a result of actions taken in good faith by a member in their official capacity or

"acting under color of state law" are reimbursable. Id. Although the House rules do

not specifically mention legal services, such expenses would fall generally within

the "professional services" provisions of Rule 14, and as such legal expenses

relating to civil actions will be paid for members and employees for actions occurring within the course and scope of their office or employment.

These policies are consistent with Pennsylvania's Constitution and statutes, both of which address sovereign immunity and suits against Commonwealth officers and employees in the limited circumstances where immunity has been waived. Specifically, the Commonwealth enjoys sovereign immunity pursuant to Article I, section 11 of the Constitution of Pennsylvania. That provision permits suits to be brought against "the Commonwealth" in such manner and such cases only as the Legislature by law may direct. Pa. Const. Art I, sec. 11. This provision is recognized to extend sovereign immunity not only to the Commonwealth itself, but also "its officials and employees acting within the scope of their duties." 1 Pa.C.S. §2310. That includes the *Amici* here and their individual members. Precision Mktg., *supra* at 671-75. Thus, like the Commonwealth itself, officers and employees of the Commonwealth – including the General Assembly – can only be sued where the General Assembly has specifically waived such immunity by statute. Id.

Sovereign immunity is reaffirmed further by the Sovereign Immunity Tort Claims Act, 42 Pa.C.S. § 8501, et seq., generally, and section 8522 specifically addresses the limited exceptions to sovereign immunity for certain actions against "Commonwealth parties". A "Commonwealth employee" is "a Commonwealth

agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. §8501. An "employee" is "any person who is acting or who has acted on behalf of a government unit..." Id. Unless it is determined that the acts which give rise to a claim for which immunity has been waived was not within the scope of the office or duties of the employee, the Commonwealth provides legal assistance and the reasonable expenses of the defense against the claim. 42 Pa.C.S. §8525.

Furthermore, as a self-insured governmental unit, the Commonwealth maintains policies related to the payment of legal expenses related to claims (generally tort claims). (See Insurance Coverage – Commonwealth of Pennsylvania, attached hereto as Exhibit D.) The Tort Claims Self-Insurance Program established to handle these types of claims recognizes "coverage" for "all Commonwealth departments, officials and employees while performing Commonwealth activities" and is "in effect whenever and wherever the Commonwealth is conducting business." Id.

Of course, this case doesn't involve a tort claim, and therefore the provisions of the Tort Claims Self-Insurance Program and the Sovereign Immunity Act don't apply. However, as the Program and Act make clear, the applicable question when considering whether the Commonwealth should be paying for costs associated with claims against officials and employees is whether they were "performing

Commonwealth activities," acting on "behalf" of the government, or acting "within the scope" of the office or duties. If they were, they're covered, because the claim is effectively against the state in recognition of the reality that the official or employee wouldn't have taken those actions if they didn't hold that position.

The District Court attempts to get around these practicalities by suggesting that because Rep. Bradford was not "required" to make the calls, he's not protected by immunity. This is an absurd finding. For government employees, it would essentially mean that they need a directive issued in some form from their supervisor compelling them to take an action in order to be covered by immunity. For high-ranking government officials like legislators, who serve constituents at large and not a single "supervisor" capable of issuing such a directive, immunity would only be available where there is a mandatory duty imposed by the Constitution, statute or judicial decision to take an action. But government actors take lots of actions in the course of their positions that aren't specifically directed or mandated by the Constitution, statutes or judicial decisions. The District Court's focus on "required" acts will force such high-ranking officials to choose between exposing themselves to potential liability while taking actions intrinsically related to their jobs, but not specifically mandated, or retaining immunity but limiting activities to only mandatory ones. Choosing to retain immunity would drastically alter the way in which government services are offered in the future.

For these reasons, it's clear that the judgment of the District Court here would "expend itself on the public treasury or domain, or interfere with public administration." Waterfront Comm'n of New York Harbor v. Governor of New Jersey, 961 F.3d 234, 239 (3d Cir. 2020). In such circumstances, this Court has held that the state is the real, substantial party in interest in such circumstances, contrary to the District Court's holding here, which is therefore in error.

**B.      THE DISTRICT COURT'S REFUSAL TO GRANT REP. BRADFORD QUALIFIED IMMUNITY MEANS THAT NO GOVERNMENT OFFICIAL CAN RELY ON PRIOR JUDICIAL OR ADMINISTRATIVE DECISIONS TO REASONABLY DETERMINE WHETHER THEIR ACTIONS WILL VIOLATE THE LAW.**

At the time of Rep. Bradford's calls and until the District Court's Order, there was no case law or administrative decisions which held that a government actor like Rep. Bradford was a "person" for purposes of TCPA liability. The only existing decision with regard to such officials at the time of the calls and District Court's decision was an Order of the Federal Communications Commission (charged with implementing the TCPA), which concluded that calls made by state government callers in the conduct of official business are not calls made by "persons." In re: Broadnet Teleservices LLC, 35 FCC Rcd. 15052, ¶13 (2020); see also Government and Government Contractor Calls Under the Telephone Consumer Protection Act of 1991, 86 FR 9299-01. The FCC reiterated and clarified its "*2016 Broadnet Declaratory Ruling* and the *2020 Broadnet Order*"

and "made clear that federal and state government callers are not 'persons' subject to the TCPA's restrictions if their calls are made in the conduct of official business".  In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 U.S. Dep't of Health & Hum. Servs. Petition for Declaratory Ruling, No. CG02-278, 2023 WL 415622, at *6, (OHMSV Jan. 23, 2023). And, as explained by Rep. Bradford in his principal brief on appeal, there is a wealth of case law that statutory use of the word "person" does not include the sovereign or its actors. See Appellant's Brief at pp. 45-48.

Rep. Bradford, and by extension *Amici* here, relied on these decisions in placing the calls at issue and others like them. In cases of qualified immunity, the Court will look to existing case law where official action has been deemed unlawful to determine if the official in the case before it had "fair warning" that his conduct would violate someone's constitutional rights. Schneyder v. Smith, 653 F.3d 319, 329-30 (3d Cir. 2011). The Supreme Court has explained that the qualified immunity analysis does not require that action be deemed protected unless that precise action has previously been held unlawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, it does require that "in the light of preexisting law the unlawfulness must be apparent." Id. Otherwise, the lack of relevant binding precedent "strongly supports a finding that a right is not clearly

established," and therefore that the actor is entitled to qualified immunity. Sivella
v. Twp. of Lyndhurst, 2021 WL 3356934, *3 (3d Cir. 2021).

If preexisting law deeming activity "unlawful" can defeat qualified
immunity as the District Court's analysis suggests, then certainly decisions finding
specific conduct "not unlawful" must be a basis for granting qualified immunity.
Similarly, if the absence of binding cases on lawfulness supports qualified
immunity, then the presence of cases deeming conduct "not unlawful" must
support qualified immunity. Otherwise, this Court would be expecting officials
(often non-lawyers) not to rely on decisions of knowledgeable lawyers and jurists
and instead conduct an independent review of the law for themselves as to the
legality of their conduct – is that reasonable? That's the practical impact of the
District Court's decision in this case, which ignored the FCC decisions. A decision
that does not allow reasonable officials to rely on case law to support the
lawfulness of their conduct should not be permitted to stand.

## CONCLUSION

Representative Bradford, similar to his colleagues in the Pennsylvania House of Representatives and the Pennsylvania Senate, is not a "person" under the TCPA for the purposes of these calls and this litigation.  For the foregoing reasons, the Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives respectfully request that this Court grant Representative Bradford's Motion for Summary Judgment.

Respectfully submitted,

*/s/Rodney A. Corey*
Rodney A. Corey, Esq. (Pa. 69742)
James G. Mann, Esq. (Pa. 85810)
Office of Chief Counsel
House Republican Caucus
Pennsylvania House of Representatives
Suite B6, Main Capitol
Harrisburg, Pa. 17120
(717)783-1510

*/s/ Crystal H. Clark*
Crystal H. Clark, Esq. (Pa. 91069)
General Counsel
Senate Republican Caucus
Room 350, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-8724

*/s/Ronald N. Jumper*
Ronald N. Jumper, Esq. (Pa. 64346)
Shannon A. Sollenberger, Esq. (Pa. 308878)
Office of Chief Counsel
Senate Democratic Caucus
Room 535, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-3736

*Counsel for Amici Curiae*

Dated:  August 6, 2024

19

## <u>COMBINED CERTIFICATIONS OF COUNSEL</u>

1.     <u>Bar Membership:</u>  I am a member of the bar of this Court.

2.     <u>Word Count:</u>  The undersigned certifies that this brief uses a proportionally spaced, 14-point Times New Roman typeface, and that it complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,980 words.

3.     <u>Service:</u>  The undersigned certifies that she will serve this brief by the Court's electronic filing system on the date below on counsel of record here.

4.     <u>Identical Text:</u>  The undersigned certifies that the text of the electronically-filed brief is identical to the text of the 7 hard copies that will be delivered within 5 days of this electronic filing to the Clerk of the Court.

5.     <u>Virus Check:</u>  The undersigned certifies that virus detection was run on this file and that the program detected no virus.

<u>/s/ Crystal H. Clark</u>

Crystal H. Clark

Dated: August 6, 2024

Exhibit A

# LEGISLATIVE



# HANDBOOK
# 2019-2020

*http://ldpc6.legis.state.pa.us*

# FREQUENTLY DISCUSSED TOPICS

**Account Balances:** Members' monthly expense balances are available online through the Legislative Expense System. *You should print out and review your balances every month.* This will not only keep you apprised of your available funds, but it will help you to identify any missing expenses that you may have asked your staff to process[5]. This is especially important if any of those expenses were incurred close to 90 days ago.

**Advertisements:** Members will **not** be reimbursed for ads (including those listing your district office contact information) placed in any type of booster book, yearbook, ad book, charitable publication, or the like.

**Buses:** There is no reimbursement for buses or other vehicles to transport constituents.

**Cards:** There is no reimbursement for holiday cards.

**Decorations:** There is no reimbursement for decorations, such as holiday decorations or those decorations you may wish to use at legislative events.

**Durable Goods/Purchased Fixed Assets:** A durable good is any asset with a useful life of greater than one year. The House guidelines permit the purchase of durable goods, $500 or less, that meet a legislative purpose (the $500 does not include tax). If an asset exceeds $500, the Member may pay the difference out of pocket, but the item remains the property of the House of Representatives. The "Low Cost Equipment and Furniture Form" must be filed with the Comptroller to account for this purchase. When you leave office, you will be contacted by the Comptroller about properly accounting for the purchase, return, or donation of these items. If you must "scrap" an item prior the end of your term, please contact the Comptroller's Office for instructions.

**Events and Fairs:** The event must support a legislative purpose for associated expenses to be reimbursed. It is always wise to contact the Comptroller's Office beforehand for guidance on what items will be reimbursed. Even if the event itself does have a legislative purpose, certain items are not reimbursable. Examples of such non-reimbursable items include, *but are not limited to*: parade supplies, entertainment, balloons, other decorations, clothing (either given away or worn by staff), hired help, games, crayons, flu shots, popcorn machines, trinkets or tchotchkes, etc.

**Flags:** Each Member can receive three 3 x 5 nylon U.S. or PA flags per year. All other flags may be purchased through the Chief Clerk's Office and the cost will automatically be deducted from your Member's Accountable Expense Account. Members are not permitted to resell these flags to third parties.

---

[5] Failure of staff to timely submit your expense reimbursement requests to the Comptroller's Office cannot form the basis for an exception to the 90-day rule. See House Rule 14.

**Framing:** Reimbursement for framing can only be made if the content is of legislative significance, such as landmarks in your district, citations, or signed bills.

**Insurance for events off premise:** If you sponsor a legislative event at a facility not owned by the Commonwealth, the facility may ask that you provide your own insurance. Legislative events are covered under the Commonwealth's Self Insurance Program. Before spending unnecessary funds, please contact the House Counsel's Office to confirm that insurance is covered and for a letter explaining this program if one is needed.

**Late Fees:** There is no reimbursement for late fees.

**Leased Furniture and Equipment:** You must have a current copy of your lease and lessor's W-9 on file with the Comptroller's Office, as well as your caucus legal office, in order to be reimbursed for the rental of these items. If you choose to exercise a lease purchase option, contact the Comptroller for instructions on documentation stating that you will assign ownership to the House when you leave office.

**Legislative Purpose:** This threshold must be satisfied EVERY time a Member seeks reimbursement. Every legislative event needs to have a logical and substantive connection to government work or programs in order for the Comptroller to release taxpayer funds. Members are encouraged to call for guidance, especially prior to spending any material amount of money on a large event. Where necessary, the Comptroller's Office will request additional documentation to support the legislative purpose of an expenditure. Members are encouraged to review all supporting documentation of voucher requests for evidence of legislative purpose, in order to avoid unnecessary delays in processing the reimbursement.

**Prizes, Gifts, and Giveaways:** There is no reimbursement for expenses related to a prize, gift, or giveaway, including but not limited to: clothing, giveaway items such as office supplies or any other item imprinted with the Member's name, gift cards, door prizes, trinkets, etc. If you have a question about an item, contact the Comptroller's Office prior to purchase.

**Reimbursement Dates:** DGS vehicle logs and any other reimbursement that is taxable (e.g. taxable travel or meals) must be submitted to the Comptroller's Office by the 10th of every month. Members' taxable expenses are only processed once a month, along with Member payroll. All other reimbursements must be submitted no later than 90 calendar days of the incurred date. Because all reimbursements are issued by the PA Treasury Department, the overall turnaround time from the date of voucher receipt to actual date of payment *averages* 10 business days. However, failure to provide documentation of legislative purpose or other required information may significantly extend the processing time.

**Signs:** With few exceptions, each Member may be reimbursed for *one* sign per district office. The sign can list the Member's name, office hours, address, and telephone number. It cannot contain any political information. Other signs, bills, or

Exhibit B

# ELECTRONIC COMMUNICATION EXPENSES

## COMO Policy 2018:01

**Effective: 7/01/2017**
**Approved: 1/19/2018**



Pursuant to Rule 6 (a) of the _Financial Operating Rules of the Senate_, this policy establishes guidelines for the payment of Members' electronic communication expenses for those Senate accounts indicated below.

### Types

Reimbursement shall be made for electronic communication expenses for the following:

1.    Constituent Automated Messaging (Electronic email blasts to constituents, SMS texts)

2.    Tele-town halls

3.    Auto-dialing regarding specific Senate events being held for benefit of constituents.

### Authorized Accounts

Accounts authorized to make these reimbursements are:

1.    Postage and Communication Expenses Account

2.    Caucus Operations Account

3.    Senators' Legislative Accountable Expense Account

1

Exhibit C

# PAYMENT OF LEGAL SERVICES

## COMO Policy  2008:01

**Effective:  4/9/08 (amended 6/18/08)**



### Background & Intent

This Policy formalizes a predictable, equitable and efficient system through which the costs associated with rendering legal services may be paid by the Senate of Pennsylvania.  Legal fees can be, and have been, incurred in various manners, including traditional legal representation in judicial proceedings, rendering advice and counsel, legal inquiries, and drafting of contracts, agreements or legislative proposals. This Policy codifies and updates existing treatment of payment for legal representation of the Senate and its members, officers, employees and component entities.

This Policy utilizes a bipartisan mechanism through which requests for payment for legal representation may be quickly and fairly resolved.

This Policy assumes the contract for legal services meets all other requirements contained in relevant COMO policies.

The terms of this Policy, rather than other COMO Policies, shall control contracts for legal services to the extent they are inconsistent.

This Policy shall not be deemed to preempt or supersede the applicable law of the Commonwealth regarding confidentiality, rights, privileges or immunities.

### Purpose & Circumstances

Approved contracts for legal services may be reimbursed from Senate funds based on the following criteria as determined by the President Pro Tempore, the Republican Floor Leader, and/or the Democratic Floor Leader:

1.   The services are incurred as a result of a member, officer, or employee's official legislative duties or activities performed in good faith such as;

(a)    Members, officers or employees who perform administrative or ministerial functions. For example, response to a subpoena directed to an officer for Senate records.  The officer may require counsel to safeguard the interests of the Senate while overseeing compliance with the subpoena;

(b)    Members, officers or employees who have, or are believed to have, information arising out of their official capacity regarding activities under investigation;

(c)    Members, officers or employees whose good faith actions taken in their official capacity are subject to investigation;

(d)    For purposes of subsections a, b and c above, authority for payment of legal services for an individual expires upon the filing of criminal charges against the individual or his or her listing as an unindicted co-conspirator unless in the case of an unindicted co-conspirator there exists no basis for prosecution as a matter of law or fact;

(e)    For purposes of subsections a, b and c above, the occurrence of activities performed in good faith by individuals in their official capacity as members, officers or employees is determinative of eligibility for payment for legal services whether the individual currently is in Senate service or not;

(f) This Policy shall be applied consistent with the provisions of 18 Pa C.S. 5303;

(g)    This section is intended to provide for access to legal services for members, officers, and employees for actions taken in good faith in their official capacities similar to access provided to Officials in the Executive and Judicial Branches.

2.   The services are incurred to resolve a legal matter affecting the authority, powers or actions of the Senate of Pennsylvania or an official authority, power or action of a particular member, officer, employee or entity.

3.   The services are a result of a challenge or response to an Act of the General Assembly.

4.   The services are incurred to facilitate functions, actions or abilities of the Senate, e.g., impeachment proceedings, televising Senate proceedings, contract negotiation or drafting; or

5. The services are incurred as a result of actions taken in good faith by a member, officer or employee in their official capacity, or acting "under color of state law".

6. The amount charged for the legal services shall be reasonable for the services provided.

7. An attorney providing legal services pursuant to this Policy shall take reasonable steps to avoid conflicts of interest and possible conflicts of interest.

### *Funding Source*

Unless otherwise agreed, the cost of legal services pursuant to an approved legal services contract shall be paid from an appropriation under the control of a supervising member or officer.

If a request is made to pay legal fees from institutional accounts, consideration shall be given to the following factors:

1. Whether the matter is a criminal or civil judicial proceeding;

2. The circumstances in which the matter was initiated. Whether the Senate, a member, officer, employee, or entity involved is a defendant, plaintiff, or witness;

3. Whether the matter is partisan in nature; whether partisan concerns will be affected by a final resolution of the matter; whether the two caucuses be opposed in the litigation;

4. Whether the matter is non-partisan or institutional in nature; whether the circumstances that have given rise to the legal expenses are ones that could have affected any other member or entity;

5. Whether both caucuses agree that the matter involves an Act of the General Assembly to which the Senate should respond because the final resolution of the matter could affect the authority or prerogatives of the Senate on an ongoing basis;

6. Whether the legal services benefit the entire body or relate to the functions of the body;

7. Whether each Caucus is engaging its own counsel for the matter.

### *Contract Form*

Contracts for legal services shall be formalized with an engagement letter signed by both the Senate and the attorney or law firm providing the legal services. A contract number shall be assigned in the same manner as provided in the COMO policy on Service Purchase Contracts.

Exhibit D



# pennsylvania
## DEPARTMENT OF GENERAL SERVICES

January 22, 2020

RE:  Insurance Coverage -   Commonwealth of Pennsylvania

To Whom it May Concern:

The Commonwealth of Pennsylvania does not have a commercial insurance policy to generate the standardized certificate of liability insurance form. As a self-insured governmental unit, the Commonwealth is submitting this letter to fulfill the requirements of your agreement. Because our liability coverage is governed by the Act, we do not have the option to list entities as an additional insured. However, it is the intent of the Commonwealth to respond to the fullest extent of the Act to any claims arising out of the above referenced event.

The Commonwealth's exposure to liability (other than Workers' Compensation Liability) is governed by the dictates of Act 152, as amended by Act 142 of 1980, commonly known as the Sovereign Immunity Tort Claims Act.  Under this Act, sovereign immunity was reaffirmed but waived in nine (9) specific areas of liability. Section 8522 (b) 2 specifically relates to medical professional liability claims [malpractice coverage].  In accordance with Section 8528 of the statute (see attached) eligible claims or suits against the Commonwealth, its officials or employees within the waived areas may be settled up to $250,000.00 per person; $1 million each occurrence.  These limits have been affirmed by the Pennsylvania Supreme Court.

The Commonwealth has established a Tort Claims Self-Insurance Program to handle these claims or suits, which is administered by the Bureau of Finance and Risk Management, Department of General Services in close relationship with the Office of Attorney General. There is no policy number assigned to the "Tort Claims General Self Insurance Program".

All municipalities and private concerns have accepted the Commonwealth's Self-Insurance Program as a viable alternative to commercial insurance.  The Self-Insurance Program has responded to over 296,088 claims and processed settlements in excess of $744 million.

This coverage applies to all Commonwealth departments, officials and employees while performing Commonwealth activities.  The coverage is in effect whenever and wherever the Commonwealth is conducting business.

The coverage is an occurrence policy which will respond to any claims brought against the medical professional for work done while employed by the Commonwealth, regardless of when the claim is presented.

2

Commonwealth owned properties, including Commonwealth owned building contents and Commonwealth owned building contents at leased locations are self-insured for fire or other casualty under the State Insurance Fund created by Act 227 (1915 P.L. 524, approved May 14, 1915, as amended). The Fund is administered by the Department of General Services. The State Insurance Fund provides coverage for fire, casualty, perils of flood and flood related hazards or any other natural disasters for approximately 14,000 Commonwealth owned properties with a value of $21.5 Billion. The limit of coverage is $3,000,000 any one loss.

There also is $1,000,000,000 in excess private insurance over $2,500,000 retention for the Main Capitol Complex of buildings and all other owned properties, including Terrorism Coverage with $500,000,000 limits. The Excess Property insurance policy was extended to cover the perils of Flood and Earthquake with a sub-limit of $25,000,000 any one loss over $2,500,000 retention. The Commonwealth is certified as a Self-Insurer under the Federal Flood Disaster Act of 1973, which affords Federal funds as partial reimbursement (for loss amounts not covered by the Fund or excess insurance) to the Commonwealth for such losses.

Additionally, the Commonwealth of Pennsylvania is certified as a qualified self-insurer under the Pennsylvania Motor Vehicle Financial Responsibility Act and the Workers' Compensation Act providing the appropriate benefits required as a self-insurer.

If you have any questions regarding the Commonwealth's Self-Insurance Program, please feel free to contact me at the phone number or address indicated below

Respectfully,

*Kristina M. Landvater*

Kristina M. Landvater, Director
Bureau of Finance & Risk Management

3

# SOVEREIGN IMMUNITY

## ACT 152 [ AS AMENDED BY ACT 142 OF 1980 ]

*PENNSYLVANIA CONSOLIDATED STATUTES*

*THE JUDICIAL CODE (TITLE 42)*

*CHAPTER 85 MATTERS AFFECTING GOVERNMENT UNITS*

§ 8501. DEFINITIONS

The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

"Act."
    Includes a failure to act.

"Commonwealth party."
    A Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment.

"Employee."
    Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

"Injury."
    Includes death.

"Judicial determination."
    Any determination by a court of competent jurisdiction including any settlement approved by such court.

"Local agency."
    A government unit other than the Commonwealth government. The term includes an intermediate unit.

*SUBCHAPTER B -- ACTIONS AGAINST COMMONWEALTH PARTIES*

SOVEREIGN IMMUNITY

§ 8521. Sovereign immunity generally.
§ 8522. Exceptions to sovereign immunity.
§ 8523. Venue and process.
§ 8524. Defenses.
§ 8525. Legal assistance.
§ 8526. Counterclaim by the Commonwealth.
§ 8527. Indemnity relating to inmate health care.

4

§ 8528. Limitations on damages.

§ 8521. SOVEREIGN IMMUNITY GENERALLY.
(a) General rule.--Except as otherwise provided in this subchapter, no
provision of this title shall constitute a waiver of sovereign immunity for
the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed;
specific waiver) or otherwise.
(b) Federal courts.--Nothing contained in this subchapter shall be
construed to waive the immunity of the Commonwealth from suit in Federal
courts guaranteed by the Eleventh Amendment to the Constitution of the

United States.

§ 8522. EXCEPTIONS TO SOVEREIGN IMMUNITY.
(a) Liability imposed.--The General Assembly, pursuant to section 11 of
Article I of the Constitution of Pennsylvania, does hereby waive, in the
instances set forth in subsection (b) only and only to the extent set forth
in this subchapter and within the limits set forth in section 8528
(relating to limitations on damages), sovereign immunity as a bar to an
action against Commonwealth parties, for damages arising out of a negligent
act where the damages would be recoverable under the common law or a
statute creating a cause of action if the injury were caused by a person
not having available the defense of sovereign immunity.
(b) Acts which may impose liability.--The following acts by a Commonwealth
party may result in the imposition of liability on the Commonwealth and the
defense of sovereign immunity shall not be raised to claims for damages
caused by:

1. Vehicle liability.--The operation of any motor vehicle in the
   possession or control of a Commonwealth party. As used in this
   paragraph, "motor vehicle" means any vehicle which is self-propelled
   and any attachment thereto, including vehicles operated by rail,
   through water or in the air.

2. Medical-professional liability.--Acts of health care employees of
   Commonwealth agency medical facilities or institutions or by a
   Commonwealth party who is a doctor, dentist, nurse or related health
   care personnel.

3. Care, custody or control of personal property.--The care, custody or
   control of personal property in the possession or control of
   Commonwealth parties, including Commonwealth-owned personal property
   and property of persons held by a Commonwealth agency, except that
   the sovereign immunity of the Commonwealth is retained as a bar to
   actions on claims arising out of Commonwealth agency activities

5

involving the use of nuclear    and    other    radioactive
equipment, devices and materials.

4. Commonwealth real estate, highways and sidewalks.--A dangerous
   condition of Commonwealth agency real estate and sidewalks, including

5. Commonwealth-owned real property, leaseholds in the possession of a
   Commonwealth agency and Commonwealth-owned real property leased by a

6. Commonwealth agency to private persons, and highways under the
   jurisdiction of a Commonwealth agency, except conditions described in
   paragraph (5).

7. Potholes and other dangerous conditions.--A dangerous condition of
   highways under the jurisdiction of a Commonwealth agency created by
   potholes or sinkholes or other similar conditions created by natural
   elements, except that the claimant to recover must establish that the
   dangerous condition created a reasonably foreseeable risk of the kind
   of injury which was incurred and that the Commonwealth agency had
   actual written notice of the dangerous condition of the highway a
   sufficient time prior to the event to have taken measures to protect
   against the dangerous condition. Property damages shall not be
   recoverable under this paragraph.

8. Care, custody or control of animals.--The care, custody or control of
   animals in the possession or control of a Commonwealth party,
   including but not limited to police dogs and horses and animals
   incarcerated in Commonwealth agency laboratories. Damages shall not
   be recoverable under this paragraph on account of any injury caused
   by wild animals, including but not limited to bears and deer, except
   as otherwise provided by statute.

9. Liquor store sales.--The sale of liquor at Pennsylvania liquor stores
   by employees of the Pennsylvania Liquor Control Board created by and
   operating under the act of April 12, 1951 (P.L.90, No.21), known as
   the "Liquor Code," if such sale is made to any minor, or to any
   person visibly intoxicated, or to any insane person, or to any person
   known as an habitual drunkard, or of known intemperate habit.

10.    National Guard activities.--Acts of a member of the Pennsylvania
   military forces.

11. Toxoids and vaccines.--The administration, manufacture and use of a
   toxoid or vaccine not manufactured in this Commonwealth under the
   following conditions:

   (i) The toxoid or vaccine is manufactured in, and available only
   from, an agency of another state.

6

(ii) The agency of the other    state will not make the toxoid or
vaccine available to private persons or corporations, but will only
permit its sale to another state or state agency.

(iii) The agency of the other state will make the toxoid or vaccine
available to the Commonwealth only if the Commonwealth agrees to
indemnify, defend and save harmless that agency from any and all
claims and losses which may arise against it from the administration,
manufacture or use of the toxoid or vaccine.

(iv) A determination has been made by the appropriate Commonwealth
agency, approved by the Governor and published in the Pennsylvania
Bulletin, that the toxoid or vaccine is necessary to safeguard and
protect the health of the citizens or animals of this Commonwealth.

(v) The toxoid or vaccine is distributed by a Commonwealth agency to
qualified persons for ultimate use.

The Commonwealth shall make the toxoid or vaccine available to a qualified
person only if the person agrees to indemnify, defend and save harmless the
Commonwealth from any and all claims and losses which may arise against the
Commonwealth from the manufacture, distribution, administration or use of
the toxoid or vaccine.

§ 8523. VENUE AND PROCESS.
(a) Venue.--Actions for claims against a Commonwealth party may be brought
in and only in a county in which the principal or local office of the
Commonwealth party is located or in which the cause of action arose or
where a transaction or occurrence took place out of which the cause of
action arose. If venue is obtained in the Twelfth Judicial District
(Dauphin County) solely because the principal office of the Commonwealth
party is located within it, any judge of the Court of Common Pleas of
Dauphin County shall have the power to transfer the action to any
appropriate county where venue would otherwise lie.
(b) Process.--Service of process in the case of an action against the
Commonwealth shall be made at the principal or local office of the
Commonwealth agency that is being sued and at the office of the Attorney
General.

§ 8524. DEFENSES.
The following common law defenses are available:

1. An official of a Commonwealth agency, or a member of the General
   Assembly or the judiciary may assert on his own behalf, or the
   Commonwealth may assert on his behalf, defenses which have heretofore
   been available to such officials.

2. An employee of a Commonwealth agency, or a member of the General
   Assembly or of the judiciary may assert on his own behalf, or the
   Commonwealth may assert on his behalf, the defense that the employee

7

was acting pursuant to a duty        required by a statute or statutorily authorized regulation.

3. An employee of a Commonwealth agency, or a member of the General Assembly or of the judiciary may assert on his own behalf, or the Commonwealth may assert on his behalf, the defense that the act was within the discretion granted to the employee by statute or statutorily authorized regulation.

§ 8525. LEGAL ASSISTANCE.

When an action is brought under this subchapter against an employee of the Commonwealth government, and it is alleged that the act of the employee which gave rise to the claim was within the scope of the office or duties of the employee, the Commonwealth through the Attorney General shall defend the action, unless the Attorney General determines that the act did not occur within the scope of the office or duties of the employee. In the latter case, if it is subsequently determined that the act occurred within the scope of the office or duties of the employee, the Commonwealth shall reimburse the employee for the expense of his legal defense in such amounts as shall be determined to be reasonable by the court. If an action is brought against a Commonwealth government employee for damages on account

of injury to a person or property and it is not alleged that the act of the employee which gave rise to the claim was within the scope of his office or duties, and he successfully defends the action on the basis that the act was within the scope of his office or duties, and he has given prior notice to the Attorney General and the Attorney General has refused to defend the action, he shall likewise be entitled to the reasonable expenses of the defense.

§ 8526. COUNTERCLAIM BY THE COMMONWEALTH.

In any action initiated under this subchapter, the Commonwealth may set forth any cause of action or set-off which it has against the plaintiff. A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff.

§ 8527. INDEMNITY RELATING TO INMATE HEALTH CARE.

The Commonwealth shall indemnify against liability a municipal corporation for a claim against the municipal corporation arising from an act or omission of the municipal corporation, its officials, its employees or agents when participating in a program for the provision of medical treatment in a health care facility to inmates from a Commonwealth correctional facility pursuant to a program authorized by the Department of Corrections. This indemnification shall not extend to claims of medical malpractice against any person nor to claims against the health care facility, its employees or agents nor to claims against the municipal corporation that are the result of gross negligence, wanton and reckless acts or intentional misconduct by the municipal corporation, its officials, employees or agents.

8

LIMITATIONS ON DAMAGES

§ 8528. LIMITATIONS ON DAMAGES.

(a) General rule.--Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

(b) Amount recoverable.--Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

(c) Types of damages recoverable.--Damages shall recoverable only for:

1. Past and future loss of earnings and earning capacity.

2. Pain and suffering.

3. Medical and dental expenses including the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.

4. Loss of consortium.

5. Property losses, except that property losses shall not be recoverable in claims brought pursuant to section 8522(b)(5) (relating to potholes and other dangerous conditions).