# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

№. 24-1925

———————————

Andrew R. Perrong,

           *Plaintiff-Appellee,*

v.

Matthew Bradford

           *Defendant-Appellant.*

———————————

Appeal from Memorandum Opinion and Order
Denying Motion for Summary Judgment in No. 2:23-cv-00510 in the
United States District Court for the Eastern District of Pennsylvania.
Honorable Joshua David Wolson

———————————

## BRIEF OF APPELLEE

———————————

s/ ANDREW R. PERRONG, ESQ
ANDREW R. PERRONG, ESQ.
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
(215) 225-5529
*Plaintiff-Appellee*

# **Table of Contents**

I.    **Counter-Statement of Jurisdiction**............................................1

II.   **Counter-Statement of Issues**.......................................................2

III.  **Counter-Statement of the Case**................................................3

IV.   **Summary of Argument**.................................................................7

V.    **Argument**.........................................................................................10

  A.  Bradford is not entitled to sovereign immunity in this individual capacity suit, and the Commonwealth is not the real party in interest just because Bradford used the Commonwealth's equipment or funds to place the calls. ......................................................................10

    1.  Bradford commits the same error he did at the District Court, assuming, without proving, that he was acting in his official capacity and that this suit is an official capacity suit. .....................13

    2.  The brilliance of the District Court's party in interest analysis shows why *Cunningham* and *Cheng* are eminently distinguishable. 18

    3.  Merely because Bradford used Commonwealth resources to place the calls does not transform the Commonwealth into the real party in interest. Moreover, states are not immune from the Communications Act's requirements, of which the TCPA is part. ..24

    4.  The District Court appropriately applied the summary judgment standard. The Commonwealth is not the real party in interest, as counsel for Bradford conceded at oral argument. Accordingly, Bradford made no showing that he was entitled to sovereign immunity as a matter of law..............................................29

  B.  Bradford is not entitled to qualified immunity because the TCPA has clearly prohibited persons like him from making prerecorded robocalls since 1991. ................................................................................38

    1.  A review of "clearly established" qualified immunity jurisprudence and TCPA case law reveals that the TCPA's robocall prohibition was "clearly established." ................................................40

2.    The District Court's conclusion that Bradford was a "person" under the TCPA was correct because holding otherwise would necessarily require a showing that Bradford was acting as a "sovereign" and therefore entitled to sovereign immunity...............52

**VI.  Conclusion**....................................................................................57

**VII. Combined Certificates of Compliance and Service** .............59

## Table of Citations

### Cases

*Allen B. Dumont Labs v. Carroll*, 184 F.2d 153 (3d Cir. 1950) ..............28

*Andrus v. Glover Constr. Co.*, 446 U.S. 608 (1980) ...........................48, 49

*AT&T Commc'ns v. BellSouth Telecommunications Inc.*, 238 F.3d 636 (5th Cir. 2001)........................................................................................54

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 621 (2020) 5, 39, 48, 49

*Bayer v. Monroe Cnty. Child. & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009)....................................................................................................2

*Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233 (3d Cir. 2005).......34, 36, 37

*Blake v. Wright*, 179 F.3d 1003 (6th Cir. 1999).......................................41

*Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015) ....44, 51

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ..............................46

*Cheng v. Speier*, 2023 WL 4490352, (9th Cir. July 12, 2023)....21, 23, 27, 52, 54, 55, 56

*Cheng v. Speier*, 609 F. Supp. 3d 1046 (N.D. Cal. 2022) ........................22

*Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140 (3d Cir. 1995) ......................30

*Cunningham v. Lester*, 990 F.3d 361 (4th Cir. 2021)..... 20, 21, 23, 27, 52, 54, 55, 57

*Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023) ................... 39

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941) ................................................................................................ 28

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989) ................................................................................ 36

*Hafer v. Melo*, 502 U.S. 21 (1991) .......................................................... 12

*Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424 (1963)........................................................................................ 28

*HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180 (3d Cir. 2021) . 16, 17, 41

*Hoellen v. Annunzio*, 468 F.2d 522 (7th Cir. 1972) ................................ 16

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................. 43, 44

*In re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936 (8th Cir. 2007)........................................................................................ 28

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019)........... 39

*Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682 (1949) 26

*Lewis v. Clarke*, 581 U.S. 155 (2017) ............. 12, 14, 18, 25, 26, 31, 33, 37

*Mack v. Yost*, 63 F.4th 211 (3d Cir. 2023) ............................................. 43

*Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164 (3d Cir. 2016) ................................................................ 41

*Melo v. Hafer*. 912 F.2d 628 (3d Cir. 1990)............................................ 31

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).............................. 1

iv

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ..23, 34, 35

*People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139 (3d Cir. 1984) ................................................................. 42

*Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021)..................................................... 51, 52

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) ..................................... 14

*Reichle v. Howards*, 566 U.S. 658 (2012)................................................. 42

*Rivera v. Redfern*, 98 F.4th 419 (3d Cir. 2024)....................................... 49

*Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011)............................. 45, 51

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) ..39

*United States v. Brewster*, 408 U.S. 501 (1972)................................. 16, 17

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002)................................................................................. 54

*Walden v. City of Providence*, 495 F. Supp. 2d 245 (D.R.I. 2007)........... 41

*Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234 (3d Cir. 2020)......................................... 34, 35, 36

*Zaloga v. Borough of Moosic*, 841 F.3d 170 (3d Cir. 2016) ..................... 41

**Statutes**

28 U.S.C. § 1331................................................................................. 1

28 U.S.C. §1291................................................................................. 2

47 U.S.C. § 153............................................................................ 11, 39

47 U.S.C. § 227................................. 1, 4, 11, 39, 42, 50, 51, 52

47 U.S.C. § 253................................................................................. 54

v

47 U.S.C. § 301 .................................................................... 28

47 U.S.C. § 305 .................................................................... 27

**Other Authorities**

Appellant's Brief .................................................. 26, 29, 31, 32, 40, 50, 51

FCC Enforcement Advisory DA 16-264/2016-03, *Biennial Reminder for Political Campaigns About Robocall and Text Abuse* (Mar. 14, 2016) 47

Joint Appendix ("A.") ... 5, 10, 11, 12, 13, 15, 17, 18, 19, 20, 22, 30, 31, 33, 34, 42, 43, 45, 50, 51, 56, 57

*Political Campaign Robocalls and Robotexts Rules*, FCC (July 17, 2024) .................................................................................... 47

Pub. L. No. 102-243, 105 Stat. 2394 (1991) ................................ 4

*The Simpsons: Lisa's Date with Destiny* (Fox television broadcast Dec. 15, 1996) ...................................................................... 38

## I.   COUNTER-STATEMENT OF JURISDICTION

Plaintiff-Appellee Andrew R. Perrong brought this action asserting violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA") against Defendant-Appellant Matthew Bradford. The United States District Court for the Eastern District of Pennsylvania had jurisdiction under 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012) (holding that federal courts have subject matter jurisdiction over TCPA suits).

This matter comes before this Court on a Memorandum Opinion and Order denying the Defendant's Motion for Summary Judgment. As such, this Court lacks jurisdiction to hear this interlocutory appeal for two main reasons, which were more fully briefed in the Appellee's response to this Court's jurisdictional order. *First*, although Defendant couches this case as a sovereign immunity, or alternatively a qualified immunity case, this is not a qualified immunity or sovereign immunity case. The defense of qualified immunity is wholly inapplicable in this case and is only available to *governmental officials*, not individuals acting in, and sued in, their individual capacities who also happen to be governmental officials. *Second*, the issue of qualified immunity was not

properly raised at the district court level and therefore has been waived on appeal, thus leaving nothing for an interlocutory appeal and further divesting this Court of jurisdiction.

However, to the extent that this Court does hold that it has appellate jurisdiction, it would assert such jurisdiction under 28 U.S.C. §1291. If the Court were to do so, it would necessarily hold that the denial of summary judgment rested on immunity grounds. As such, this matter would constitute a denial of a motion for summary judgment on immunity grounds with no cross-motion, under which this Court exercises a *de novo* standard of review. *Bayer v. Monroe Cnty. Child. & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009). Accordingly, this Court must apply the same test required of the district court and view inferences in the light most favorable to the nonmoving party. *Id.*

## II.    COUNTER-STATEMENT OF ISSUES

This appeal arises from the District Court's order denying summary judgment on Bradford's sovereign immunity and qualified immunity claims. The questions presented are therefore as follows:

**Issue 1:**

Is Bradford entitled to raise the defense of sovereign immunity when he has conceded the issue, when he did not act at the direction of the Commonwealth or its laws, and when a judgment in this case would legally bind Bradford, not the Commonwealth?

*Suggested answer:* No.

**Issue 2:**

Is Bradford entitled to raise the defense of qualified immunity, despite being a "person" under the TCPA, and thus being reasonably aware that he was subject to the statute's clear and plain textual reach when he violated it?

*Suggested answer:* No.

### III.    COUNTER-STATEMENT OF THE CASE

Defendant and his *Amici* ask this Court to bless Bradford's large scale sending of highly unlawful non-emergency "robocalls" sent using his prerecorded voice because he happens to be a member of the Commonwealth of Pennsylvania's General Assembly. They do so despite a number of other lawful methods Bradford has and had at his

immediate disposal to communicate with the general public, including manually dialed calls, text messages, emails, letters, and even prerecorded "robocalls," albeit those sent with the recipients' prior express written consent. A holding that Bradford is entitled to sovereign or qualified immunity for such plainly unlawful conduct that has been illegal since 1991, despite acting on his own and not pursuant to any law, regulation, or Commonwealth directive, and despite being sued in his individual capacity for actions he individually took, would take a wrecking ball to the TCPA's unambiguous statutory provisions prohibiting a narrow type of calling conduct–prerecorded robocalls.

The TCPA reflects Congress' intent to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms . . . in a way that protects the privacy of individuals." Pub. L. No. 102-243, 105 Stat. 2394 (1991). As a result, the TCPA broadly prohibits all prerecorded calls to certain types of protected lines, including cell phones and numbers for which the called party is charged, absent two exceptions: prior express written consent and emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii). The Supreme Court has upheld those limited restrictions as constitutional in light of

4

requests for unconstitutional exemptions which would have favored
political calls and calls made to collect government debt. *Barr v. Am.
Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020).

In the instant case, the Plaintiff filed suit against Bradford, in his
individual capacity, alleging that Bradford violated the TCPA's
prohibition against calling a protected number with a prerecorded voice
without consent. (A114–A130). Critically, the complaint was brought
against Bradford in his individual capacity as a person, and not in his
official capacity. This fact is evident in that the complaint bore
Bradford's home address and Plaintiff's process server served Bradford
at his home. Both Plaintiff and Bradford seemed to agree on that issue
at the Rule 16 conference, along with Bradford conceding that he was
not entitled to state or derivative sovereign immunity. (A156–A161.)

Defendant Bradford initially attempted to argue that he
personally did not place the calls complained of, and thus was entitled
to qualified immunity. (A162–A163.) The District Court permitted the
parties to conduct discovery, including into the question of whether
Bradford personally placed the calls at issue. (A164–A165.) Bradford
propounded no discovery of his own. Bradford, as an individual,

adduced no evidence disproving that he was a person, nor did he adduce evidence showing that he placed the calls in a non-personal capacity, such as by citing to a Commonwealth law, regulation, or obligation, directing him to send such prerecorded robocalls. To the contrary, the evidence adduced showed that the sending of robocalls was a discretionary function, with some individual members sending more (or no) robocalls as compared to others. Because he provided no evidence demonstrating an entitlement to sovereign or qualified immunity, the District Court appropriately denied Bradford's motion for summary judgment, holding that Bradford did not meet his burden of demonstrating the absence of a material fact that entitled *him* to judgment as a matter of law on those issues.

Despite pointing to no evidence supporting his position, Bradford now attempts to argue at this Court that no genuine factual dispute existed as to his entitlement to immunity. But even if no genuine dispute existed as to any fact, the District Court appropriately held that the facts adduced by Bradford did not show that he was entitled to judgment *as a matter of law*, the second prong of the summary judgment standard, because he was neither the true party in interest

6

for sovereign immunity purposes, nor entitled to qualified immunity for conduct that clearly ran afoul of the TCPA's plain statutory text.

## IV.    SUMMARY OF ARGUMENT

The District Court's denial of summary judgment was appropriate because Bradford made no showing that he was legally entitled to either qualified or sovereign immunity. The District Court was correct on the sovereign immunity claims for at least four reasons, and was correct on the qualified immunity claims for at least three.

As to the sovereign immunity claims, the District Court appropriately held, based on the evidence presented, that Bradford made an insufficient showing that a suit he conceded was an individual capacity suit was in reality a suit against the Commonwealth as the real party in interest, holding that Bradford, not the Commonwealth, would be legally bound by a decision in this case. In coming to that conclusion, the District Court appropriately applied binding Supreme Court precedent delineating the relatively narrow set of circumstances in which an individual capacity suit is nevertheless held to be a suit against the sovereign, contrary to other authority cited by Bradford,

7

which both dealt with government employees making calls at the government's direction and pursuant to statutory requirements.

The Plaintiff here advances further authority and reasons for why Bradford's contentions that the Commonwealth paid for the calls made using its equipment and will indemnify him are nevertheless insufficient for a holding that the Commonwealth is the real party in interest. The Supreme Court already rejected nearly identical arguments, and in any event, state governments are still subject to the TCPA's prohibitions. Accordingly, the District Court applied the summary judgment standard appropriately in holding that Bradford was not entitled to sovereign immunity as a matter of law because he did not make a sufficient legal showing that the Commonwealth, and not himself personally, was the real party in interest.

Judge Wolson also got it right on qualified immunity. As an initial matter, Judge Wolson appropriately held that the plain text of the TCPA was violated on five occasions on this case. Bradford doesn't seem to take issue with that holding. And Judge Wolson also had no trouble concluding that the Plaintiff's rights under the TCPA–the right not to receive prerecorded robocalls from persons without consent–was

8

"clearly established" for purposes of a qualified immunity analysis. And though Bradford argues that the right was not "clearly established" with the sufficient degree of specificity, he places undue reliance on constitutional cases requiring binding precedent while ignoring the "obviousness" exception to the "clearly established" requirement, especially insofar as it applies to claims alleging statutory violations.

Bradford's related argument, that he did not violate a "clearly established" right because his status as a "person" under the statute was not sufficiently clear, fares no better, not the least of which because his argument on this point is entirely dependent on a holding both that "person" excludes the "sovereign" and that he is a "sovereign" for qualified immunity purposes. But this argument fails for two reasons. First, as defined in the Communications Act, the word "person" includes state governments. Second, because Bradford failed to prove and indeed conceded that it was inappropriate to treat him as a sovereign for purposes of the "real party in interest" analysis on sovereign immunity, he can't make an argument that he should be excluded from the plain language meaning of a "person" under the TCPA, which he clearly is.

Permitting persons to send non-consensual prerecorded robocalls with immunity because they happen to be politicians would allow for widescale sending of annoying robocalls that the general public, and the Congress, have already expressed a generalized desire not to receive. That may be what Bradford and his *Amici* prefer, but the holding they ask this Court to adopt is not one that the TCPA permits. In affirming the District Court's eminently well-reasoned opinion, however, this Court would give due regard to Congressional intent and the plain statutory text while providing for numerous other alternative means for politicians like Bradford and his *Amici* to express themselves.

There can be no question that this Court must affirm.

## V.  ARGUMENT

A.  *Bradford is not entitled to sovereign immunity in this individual capacity suit, and the Commonwealth is not the real party in interest just because Bradford used the Commonwealth's equipment or funds to place the calls.*

"The best way to know what Congress intended when it passed a statute is to look at the text of the law. The Telephone Consumer Protection Act is no exception." (A177.) Of relevance here, the TCPA prohibits calls placed using any prerecorded voice by any "person." 47

10

U.S.C. § (b)(1), (b)(1)(A)(iii). A person "includes an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39).

The TCPA says nothing of the "capacity" of a "person" or government caller making the calls, but rather imposes liability equally on all "individuals," like Defendant. As the District Court noted, "Mr. Perrong asserts claims against Rep. Bradford in his personal capacity." (A4.) "Mr. Perrong has sued Rep. Bradford in his personal capacity." (A12.) As a result, the District Court had no trouble concluding that Bradford was clearly a "person" and thus subject to the statute's reach.

In so doing, the District Court came to an eminently logical conclusion about sovereign immunity in lockstep with binding Supreme Court precedent: a private actor does not "act" for the government, and the government is therefore not the real party in interest, in the absence of some government instruction compelling the actor to so act. (A12–A14.) Were this Court do adopt Bradford and *Amici*'s reasoning and hold that every time an actor uses government resources to commit a tort, the government is the real party in interest, that would result in

practically no suit against a government official ever being an individual capacity suit.

Such a holding would throw decades of individual capacity precedent out the window. *Contra Lewis v. Clarke*, 581 U.S. 155, 160 (2017) (upholding individual capacity suit against government employee driving a government-owned vehicle). As Judge Wolson correctly concluded, answering the question of who the real party in interest is in a suit against a government official sued in his individual capacity does *not* require answering whether that individual used government resources to commit its tort, nor whether the tortfeasor was acting in a manner that was connected to their position. Rather, the question of whether the suit is truly against the sovereign rests upon who is being *bound by the judgment*. And the answer to *that* question is illuminated by who is *requesting* the actor to act. (A13.)

"[S]overeign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" (A12., citing *Lewis* and *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991)). Recognizing that Bradford presented no evidence in support of his conclusion that the real party in interest was the Commonwealth, nor any reason for why a judgment

against him personally would operate against the Commonwealth, the

District Court appropriately denied summary judgment.

> 1. Bradford commits the same error he did at the District Court,
> assuming, without proving, that he was acting in his official
> capacity and that this suit is an official capacity suit.

In much of his briefing here, just as at the District Court,

Bradford takes for granted that this individual capacity suit against

him is truly a suit against the Commonwealth as a sovereign. As Judge

Wolson noted, that assertion is unsupported by the record developed in

this case. (A13–A14.) As the District Court observed:

> [T]here is no indication that the Commonwealth of Pennsylvania or
> the Pennsylvania House of Representatives is the real party in
> interest. Rep. Bradford does not suggest that a state law or
> regulation required him to make the challenged calls or that he
> made these calls on behalf of the Commonwealth. On the contrary,
> the evidence demonstrates that state representatives must apply
> for permission to make such calls and that they do so on an
> individual basis, with some seeking to do so more often than others.
> Finally, as for the critical inquiry, any adverse judgment against
> Rep. Bradford would not bind the Commonwealth. The fact that
> individual state representatives might read this decision and stop
> using prerecorded calls to reach their constituents is not the same
> as **requiring** the Commonwealth to change its own operations or
> procedures. And, of course, state legislators can still make robocalls
> to their constituents, as long as they ensure that the calls only go
> to those who have opted to receive them.

In deciding whether the sovereign is the real party in interest, the critical question is "whether the *remedy sought* is truly against the sovereign." *Lewis*, 581 U.S. at 162. Importantly, this does not mean that sovereign immunity applies whenever government officials "are sued for actions taken in the course of their official duties." *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015). The "critical inquiry is who may be *legally bound* by the court's adverse judgment." *Lewis*, 581 U.S. at 165.

The District Court's analysis reproduced above constituted a brilliant application of *a priori* reasoning to determine whether the remedy sought here would truly be against the Commonwealth. As it correctly explained, the knock-on effects of a judgment against Bradford may cause other state representatives to cease their clearly illegal calling conduct, but it will not *force* or legally bind the Commonwealth to shut down its in-house telephone dialing system, nor will it require the Commonwealth to pay out damages.

In determining who would be legally bound by an adverse decision, the District Court appropriately looked to see who was *requiring* the actor to act in the first instance. On the evidence, it concluded that Bradford acted on his own, albeit using state resources.

14

But the use of state resources to commit a personal tort does not transform the true party in interest from the individual to the government. This conclusion rests on simple logic: one would hardly consider that a disinterested third party is "legally bound" by a decision that they did not even require to be done in the first instance. The District Court appropriately concluded that *Bradford*, not the Commonwealth, was the true actor, not least of which because Bradford adduced no evidence at summary judgment to show that the Commonwealth required him to send the prerecorded calls complained of. (A13.) *A fortiori*, therefore, when the government did not compel Bradford to act *as an initial matter*, it stands to reason that any judgment against Bradford would not compel any action on the part of the sovereign, the Commonwealth, as a result of this suit.

Nor is the sending of robocalls within the traditional ambit of legislative activity which would necessitate a finding that Bradford was acting in his official capacity or in execution of his official duties to entitle him to absolute immunity. As the Supreme Court held in *United States v. Brewster*, such activities as "preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the

Congress," though "entirely legitimate activities," are "political in nature rather than legislative," and therefore are not "official duties" entitled to Eleventh Amendment sovereign immunity. 408 U.S. 501, 512 (1972). Such conduct is only incidentally related to the legislative process and is therefore not entitled to absolute sovereign immunity. *Hoellen v. Annunzio*, 468 F.2d 522, 527 n.8 (7th Cir. 1972).

Moreover, this Court's decision in *HIRA Educ. Servs. N. Am. v. Augustine*, further demonstrates that sovereign immunity is inappropriate here for reasons identical to *Brewster*. 991 F.3d 180 (3d Cir. 2021). In *HIRA*, this Court considered claims against state legislators, sued in their individual capacities, for comments made at community meetings which plaintiffs contended violated federal and state religious protection laws, as well as Section 1983. *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 186 (3d Cir. 2021).

There, this Court held that the legislators were not entitled to legislative sovereign immunity under the Speech and Debate Clause because their activities fell outside the narrow ambit of official legislative activities the Supreme Court held were protected by the Clause in *Brewster*:

16

> Immunity does not attach, however, to acts only 'casually or incidentally related to legislative affairs but not a part of the legislative process itself.' . . . [Public comments about HIRA] are most accurately described as political 'errands' or 'speeches delivered outside [of] Congress,' so the Legislators are not entitled to absolute immunity for those activities under *Brewster*.

> *Id.* at 189–90, *citing Brewster*, 408 U.S. at 512, 528.

Applying these standards, the suit here is an individual capacity suit to which sovereign immunity does not apply. Plaintiff has alleged, and Bradford has failed to meet his burden at summary judgment, that Bradford committed a tort in making multiple prerecorded calls to Plaintiff without consent. The Plaintiff sued Bradford in his personal capacity. (A12, A114–15, A118, A129.) The Plaintiff did not and does not seek a money judgment or injunction against the Commonwealth or any other member of the General Assembly, but rather against Bradford himself. (A12–A13, A129.)

And because the Commonwealth does not require members of the General Assembly to send robocalls, and in fact because the record reflects that some members choose to send more robocalls than others, there is no risk that any money judgment or injunction against Bradford in his personal capacity would run against any other member of the General Assembly or the Commonwealth as a sovereign. As the

17

District Court noted, even if monetary liability against Bradford might influence how the General Assembly or the Commonwealth placed calls in the future, the fact remains that any "judgment will not operate" against the government. *Lewis*, 581 U.S. at 163. Nothing about that conclusion was erroneous. The true party in interest is Bradford, acting in his individual capacity.

> 2. The brilliance of the District Court's party in interest analysis shows why *Cunningham* and *Cheng* are eminently distinguishable.

In concluding that Bradford, the person, sued in his personal capacity, was the real party in interest in this case, the District Court applied a brilliant analysis. It first started by acknowledging that Bradford's role as a state representative, a role repeatedly alluded to in his briefing, is not dispositive, observing that, "the fact that Rep. Bradford may have been acting within the scope of his role as a state legislator when he made the calls does not make this an official capacity suit." (A13.)

The District Court arrived at the conclusion that Bradford, not the Commonwealth, was the real party in interest because neither the Commonwealth, nor any "state law or regulation," "required [Bradford]

to make the challenged calls or that he made these calls on behalf of the Commonwealth." (A13.) To that end, Bradford was not able to point to any part of the record sufficient to satisfy his burden at summary judgment that the Commonwealth was the real party in interest.

Bradford cited to no evidence that the Commonwealth required him to make the calls or that he was obliged to do so in his position as a member of the General Assembly, nor could he. Such a position would have been and is flatly contradicted by the record in that *not a single one* of the five calls, as shown through their transcripts, mentioned the Commonwealth *at all*. (A211–A214.) To the contrary, the entity mentioned on every one of the calls was "Matt Bradford." (*Id.*) The calls were voiced by Bradford (A375.) "Defendant [Bradford] provides a pre-recorded voice message either directly or through his legislative staff to the Democratic Legislative Communications Office, which forwards that message to Cleo/Stream Communications." (*Id.*) And, perhaps most fatal to Bradford's position, they were voiced in the first person, "I," thus demonstrating that Bradford was placing the calls on his *own* behalf and not on behalf of the Commonwealth. (A211–A214.)

19

It is on these points that *Cunningham v. Lester* is distinguishable. In *Cunningham*, the plaintiff sued three federal employees in their individual capacities because they directed the recording of a pre-recorded telephone call allegedly sent in violation of the TCPA. *Cunningham v. Lester*, 990 F.3d 361, 363 (4th Cir. 2021). In *Cunningham*, the Fourth Circuit concluded that the United States, acting through the Department of Health and Human Services, was the real party in interest and thereby enjoyed sovereign immunity.

Notably, the recorded message in *Cunningham* stated that it was "an important message *from healthcare.gov*," *id.* at 363–64 (emphasis added), *not* from "Matt Bradford," as here. (A211–A214.) The message in *Cunningham* was voiced in the second and third persons, not in the first person, as here. And, unlike here, the federal employees who were sued were carrying out a *mandate* in a *federal law* that explicitly required effective notice, specifically that Medicare applicants, "receive notice of eligibility for an applicable State health subsidy program." *Id.* at 367. In achieving compliance with this statutory mandate, the employees "instructed [a government contractor] to pre-record the message using artificial voice technology," instructions which the

contractor followed "to the letter." *Id.* at 364. In so doing, the employees "conformed to their official duties and statutory mandate." *Id.* at 367.

On those facts, including the fact that the message *itself* stated that it was coming from the federal government, which enjoys immunity from TCPA suits, and the fact that it told recipients to contact the Department of Health and Human Services, the Fourth Circuit had no trouble concluding that the federal government, and not the federal government employees purportedly sued in their individual capacities, was the true party in interest. *Id.* at 367–68. And, unlike here, the identity of the named defendants and their respective involvement was not evident in the calls' contents and were only uncovered in discovery in a sister case against the government contractor. *Id.* at 363–64.

Bradford's reliance on the Ninth Circuit's unpublished, divided opinion in *Cheng v. Speier* is likewise distinguishable and wholly unpersuasive. There, the district court held, and the Ninth Circuit affirmed, the dismissal of a TCPA case against a congresswoman calling to conduct a "tele-town hall," which it concluded was made while the congresswoman was "acting under authority validly conferred by the federal government." 2023 WL 4490352, at *1 (9th Cir. July 12, 2023).

21

It should also be noted that in that case, unlike here, the congresswoman filed a Notice of Substitution of the United States as a Defendant under the provisions of the Federal Tort Claims Act, and the Attorney General certified that the congresswoman was acting within the scope of her employment at the time. *Cheng v. Speier*, 609 F. Supp. 3d 1046, 1050 (N.D. Cal. 2022).

As Judge Wolson stated, "I find Judge Bress's dissenting opinion [in *Cheng*] to be more persuasive." (A13.) It goes without saying that Bradford made no motion to substitute in the Commonwealth as a party, and the Commonwealth has not appeared in this action, let alone made any certification that Bradford was acting within the scope of his employment, let alone at the Commonwealth's direction. Nor, as will be described below, is the Commonwealth exempt from the requirements of the Communications Act. In short, there was no error in the District Court's analysis, or in its rejection of and distinguishing *Cheng*.

Nor does the District Court's analysis pay insufficient heed to the Supreme Court's guidance in *Pennhurst*. *Pennhurst* advances the ball little in the way of articulating a test to determine whether a suit is against the state and the state is the "real, substantial party in

interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). In any event, the District Court's "requirement" analysis, as an analog for determining the true party in interest in cases like this, is in lockstep with *Pennhurst*. In that case, as in *Cunningham*, the defendants purportedly sued individually were acting pursuant to, albeit in defiance of, a statutory mandate. *Id.* at 103. No such mandate exists addressing the issue of state representatives placing robocalls.

The facts of *Cunningham* and *Cheng* stand in stark contrast to the facts of the calls here, where Bradford identified himself, voiced the calls personally, spoke in the first person and did not mention the Commonwealth. Bradford acted pursuant to no statutory mandate. And the fact that the government employees and the government's contractors in *Cunningham* were following the federal government's statutory mandate "to the letter" underscores the brilliance of the District Court's "direction" test to ascertain the true party in interest. There can be no question that a federal statute directed the defendants in *Cunningham* to place the calls at issue. No such statute exists here, demonstrating that the District Court's "requirement" analysis was not

only eminently correct but also a brilliant distillation of party-in-interest jurisprudence for cases such as this.

3. Merely because Bradford used Commonwealth resources to place the calls does not transform the Commonwealth into the real party in interest. Moreover, states are not immune from the Communications Act's requirements, of which the TCPA is part.

Bradford also makes much of his purported demonstration at summary judgment that the robocall program that Bradford used to make the calls was, from start to finish, a House program that was financed by the House. That may be so, but this argument misses the mark for articulating the legal standard for determining who the real party in interest is. The applicable legal standard does not inquire as to who paid for the instrumentality used to commit tortious conduct, nor does it inquire as to whether the actor was acting within the scope of their employment. Were that so, no plaintiff could ever sue a tortfeasor in their individual capacity were they to be beaten by an officer's state-owned truncheon or hit by an employee's government owned vehicle.

Moreover, the Supreme Court has already rejected Bradford's argument that the state is the real party in interest because he used state resources to commit his torts, was authorized to use those

24

resources, and was acting within the scope of his authority as a state representative while doing so. *Lewis v. Clarke*, *supra*, is directly on point with and forecloses Bradford's argument in this regard. There, the defendant, a tribal employee, was involved in a crash while he was driving a tribe-owned limousine in the scope of his employment. 581 U.S. at 161. *In Lewis*, the Supreme Court of Connecticut reasoned that permitting the plaintiff to sue the employee in his individual capacity would "eviscerate the protections of tribal immunity" and determined that the employee "was entitled to sovereign immunity on the sole basis that he was acting within the scope of his employment when the accident occurred." *Id.* (cleaned up).

The Supreme Court reversed, holding that these facts were insufficient to render the suit an official capacity suit that sought relief from the tribe as the real party in interest. *Id.* at 162–63. In so holding, the High Court observed:

> This is a negligence action arising from a tort committed by Clarke on an interstate highway within the State of Connecticut. The suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe. This is not a suit against Clarke in his official capacity. It is simply a suit against

Clarke to recover for his personal actions, which "will not require action by the sovereign or disturb the sovereign's property"

*Id.* at 163 (citing *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)).

The defendant in *Lewis* also argued that tribal indemnification would also render the suit as one against the state. So does Bradford, stating that, "Even if the district court's ruling is incorrectly taken as exposing only Representative Bradford to liability, it still affects the House because of indemnity." (Appellant's Br. at 44). The Supreme Court has already rejected that argument as well, holding that "an indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Lewis*, 581 U.S. at 164–65.

*Lewis* forecloses Bradford's argument. The relevant legal standard is whether this suit against Bradford in his individual capacity would legally bind the Commonwealth. He has not made such a showing, and the District Court appropriately denied summary judgment, holding that he was not entitled to immunity because such evidence was plainly insufficient to demonstrate that, *as a matter of law*, the Commonwealth was the real party in interest.

26

This Court need not even go that far, however, because the statutory text is clear in that the TCPA applies to both individuals like Bradford and to state governments and employees. Unlike the federal government, state governments remain subject to the provisions of the Communications Act. Thus, even if true, Bradford's assertions that the calls were placed using the Commonwealth's equipment at the Commonwealth's expense is of little consequence because states possess no immunity under the TCPA or the Communications Act of which it is a part. As a result, Bradford's contentions that the calls were placed using Commonwealth equipment were irrelevant, immaterial facts for purposes of his motion for summary judgment.

It must also be noted that *Cunningham* and *Cheng* were suits against *federal* government employees, not state government employees. This distinction is critical because the federal government enjoys enhanced immunity under the Communications Act, of which the TCPA is a part, that state governments do not. The Communications Act contains a specific grant of sovereign immunity for "government owned" radio stations "operated by the United States." 47 U.S.C. § 305. State governments are nevertheless held to be subject to the licensing

27

and other requirements of the Communications Act, including the TCPA. 47 U.S.C. § 301; *Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424, 434–36, 445 (1963) (holding that states are required to obtain FCC licenses); *Allen B. Dumont Labs v. Carroll*, 184 F.2d 153, 155 (3d Cir. 1950) ("The Communications Act of 1934 applies to every phase of television and it is clear that Congress intended the regulatory scheme set out by it therein to be exclusive of State action.").

Nor does the Act's definition of a "person," upon which the district court relied, necessitate a contrary result. Notably, the Act's definition of "person" prefaces its list with the word "includes," meaning that the application of the Act's provisions is larger than that articulated by Congress. The use of the term "includes" suggests Congress "was being illustrative rather than exclusive with the list following the phrase." *In re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936, 946 (8th Cir. 2007); *accord Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term "including" is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). The states are subject to the Communications Act's requirements, including the TCPA; the federal government is not. The

District Court was correct in holding that who paid for the calls or ultimately placed them at Bradford's direction were not material facts for summary judgment purposes on the sovereign immunity issue.

4. The District Court appropriately applied the summary judgment standard. The Commonwealth is not the real party in interest, as counsel for Bradford conceded at oral argument. Accordingly, Bradford made no showing that he was entitled to sovereign immunity as a matter of law.

For much the same reasons, the District Court appropriately applied the summary judgment standard. Bradford takes issue with the District Court's application of the summary judgment standard, but in so doing himself ignores that he was required to demonstrate a *legal entitlement to relief* to prevail at summary judgment.

In sum, Bradford contends that the Plaintiff did not meet his burden of pointing to a specific factual dispute on the sovereign immunity issue. (Appellant's Br. at p. 36). But this argument neglects Bradford's complementary burden at summary judgment: as the party seeking summary judgment, Bradford was required to show the absence of a genuine dispute of material fact that would *entitle him to judgment as a matter of law* on the sovereign immunity issue.

As the party asserting Eleventh Amendment immunity (and standing to benefit from its acceptance), Bradford bore the burden of proving its applicability. *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). Bradford may very well have made a showing of undisputed facts which he felt were sufficient entitle him to judgment as a matter of law on the immunity issue. But the District Court appropriately disagreed, holding that none of the allegedly undisputed evidence presented by him was sufficient for a showing that the Commonwealth was the real party in interest. (A12, A13.) As the Court stated, "none of [Bradford's] arguments accounts for the distinction between an official capacity suit and a personal capacity suit," and that Bradford did not demonstrate a legal entitlement to relief. (A14.)

Bradford made no such showing, did not meet his burden of demonstrating a legal entitlement to the relief requested, and the District Court appropriately denied summary judgment. For that matter, Bradford points to no allegedly overlooked evidence in his briefing before this Court for why the Commonwealth is the true party in interest. The best Bradford seems to muster is an argument that the House Democratic Communications Office paid for the calls and that

the Commonwealth is indemnifying him. But the Supreme Court already considered and rejected those arguments in *Lewis*, *supra*, as did this Court in *Melo v. Hafer*. 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991) ("[W]here the plaintiff seeks recovery from the personal assets of the individual, the state is not the real party in interest; the suit is therefore not barred by the Eleventh Amendment.")

In denying Bradford's motion for summary judgment, the District Court largely based its decision on the fact that Bradford, who placed and personally voiced the calls at issue, was clearly a "person" within the TCPA's meaning. (A11.) It also noted that Bradford pointed to no law or regulation *requiring* him to place the calls and that the calls were placed on his own accord. (A13.)

Just because the Commonwealth gave Bradford the tools to commit his torts does not mean that the Commonwealth is the real party in interest. And though Bradford chides Judge Wolson for allegedly leading him astray by looking "as if the district court was going to properly apply [sovereign immunity]," by holding that the Commonwealth was the real party in interest, that mischaracterizes what the Court said and did. (Appellant's Br. at p. 46). Bradford also

mischaracterizes the record as one in which "Perrong never alleged individual capacity." (*Id.* at p. 48).

A review of the transcript of the Rule 16 conference held after the Court denied Bradford's motion to dismiss on Eleventh Amendment immunity grounds shows Bradford's mischaracterization of the record, clarifies the scope of discovery, and shows that the District Court appropriately applied the summary judgment standard. For what it's worth, that transcript shows that counsel for Bradford took positions *directly contrary* to those Bradford now takes in this appeal, doubtless because such positions would have been and are fatal to his motion for summary judgment, which was appropriately denied. That transcript, in context, shows that the Court was not speculating on the merits of the Plaintiff's claims or outlining how it would determine the true party in interest, which in any event would have been improper.

To the contrary, the Court expressed skepticism that any level of discovery would entitle Bradford to summary judgment on the sovereign immunity issue, stating "I see cases all the time, for instance, against Pennsylvania state troopers who are clearly acting in the course of their duties as state officials but they get sued in their individual

capacity and there are damages claims that are viable against them even though they're acting in the course of their duties as an arm of the state." (A159.). Throughout Judge Wolson's colloquy, he made multiple allusions to the Supreme Court's binding precedent in *Lewis*, which, as explained above, forecloses the argument at summary judgment that the Commonwealth is the true party in interest. (A160–62).

At this conference, counsel for Bradford *also* admitted that the calls at issue were placed at Bradford's direction. (A156.) Both counsel for Bradford an Plaintiff confirmed that the suit was proceeding as an individual capacity suit. (A159.) And critically at both summary judgment and this appeal, counsel for Bradford admitted that Eleventh Amendment immunity was inappropriate in this case, stating, "[T]here is nothing special about a member of the House verses another state actor if they are acting in their official capacity, *and so the same kind of analysis under the 11th Amendment that you just highlighted for us would apply. I agree with you.*" (A161.) (emphasis added).

Bradford cannot now come to this Court and argue on appeal that he was entitled to summary judgment because the Commonwealth is somehow the real party in interest. The District Court all but foreclosed

that argument, as a matter of law, at the motion to dismiss stage, and counsel for Bradford explicitly *conceded* the issue at the Rule 16 conference. Moreover, contrary to the Defendant's assertions, the Plaintiff's Amended Complaint, and associated claims for relief, clearly sought monetary damages and injunctive relief against the "Defendants" Bradford and then-Defendant Cleo. (A129.) It did not seek relief, injunctive, monetary, or otherwise, against the Commonwealth.

And it bears repeating that simply because the knock-on effects of this lawsuit might cause the House and other state agencies to rethink their ill-advised policies of making illegal robocall campaigns or instead replace them with legal calls made with consent does not transform the real party in interest to be the Commonwealth. Were this Court to endorse Bradford's reading, practically every individual capacity suit that resulted in some government-level change would instantly be transformed into an official capacity one. Neither *Pennhurst*, nor *Waterfront Comm'n*, nor *Benn* dictate such a reading. It also bears mentioning that the knock-on effects of a judgment against Bradford were not even raised by him at summary judgment, instead being an issue raised principally by the *Amici* in the District Court.

34

To be sure, those cases raised for the first time before this Court do recognize that there are some circumstances where a judgment against an individual instead operate against the state when it has knock-on effects. But none come close to here. All *Pennhurst* stands for is the proposition that a suit against an officer of the state may operate as one against the sovereign, but this early case does little to advance a cognizable standard. 465 U.S. at 101. *Waterfront Comm'n* doesn't help Bradford in this case, either. All this Court did there was reiterate that the state is the real party in interest if it would "expend itself on the public treasury or domain, or interfere with public administration" or if relief consisted of an "injunction requiring payment of funds from the State's treasury, or an order for specific performance of a State's contract." *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 239 (3d Cir. 2020).

The extraordinary effects that might render the state the real party in interest that this Court identified in *Waterfront Comm'n* do not come close to those here. There, this Court noted that the plaintiffs attempted to do an end run against sovereign immunity by not naming the state but the Governor instead in an attempt to prevent the state's

withdrawal from an interstate compact. *Id.* at 240. Bradford's actions in calling people with prerecorded robocalls voiced by him, as an individual, and on his own volition, are nothing like the governor of a state withdrawing that state from an interstate compact that that state, as a sovereign, entered. Nor with *Benn*, where the plaintiff didn't even sue an individual but instead attempted to sue the First Judicial District, the operational organ for state courts in Philadelphia. *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 239–40 (3d Cir. 2005). On that record, this Court had no issue concluding that the real party in interest was the Commonwealth as the FJD was a branch of government. *Id.*

Here, the District Court correctly concluded that Bradford was an entity autonomous from the Commonwealth that acted on his own accord, and not at the instruction of the Commonwealth or carrying out any of its laws or regulations. Accordingly, he was properly sued in his individual capacity. *Id.* (noting that the degree of autonomy an entity has is a consideration for whether a suit against an entity is a suit against the state and citing *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). That Bradford used state resources to send the calls is of no importance. None of the cases

cited by the Defendant consider who owned the tort-causing instrumentality a factor. The *actual* "most important" factor in the analysis, whether the money to pay the judgment will come from the state, cuts *against* Bradford. *Id.* Regardless, "[t]he critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab. *Lewis v. Clarke*, 581 U.S. at 165.

If a judgment is rendered against Bradford, the Plaintiff would be entitled to an injunction to get *Bradford* to stop his calling conduct as well as between $2,500 and $7,500 in damages payable *by Bradford*. It is also worth mentioning that, in addition to being a state representative, Bradford is also of counsel at the law firm of Rudolph Clarke LLC, another non-government source of income through which he could pay the judgment, in contrast to most other cases, where the government employee's only source of income is their government paycheck, leaving the government to pick up the tab.

And if such a judgment or injunction were significant enough to alter the Commonwealth's conduct as an ancillary effect, it would require only slight changes to the conduct of members of the General Assembly sending prerecorded robocalls; they could still do so using the

Commonwealth's equipment, provided they obtained consent. They could also send manual calls, text messages, letters, and emails. Such knock-on effects hardly rise to the level required to render any judgment here as one against the Commonwealth.

In sum, Bradford pointed to no admissible evidence to show that the Commonwealth, and not Bradford, was the true party in interest in this case. In fact, at every stage of these proceedings, he conceded that this was an individual capacity suit for which there was no Eleventh Amendment immunity. He therefore failed to make a sufficient showing that he was legally entitled to judgment as a matter of law in his favor on the sovereign immunity issue. Summary judgment on that issue was appropriately denied as a result.

B.    *Bradford is not entitled to qualified immunity because the TCPA has clearly prohibited persons like him from making prerecorded robocalls since 1991.*

As illustrated by *The Simpsons*, it has been general public knowledge since the mid-1990s that it is illegal to place robocalls using a prerecorded voice. *The Simpsons: Lisa's Date with Destiny* (Fox television broadcast Dec. 15, 1996) ("An automatic dialer? Is that legal? I don't want you getting arrested, Homer."). The District Court and the

Circuit Courts of Appeal have praised the TCPA as "a model of clarity." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). And the plain statutory text of the TCPA clearly applies to Bradford, who is a "person," because he is an individual human being. 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 153(39). Any individual in Bradford's position could have and should have known that sending prerecorded robocalls without consent is illegal because the law is clear.

And though various portions of the TCPA have been the subject of differing interpretations, the Supreme Court and the circuit courts of appeal have unanimously and consistently upheld the TCPA's restriction against calling cell phones and other types of protected lines using a prerecorded voice. "In plain English, the TCPA prohibit[s] almost all robocalls to cell phones." *Barr*, 591 U.S. at 615; *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 349 (6th Cir. 2023).

Bradford refuses to acknowledge this plain statutory text and instead asserts that the right sought to be enforced here–the TCPA's prerecorded robocall prohibition–is not "clearly established" as it applies to him as a state representative. But that argument misses the

39

mark for at least two reasons. *First*, Bradford advances an unjustifiably strict and rigid view of what constitutes a "clearly established" right under qualified immunity jurisprudence. *Second*, Bradford misses on the merits, failing to show that he is not a "person." This Court should have no trouble finding that Bradford is not entitled to qualified immunity for his clearly illegal actions which apply to him as a person.

1. A review of "clearly established" qualified immunity jurisprudence and TCPA case law reveals that the TCPA's robocall prohibition was "clearly established."

Bradford makes much of his contention that the TCPA's prohibition against making prerecorded robocalls was not "clearly established" inasmuch as it applied to him *as a state representative*. Bradford does not otherwise seem to contend that the law prohibiting "persons" from making prerecorded robocalls is unclear. Bradford only contends that, *as applied to him*, the law is unclear because his special position made him think that he was not subject to the clear statutory definition of a "person." (Appellant's Br. at p. 55–56). But Bradford advances no legal authority standing for the proposition that a defendant is entitled to a qualified immunity defense whenever a generally applicable statute, as here, does not clearly apply to a

government actor. Were that the law, legislators would need to specifically include classes of individuals which might be subject to immunity in every statute when drafting them.

The cases cited by Bradford do not necessitate a contrary conclusion. Almost all of the cases cited by Bradford deal not with *statutory claims* or violations but rather violations of *substantive constitutional rights* in carrying out discretionary or otherwise quasi-permissible functions. *See Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–170 (3d Cir. 2016) (substantive due process); *Zaloga v. Borough of Moosic*, 841 F.3d 170, 176 (3d Cir. 2016) (first amendment retaliation); *HIRA*, 991 F.3d at 190 (religious discrimination and Section 1983 claims).

As an initial matter, qualified immunity typically only applies to constitutional and related claims. Courts have extended qualified immunity to actions brought directly under federal or state statutes, such as the TCPA here, on only a handful of occasions. *See, e.g.*, *Blake v. Wright*, 179 F.3d 1003, 1014 (6th Cir. 1999) (denying qualified immunity on Ohio wiretapping claim); *Walden v. City of Providence*, 495 F. Supp. 2d 245, 257 (D.R.I. 2007) (holding material factual issues

41

precluded summary judgment on qualified immunity grounds for whether telephone recording system violated federal wiretapping laws).

Substantive constitutional and due process claims are of a different nature than statutory claims. This is doubly so when the statute at issue here, the TCPA, is a *strict liability* statute that itself clearly delineates proscribed conduct and provides a remedy. Simply put, the TCPA is a statute that outlines a specific type of calling conduct–prerecorded calls–in a "particularized" sense so that its contours are clear to a reasonable official, and thus relaxing the Plaintiff's burden here. *Reichle v. Howards*, 566 U.S. 658, 665 (2012).

The TCPA does not require Bradford "to predict the course of the law." *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 148 (3d Cir. 1984). Rather, the TCPA clearly and unambiguously prohibits initiation of prerecorded robocalls by any "person" absent consent. In a word, the TCPA requires Bradford to adhere to a clear statutory prohibition. (A20.) The TCPA also delineates two exceptions: calls made for emergency purposes or with consent. 47 U.S.C. § 227(b)(1)(A). As outlined above, this clear statutory text has

been confirmed by decades of district court, circuit court, and Supreme Court precedent. Thus, Bradford's violation was "obvious." (A20.)

Bradford's argument here that the Plaintiff's rights under the TCPA are not clearly established represents a drastic about-face from his position at the District Court, where he argued not that the TCPA was not clearly established, but rather argued the first prong of the qualified immunity analysis: whether there was a violation as an initial matter. (A162.) Indeed, counsel for Bradford conceded that it would only argue that there was "no violation in the first place" and admitted that, otherwise "there is no gray area here." (A162–A163.)

Bradford also ignores the fact that his position runs contrary to the "obviousness" exception to the "clearly established" requirement. *Mack v. Yost*, 63 F.4th 211, 233 (3d Cir. 2023) (holding that even in the absence of factually analogous binding precedent, some claims are so obvious that every objectively reasonable government official facing the circumstances would know that the conduct violated the law); *Hope v. Pelzer*, 536 U.S. 730, 731 (2002) (holding that it was obvious an Eighth Amendment violation occurred when prison officials handcuffed prisoner to a hitching post). The rationale for the obviousness exception

43

is itself obvious: courts of appeal often have little occasion to consider obvious violations of the law and thereby establish binding precedent to give notice sufficient to clearly establish future violations. *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) ("After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing.").

Bradford clearly fails on obviousness. As the Supreme Court has noted, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope*, 536 U.S. at 731. And officials can be on notice "even in novel factual situations" when there is no fundamentally or materially similar case precedent on point. *Id.* The appropriate question to ask is whether the statute made it obvious and gave fair warning that the conduct was unlawful, not whether an individual similarly situated has previously been sued for committing the conduct, or whether some defenses like sovereign immunity apply, as Bradford intimates. *See id.*

To demonstrate obviousness, a plaintiff "can demonstrate that the right was clearly established by presenting a closely analogous case

44

that establishes that the Defendants' conduct was unconstitutional or by presenting evidence that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011). Plaintiff has clearly done so.

Bradford's attempt to delineate the right at issue here with exacting specificity makes no sense, and in any event is insufficient to demonstrate non-obviousness. As the District Court concluded, Bradford is obviously an "individual," and his reliance on inapplicable, non-binding FCC guidance was inappropriate, particularly because the calls he placed were merely an exercise of his own personal discretion to publicize events. (A20.) That Bradford "made a mistake about the TCPA's application to him" does not translate into a "lack of legal clarity" entitling him to qualified immunity. (*Id.*)

Bradford made a mistake about the TCPA's application to him that was manifestly unreasonable. Bradford's argument that he is entitled to some form of derivative qualified immunity because he is a state representative and not an "individual" had already been rejected by the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153,

45

168 (2016). There, a government contractor *didn't even contest* that the TCPA was "clearly established" for qualified immunity purposes. *Id.* There, unlike here, the Navy had requested to send robocalls to only those recipients who had consented to receive them, but messages were sent to non-consenting recipients by a subcontractor. Even so, the Supreme Court concluded that "the current record reveals no basis for arguing that Gomez's right to remain message-free was in doubt." *Id.*

When viewed in light of the District Court's decision, the parallels between this case and *Cambell-Ewald* are obvious. There, the Supreme Court held that government contractors and subcontractors weren't entitled to the government's sovereign immunity or qualified immunity under the TCPA when they violated "both federal law and the Government's explicit instructions," despite the contractors mistakenly believing they were entitled to immunity. *Campbell-Ewald*, 577 U.S. at 159, 166. So too here. To be sure, Bradford is not a government contractor. But, like in *Campbell-Ewald*, Bradford claims both sovereign and qualified immunity and argues, just as in *Cambell-Ewald*, that he *thought* that he shared in the government's immunity. *Cambell-Ewald* thus implicitly supports the District Court's conclusion

that Bradford's mistake of the law's applicability to him does not make the law so unclear as to render it unclearly established and thus entitle Bradford to qualified immunity.

Regulatory guidance also should have put Bradford on notice that what he was doing was illegal under the TCPA and that he was not subject to any exemption under the statute's plain text. As far back as 2016, the FCC has stated that the prohibition against prerecorded voice messages to protected services is a "broad prohibition," that "covers prerecorded voice and autodialed calls, including those sent by nonprofit or political campaign-related organizations." FCC Enforcement Advisory DA 16-264/2016-03, *Biennial Reminder for Political Campaigns About Robocall and Text Abuse* (Mar. 14, 2016); *see also Political Campaign Robocalls and Robotexts Rules*, FCC (July 17, 2024), https://www.fcc.gov/rules-political-campaign-calls-and-texts ("In general, robocalls and robotexts to mobile phones require prior consent."). In light of the foregoing, any reasonable politician would have thought twice about sending the calls or at least obtained consent and not sent them to people like Plaintiff who had indicated a desire not to receive them by placing their numbers on the Do Not Call list.

Even so, Bradford's purported confusion as to whether the TCPA applied to him is all the more questionable in light of a circuit court and Supreme Court dispute that was brewing about the constitutionality of a previous third exemption to the TCPA: one that exempted prerecorded calls made to collect debts owed to or guaranteed by the government. This dispute in itself should have put Bradford on notice that it was unreasonable for him to assume that his conduct was exempt simply because he was an elected official. *Cf. Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied."). Bradford could have played it safe and opted to manually dial calls or send robocalls with consent, but he didn't. The Supreme Court later resolved the aforementioned issue in *Barr*.

*Barr* is illustrative. There, the plaintiffs were organizations that "participate[d] in the political system" by "discuss[ing] candidates and issues, solicit[ing] donations, conduct[ing] polls, and get[ing] out the vote." *Barr*, 591 U.S. at 617. There, as Bradford and his *Amici* here, the plaintiffs believed "that their political outreach would be more effective and efficient if they could make robocalls to cell phones." *Id.* The

48

plaintiffs there felt that the TCPA's prohibition on making robocalls, absent a narrow exception permitting robocalls made to collect government debts, rendered the TCPA unconstitutional. *Id.* To be fair, the plaintiffs in *Barr* did not assert immunity defenses. The Supreme Court agreed but held that the correct remedy was to sever the offending provision–the government debt exemption–from the statute. *Id.* at 623. *Barr's* applicability to the case here is this: it would be downright peculiar for Congress to include a content-based exemption to the TCPA for government debt collection calls if the government enjoyed immunity for those calls as an initial matter. Any lawyer like Bradford worth his salt would surely recognize this glaring incongruity and conclude that only a specific type of call, government debt collection calls, were allowed, to the exclusion of others. *Andrus*, 446 U.S. at 608.

But even if this Court were to apply its two-pronged "clearly established" framework, that framework *still* confirms that the Plaintiff's rights under the TCPA were "clearly established" and violated here. *See Rivera v. Redfern*, 98 F.4th 419, 422 (3d Cir. 2024). Bradford cites to no authority for the extraordinary proposition that a plaintiff asserting a statutory claim that might be subject to qualified

immunity must explicitly demonstrate that the law explicitly applies to him as a specific subset of a class of persons and not just a person.

As to the first prong, the TCPA is a model of clarity and specificity. It describes prohibited conduct plainly and simply: prohibiting "persons" from initiating calls "using any . . . artificial or prerecorded voice . . . to any telephone number assigned to a [protected service.]" 47 U.S.C. § 227(b)(1)(A)(iii); (A19.) Again, Bradford prefers to introduce his own insurmountable legal standard, requiring the Plaintiff to demonstrate that his rights not to receive prerecorded robocalls absent emergency purposes or consent *also* applies, to "telephone calls from legislators about government programs and services for constituent benefit." (Appellant's Br. at p. 55).

That's not the law. There are no "legislative purposes" or "government programs" exemptions in the TCPA. As explained above, the TCPA has a well-developed statutory history, including the Supreme Court's decision in *Cambell-Ewald*, the only case up to that point addressing immunity issues under the TCPA and which actually hurts Bradford's position. That right is "a specific pronouncement from Congress, rather than a broad Constitutional principle," and because

50

the right is in a "specific subparagraph of a statutory section.," "[a]t that level of granularity, the right does not need more definition." (A19.); *Schneyder*, 653 F.3d at 330; *Browder*, 787 F.3d at 1082.

The District Court was also correct in citing *Gager* and *Daubert* as examples of cases in which this Court has cited and emphasized the TCPA's exceptionally clear text in outlining the scope of its reach. (A19.) For what it's worth, the Plaintiff here cites to even more authority than the District Court, and Bradford comes up with no contrary authority holding otherwise. And though Bradford drops a citation in a footnote to an exception found in 47 U.S.C. § 227(b)(1)(**B**) pertaining to an exemption for non-commercial prerecorded calls to residential landlines, the Plaintiff doesn't sue under that subsection, nor does he sue for calls made to a landline. (Appellant's Br. at p. 55). Regardless, that exemption doesn't apply here because it doesn't apply to claims under 47 U.S.C. § 227(b)(1)(**A**) under which the Plaintiff sues; the cited exemption only applies to "paragraph (1)(**B**) of this subsection." 47 U.S.C. § 227(b)(2)(B)(i); *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021) (distinguishing claims and exemptions under Section 227(b)(1)(**A**), as here, from those under

51

Section 227(b)(1)(**B**) and holding that the former contains no exemptions for non-commercial calls that the latter contains).

The "operative language of the TCPA is unambiguous." *Id.* The best Bradford can come up with in terms of a perceived ambiguity entirely of his own devising are *Cunningham* and *Cheng*, which are easily distinguishable as described above and as will be described in the subsequent section. Ultimately, this Court should have no trouble concluding that the TCPA clearly prohibits "persons" from initiating calls "using any . . . artificial or prerecorded voice . . . to any telephone number assigned to a [protected service.]"

> 2. The District Court's conclusion that Bradford was a "person" under the TCPA was correct because holding otherwise would necessarily require a showing that Bradford was acting as a "sovereign" and therefore entitled to sovereign immunity.

Turning to the second prong of the Court's inquiry, Bradford violated this "clearly established" right because he was a "person" who made prerecorded calls in violation of the TCPA. As a human being, lawyer, and (presumably) reasonable legislator, Bradford should have understood that the TCPA prohibited his conduct as a "person." His

argument that he didn't because he didn't think he was a "person" under the TCPA runs contrary to logic and common sense.

Bradford is clearly a "person" under the TCPA, and the cases Bradford cites for the contrary proposition are largely inapposite, standing for the unrelated proposition that "person" does not include the sovereign. That may be true, but the Plaintiff doesn't sue Bradford as a sovereign. He does not sue Bradford for executing any official acts or executing any law. Rather, he sues Bradford as a person, an individual human being, who himself decided to voice and send robocalls. That should be the end of the analysis, because holding that Bradford wasn't a "person" necessarily means he's a sovereign. He's not.

Bradford is clearly a person, and as such, is clearly subject to the TCPA. Bradford isn't able to point to a *single case* holding that the capacity in which a person acts somehow results in them falling out of that term's plain meaning for qualified immunity purposes. Bradford's reading of "person" here is thus strained for two reasons.

*First*, as explained above, the Communications Act, of which the TCPA is a part, and which extends to "persons," has only been held to exclude the *federal government* only. State governments are "persons"

that remain subject to the provisions of the Communications Act,
including the Act's licensure requirements, which explicitly preempt
contrary state laws. 47 U.S.C. § 253(a), (d) (prohibiting state and local
governments from enacting laws that interfere with the FCC's authority
to regulate interstate telecommunications services). The circuit courts
and Supreme Court have consistently held that states are subject to the
requirements of the Communications Act as amended. *Verizon
Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 648
(2002); *AT&T Commc'ns v. BellSouth Telecommunications Inc.*, 238
F.3d 636, 645 (5th Cir. 2001). It also goes without saying that states are
subject to the FCC's radio station licensure requirements under the Act,
despite those requirements also only applying to "persons." As a result,
Bradford's contention that he is not a "person" under the statute
because he is a state legislator is overly charitable because he is
incorrect in his assertion that, for Communications Act purposes,
"person" does not include state governments.

   *Second*, Bradford also contends that the *Cunningham* and *Cheng*
cases also stand for the proposition that when a state government
employee is acting for state-related purposes, they are not "persons"

under federal law for purposes of a qualified immunity analysis. Not so. Neither *Cunningham* nor *Cheng* addressed qualified immunity at all, nor the definition of a "person" under the TCPA on those grounds. They certainly do not stand for the proposition that statutory definitions change for qualified immunity purposes based on some fact-based analysis. If that were the law, it would essentially render qualified immunity jurisprudence a nullity because one could hardly imagine a situation where one would fall outside the definition of a "person" (and therefore into the role of a "sovereign") for qualified immunity purposes, and yet fail to be the real party in interest for sovereign immunity purposes. The practical effect of such a holding would be to collapse a qualified immunity analysis into a sovereign immunity one.

As described above, *Cunningham* held that the federal government was the real party in interest when its employees were sued in their individual capacities for actions taken in furtherance of a federal law requiring the government to notify Medicare recipients about their eligibility. *Cunningham*, 990 F.3d at 367. Not so here. And the divided opinion in *Cheng* is likewise distinguishable, not only because that suit involved a federal official, but because the United

States moved to intervene and substitute itself as the true party in interest as the calls were made in furtherance of official federal government business. *Cheng*, 2023 WL 4490352, at *1 The suit there was therefore unquestionably against the sovereign. *Id.*

This is where the wheels fall off Bradford's argument that the TCPA was unclear as to whether he was a "person." If Bradford isn't entitled to sovereign immunity (as established above, and as Bradford conceded), he *necessarily* cannot be entitled to qualified immunity on the grounds he advances here. (A14.) This is because, to prevail on his qualified immunity argument, he must prove that the law was unclear as to whether he was a "person," and thus was not "clearly violating" the TCPA under the second prong of the "clearly established" analysis. But making such a showing *necessarily requires* a showing of sovereign immunity. After all, the only way Bradford wouldn't be a "person" under the TCPA would be if he somehow fell outside the definition of a "person." And the only way that he would be able to prove that would be by proving that he was acting as a "sovereign," which falls outside the definition of a "person" for purposes of federal law. (A14.)

Relatedly, Bradford *still* doesn't fall outside the statute's meaning of "person" because *he himself chose to make the prerecorded calls complained of.* The Commonwealth does not require its legislators to make robocalls, and the record indicates that a legislator's choice to do so is a matter of that legislator's *personal preference.* (A13.) Bradford was not calling in furtherance of official government business. He is unable to point to any statute, like the one in *Cunningham*, requiring him to send robocalls as part of his duties as a legislator. The District Court was therefore correct in its assessment that Bradford should have understood that he was a "person," and thus violating the TCPA, not least of which because he sent the calls on his own accord.

## VI.   CONCLUSION

This case shows that no politician is above the law. The TCPA stands out as a model of clarity in that it prohibits any person from making prerecorded robocalls absent consent or an emergency purpose. As a lawyer and legislator, Bradford should have known this. Like all persons, Bradford was subject to the TCPA's plain prohibition against sending prerecorded robocalls. In sending the calls complained of, Bradford could have complied with the TCPA in far easier and clearer

respects. He simply could have obtained consent to send robocalls. He could have placed manual calls, texted, emailed, or sent letters. He did none of those things. Instead, he decided to blatantly break the law and hang his hat on the assertion that he was entitled to immunity for doing so. In the absence of contrary evidence, and in light of Bradford's own admissions, the District Court appropriately held that Bradford failed to show that he was entitled to sovereign or qualified immunity.

That was unquestionably the right result. This Court must affirm.

Dated: September 12, 2024

<div style="margin-left: 40%;">

s/ ANDREW R. PERRONG, ESQ
ANDREW R. PERRONG, ESQ.
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
(215) 225-5529
*Plaintiff-Appellee*

</div>

## VII.    COMBINED CERTIFICATES OF COMPLIANCE AND SERVICE

1.    I Certify that I am the Plaintiff-Appellee in the above-captioned matter and am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i). It contains 11,585 words, excluding the parts of the brief exempted by Rule 32(f).

3.    This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Word in 14-point Century Schoolbook font.

4.    I also certify, pursuant to Third Circuit Local Appellate Rules, that the text of the brief filed on ECF is identical to the text of the paper copies, and further that a virus detection program has been run on the file and no virus was detected. The file was scanned with Windows Defender, version last updated 9/12/2024.

5.    I certify that I filed the foregoing Brief of Appellee via the ECF system, I personally mailed the required hard copies of the

foregoing Brief of Appellee to the Clerk of the United States Court of

Appeals for the Third Circuit, and emailed a copy of the foregoing Brief

of Appellee via email to:

    Karl.Myers@stevenslee.com
    kennjoel@pa.gov
    shannon.sollenberger@pasenate.com
    cclark@pasen.gov
    amyers@comegnolaw.com
    msalkowski@pahouse.net


Dated: September 12, 2024


                s/ ANDREW R. PERRONG, ESQ
                ANDREW R. PERRONG, ESQ.
                2657 Mount Carmel Avenue
                Glenside, PA 19038
                a@perronglaw.com
                (215) 225-5529
                *Plaintiff-Appellee*