# In the United States Court of Appeals for the Third Circuit

---

No. 24-1925

ANDREW R. PERRONG

*v.*

MATTHEW BRADFORD;
CLEO COMMUNICATIONS

Matthew Bradford,
*Appellant*

---

On appeal from the United States District Court, Eastern District of Pennsylvania, at No. 23-510 (Hon. Joshua D. Wolson)

---

**REPLY BRIEF OF APPELLANT,
MATTHEW BRADFORD, MAJORITY LEADER OF THE
PENNSYLVANIA HOUSE OF REPRESENTATIVES AND
REPRESENTATIVE FOR THE 70TH LEGISLATIVE DISTRICT**

---

Karl S. Myers (Pa. No. 90307)
Paige C. Hogan (Pa. No. 331749)
STEVENS & LEE
555 City Avenue, Suite 1170
Bala Cynwyd, PA 19004
(215) 751-2864
karl.myers@stevenslee.com
paige.hogan@stevenslee.com

Counsel for appellant,
Representative Matthew Bradford

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................1

ARGUMENT ......................................................................................4

    A.    Perrong distorts the facts ........................................................4

        1.    Nothing was "conceded" at the scheduling conference ..............4

        2.    The facts show Representative Bradford acted only as a State Representative—not for himself .........................................6

        3.    The district court ruled based on Perrong's allegations, not the evidence disproving them ..................................8

    B.    Sovereign immunity applies here .........................................10

        1.    Distinctions without differences cannot save Perrong from *Cunningham* and *Cheng* ............................................10

        2.    Sovereign immunity covers officials for mandatory *and* discretionary acts .........................................................13

        3.    A judgment here would "operate against" the Commonwealth of Pennsylvania ..................................14

        4.    This case does not involve Speech or Debate or Legislative Privilege ....................................................16

    C.    Qualified immunity also applies here ..................................18

        1.    Perrong's claimed right is not to receive calls from legislators about government programs and services ...............18

        2.    Constitutional and statutory claims are analyzed identically ...................................................................19

        3.    It was not "obvious" that the calls here were prohibited, as the TCPA permitted them ........................................20

        4.    Representative Bradford does not claim "derivative" qualified immunity ......................................................23

CONCLUSION ..................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## <u>Federal Court Decisions</u>

*Bacon v. Avis Budget Grp.*,
   959 F.3d 590 (3d Cir. 2020) ................................................................6

*Blake v. Wright*,
   179 F.3d 1003 (6th Cir. 1999) ...........................................................19

*Browder v. City of Albuquerque*,
   787 F.3d 1076 (10th Cir. 2015) ....................................................22, 23

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016)......................................................................23, 24

*Cheng v. Speier*,
   2023 WL 4490352 (9th Cir. 2023) ...........................10, 12, 14, 21, 22

*Cheng v. Speier*,
   609 F. Supp. 3d 1046 (N.D. Cal. 2022)...........................10, 11, 12, 14

*Cunningham v. Lester*,
   990 F.3d 361 (4th Cir. 2021) ........................................10, 11, 12, 13

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018)..............................................................................18

*Freeman v. Pittsburgh Glass Works*,
   709 F.3d 240 (3d Cir. 2013) ................................................................6

*Goodwin v. Castille*,
   465 Fed. Appx. 157 (3d Cir. 2012)....................................................17

*HIRA Educ. Servs. N. Am. v. Augustine*,
   991 F.3d 180 (3d Cir. 2021) ...................................................18, 19, 24

*Hoellen v. Annunzio*,
   468 F.2d 522 (7th Cir. 1972) .............................................................17

*Hope v. Pelzer*,
536 U.S. 730 (2002)..................................................................22, 23

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949)........................................................................16

*Lewis v. Clarke*,
581 U.S. 155 (2017)........................................................................16

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)....................................................................21

*Mack v. Yost*,
63 F.4th 211 (3d Cir. 2023) ............................................................19

*Peck v. U.S. Dep't of Labor*,
996 F.3d 224 (4th Cir. 2021) ......................................................1, 22

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)..............................................................14, 15, 16

*Reichle v. Howards*,
566 U.S. 658 (2012)..................................................................19, 20

*Return Mail, Inc. v. U.S. Postal Serv.*,
587 U.S. 618 (2019)................................................................1, 20, 21

*Rivera v. Redfern*,
98 F.4th 419 (3d Cir. 2024) ............................................................18

*Schneyder v. Smith*,
653 F.3d 313 (3d Cir. 2011) ......................................................22, 23

*United States v. Brewster*,
408 U.S. 501 (1972)........................................................................17

*Vermont Agency of Nat. Res. v. Stevens*,
529 U.S. 765 (2000)......................................................1, 12, 20, 21

*Waterfront Comm'n v. Governor of N.J.*,
961 F.3d 234 (3d Cir. 2020) ......................................................15, 16

*Youngblood v. DeWeese*,
   352 F.3d 836 (3d Cir. 2003) .................................................................17

## **Federal Legislative Materials**

42 U.S.C. §1983 .........................................................................................19

42 U.S.C. §18083 .......................................................................................13

47 U.S.C. §153 ...........................................................................................12

47 U.S.C. §305 ...........................................................................................12

## **Federal Rules**

Fed.R.Civ.P. 16 ......................................................................................4, 5

## **Federal Agency Materials**

*In re: Broadnet Teleservices LLC*,
   35 FCC Rcd. 15052 (2020) ..............................................................1, 21

*In re: U.S. Dep't of Health & Human Servs.*,
   38 FCC Rcd. 404 (2023) ..................................................................1, 21

## SUMMARY OF ARGUMENT

Perrong's brief runs 58 pages, but is notable for what it does not say.

He makes no reference to the Supreme Court's "storied redwood"[1] of statutory interpretation that "person" in a statute like the TCPA does not include the "sovereign." He never cites the *Return Mail*[2] and *Vermont Agency*[3] decisions stating that rule or FCC decisions holding it protects state officials from TCPA liability.[4] He has no response to the court of appeals holding that his claimed right does not exist. He does not discuss immunity or summary judgment principles. And he offers no defense to the charges that the district court's ruling invites artful pleading, gives free passage to trial for those who do, and likely means the end of all public service calls by government officials across the country.

Perrong has nothing to say on any of it, even though Representative Bradford focused on these points in his opening brief.[5]  (Br. 18-29, 35-39, 42-48.)

---

[1] *Peck v. U.S. Dep't of Labor*, 996 F.3d 224, 231 (4th Cir. 2021).

[2] *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 626 (2019).

[3] *Vermont Agency of Nat. Res. v. Stevens*, 529 U.S. 765, 780-81 (2000).

[4] *In re: Broadnet Teleservices LLC,* 35 FCC Rcd. 15052, ¶¶2, 9, 13, 22-26 & notes 5, 26, 53, 54 (2020); *In re: U.S. Dep't of Health & Human Servs.*, 38 FCC Rcd. 404, ¶¶18-19 (2023).

[5] Perrong does appropriately admit that this Court will not defer to the district court under the *de novo* standard of review.  (Br. 2.)

This is telling. Perrong is not shy, and does not let things go. But even he cannot come up with a response, brilliant or not. His only choice is to concede.

What little Perrong does offer the Court is not convincing. He ties himself in knots with a loose collection of terse, trivial arguments replete with half-truths about the facts and law. Perrong draws a phony picture of Representative Bradford as undertaking the calls here completely on his own and for personal reasons unrelated to his role as a State Representative. The undisputed evidence in the record—which Perrong avoids like the plague—proves the exact opposite.

The House of Representatives' calling system is solely for the official legislative purpose of notifying constituents about government programs and services for their benefit. The House hired the system's contractor and pays for everything associated with the calls. All calls are organized, scripted, approved, and placed by House personnel using equipment in the Capitol in Harrisburg. Even Perrong has to admit this is a House program "from start to finish." (Br. 24.)

The five calls here used House-prepared scripts identifying Representative Bradford as a Pennsylvania State Representative. The scripts stated only House contact information. They described only government programs and services. The calls never mentioned anything personal. And Representative Bradford was involved only because he is a State Representative. But for that official role, he

would not have taken part, Perrong would not have received calls voiced by Representative Bradford, and Perrong would not have sued him.

Perrong still claims a ruling in Representative Bradford's favor will take a "wrecking ball" to the TCPA. (Br. 4.) No; the sky will not fall. Just as before, telemarketers who harass us with robocalls will be held to account. A holding applying immunity here just would protect officials for recorded public service message calls about government programs and services. Nothing about that will undermine the TCPA's prohibitions on commercial and scam robocalling.

For these reasons, detailed below, and those stated before, Representative Bradford asks this Court to reverse the district court and remand for entry of judgment in his favor.

# **ARGUMENT**

## A.  **Perrong distorts the facts.**

Perrong's brief contains a steady stream of contentions lacking record support.  His three most glaring tales are that Representative Bradford waived his sovereign immunity defense, that he had a personal role in making the calls, and that the district court's ruling was based on the evidence.

### 1.  **Nothing was "conceded" at the scheduling conference.**

Perrong's most odious fib is that Representative Bradford waived his sovereign immunity defense.  (Br. ii, 5, 9, 29, 32-34.)  Perrong represents this happened at an "oral argument."[6]  (Br. ii, 29.)  These claims are false.

The court event was not an "oral argument."  It was a scheduling conference under Federal Rule of Civil Procedure 16.  (A155) ("THE COURT: … So we're here on the Rule 16 conference in Perrong versus Bradford, 23-510.").  The court brought the parties together to talk case administration.  (Doc. 12.)  It did not direct them to prepare for "oral argument" on any claim or defense.  There was not even

---

[6] Perrong does not argue that Representative Bradford waived qualified immunity at this "oral argument."

the potential for that, as no motion was pending.  Even Perrong winds up admitting this was just a "Rule 16 conference."  (Br. 32.)

During the conference, Representative Bradford never conceded sovereign immunity.  The word "waiver" was never uttered—by anyone.  Nor was there any admission that Representative Bradford acted in his personal capacity.  His counsel stood firm, arguing his client had sovereign immunity because he acted here solely in his official capacity.  (A158) ("State Representative Bradford, when he's acting in his official capacity as a state representative, also enjoys that … immunity"); (A159) ("my response would be that he was not acting in his individual capacity").

What Perrong seizes on as a "concession" was just consensus on the applicable legal framework.  The court asked if a special analysis is used for state representatives or if the inquiry is the same as that for other state actors.  The court gave examples of cases against state police troopers and other state officials and then asked, "I don't think this is any different, is it?"  (A159-A161.)  Counsel agreed "there is nothing special about a member of the House verses another state actor if they are acting in their official capacity, and so the same kind of analysis … that [the court] just highlighted for us would apply."  (A161.)  Thus, what Perrong calls a "concession" was merely agreement on the type of legal analysis.

Given this, it is no surprise that the district court never made a waiver finding like the one Perrong argues for here. He never even asked the district court to make it. Thus, it is <u>Perrong</u> who has committed waiver. He has waived on appeal his contention that Representative Bradford conceded sovereign immunity by failing to argue for waiver before. *See Bacon v. Avis Budget Grp.*, 959 F.3d 590, 603 n.8 (3d Cir. 2020) (holding litigant waived its waiver argument on appeal because it never presented that argument to the district court); *Freeman v. Pittsburgh Glass Works*, 709 F.3d 240, 250 (3d Cir. 2013) (same).

### 2.    The facts show Representative Bradford acted only as a State Representative—not for himself.

The next set of Perrong embellishments is about the recorded calls and Representative Bradford's connection to them. This starts right on the first page of Perrong's case statement. He says the calls here were made on a "large scale." (Br. 3.) There is no evidence of this. The proof, detailed in Representative Bradford's brief, is the opposite. The calls were directed to one relatively small group of people: constituents. (Bradford Br. 10-14, 18-19.)

Perrong next says Representative Bradford is claiming immunity just because he "happens to be" a State Representative and only because he "used" House resources. (Br. 3, 10, 24.) Also wrong. Representative Bradford is not trying to use his official title to shield personal acts. And he is not claiming

immunity just because House resources were involved.  The immunity claims here are because everything Representative Bradford did was in his official capacity.

Perrong contends Representative Bradford "acted on his own" as an "entity autonomous from the Commonwealth" and personally "placed" the calls.  (Br. 14, 31, 36.)  None of that is true.  House personnel organized, scripted, and placed the calls.  (Bradford Br. 10-11, 23-33 & n.17.)  All Representative Bradford did was read House-prepared scripts out loud; House employees did everything else.

Perrong also says Representative Bradford was identified in the calls only as "Matt Bradford."  (Br. 19, 20.)  Wrong again.  As the Court can see for itself on pages 283 and 284 of the Appendix, each script identified him as "State Representative Matt Bradford"—sometimes more than once.  (A283-A284) ("Hi, I'm State Representative Matt Bradford…."; "Hi, I'm State Representative Matt Bradford…."; "Hello, this is State Representative [Matthew Bradford]."; "This is State Representative Matt Bradford."; "Hi, this is State Representative Matt Bradford."; "Hi, this is State Representative Matt Bradford."; "This is State Representative Matt Bradford.").  Perrong's contrary claim is false.

Perrong even tries to dupe the Court by suggesting the calls were by a "politician" during a "political campaign."  (Br. 10, 47-49.)[7]  Again, there is no evidence of this.  Representative Bradford's involvement was confined to his official capacity as a State Representative and the calls discussed only government programs and services.  No evidence shows they were part of an election campaign and they never urged a vote for or against any candidate.  (Bradford Br. 15.)

### 3.    The district court ruled based on Perrong's allegations, not the evidence disproving them.

Lastly, Perrong argues the district court ruled "based on the evidence presented" and "record developed."  (Br. 7, 13, 30.)  No.  The court's ruling was not based on the evidence.  Its decision was only because of what Perrong had alleged in his pleading, and thus it did not properly apply the summary judgment standard.  (Bradford Br. 37-39.)  Perhaps inadvertently, Perrong admits this: "the [district court] expressed skepticism that any level of discovery would entitle

---

[7] Perrong says here that Representative Bradford was "on notice" that the TCPA applied him because of a "dispute that was brewing about the constitutionality of a previous third exemption to the TCPA" that "exempted prerecorded calls made to collect debts owed to or guaranteed by the government."  (Br. 48.)  This puzzling argument, if it can be understood, plainly does not apply here.

Bradford to summary judgment on the sovereign immunity issue."[8]  (Br. 32)

(emphasis added); *see also* (Perrong Br. 11, 17, 53) (Perrong's repeated admissions

that the district court ruled based on what "Perrong asserts" and because of how he

"sued" Representative Bradford).

---

[8] Speaking of discovery, Perrong says Representative Bradford should have served
some on Perrong.  (Br. 5, 29-30.)  But Perrong is the plaintiff; he had the burden to
prove his TCPA claim.  The immunity protections here also are legal defenses,
requiring few facts, and Perrong's discovery developed what was needed.  In any
event, it is hard to see how serving discovery on Perrong would be of any use in
understanding Representative Bradford's immunities.

**B.    Sovereign immunity applies here.**

Perrong's view of the law is as rough as his take on the facts.  As for sovereign immunity, he tries to avoid *Cunningham* and *Cheng*, seeks to cabin this immunity to mandatory duties, aims to limit protection solely to named judgment debtors, and even invokes Speech or Debate Privilege.  Each gambit is a flop.

**1.    Distinctions without differences cannot
save Perrong from *Cunningham* and *Cheng*.**

Perrong first tries to distinguish *Cunningham v. Lester*, 990 F.3d 361 (4th Cir. 2021) and *Cheng v. Speier*, 609 F. Supp. 3d 1046 (N.D. Cal. 2022), *aff'd*, 2023 WL 4490352 (9th Cir. 2023).  (Br. 18-24.)  Given how similar those cases are to this one, he has little to work with.  The best he can do is point out meager fact differences.  None of this hair-splitting has any real meaning, so his bid fails.

Perrong says it makes a difference that the scripts here referenced Representative Bradford in the first person.  (Br. 19-23.)  He cites no support for the odd idea that sovereign immunity hangs on whether a person speaks in the first, second, or third person.  *Cheng* shows no such case could exist.  Like Representative Bradford, the legislator there spoke in the first person: "I'm calling … to invite you to participate in my town hall."  609 F. Supp. 3d at 1049 (emphases added).  The court held sovereign immunity applied, paying no mind to the legislator's first-person usage.

Perrong also contends it matters the Commonwealth was not name-checked in the call scripts. (Br. 19.) Again, the same is true of the script in *Cheng*. It, too, did not mention the government. 609 F. Supp. 3d at 1049. Nor did the script in *Cunningham*. 990 F.3d at 363-64. This made no difference in either court's analysis. And even if this did matter, the scripts here had an evident connection to the Commonwealth. Each one identified Representative Bradford as a <u>State</u> Representative, invited responses to his <u>State</u> offices, and discussed <u>State</u> programs. (A283-A284; Bradford Br. 10, 13-14.) Any reasonable listener would have understood the calls as connected to the Commonwealth of Pennsylvania.

What is more, the words Representative Bradford spoke were not even his own. Though phrased in the first person, he did not choose the word "I." That word—and every other one in the scripts—was written by House employees. (Bradford Br. 11.) House personnel chose the first person, not Representative Bradford. Had House employees phrased the scripts using the second or third person, then those are the words he would have read.

Perrong then tries to get around *Cheng* by pointing to a Notice of Substitution filed there under the Federal Tort Claims Act. (Br. 22.) But he points to no Pennsylvania equivalent Representative Bradford could have tried to use in this case. And the substitution in *Cheng* was irrelevant to the court's decision anyway. It applied only to the state law claims in that case, not the TCPA claim.

609 F. Supp. 3d at 1050 & n.1. Thus, the court never discussed the substitution in the context of the TCPA claim. It also declined jurisdiction over the state law claims, so it never dealt with the substitution—at all.[9] *Id.* at 1055 ("the Court does not address the parties' arguments regarding the state law claims, including whether the United States was properly substituted as a defendant on those counts or the applicability of the [Federal Tort Claims Act] and its exemptions").

Next, Perrong tries to put *Cunningham* and *Cheng* to one side because they involved federal officials. He says they enjoy "enhanced immunity" in this context. (Br. 27.) But he points to nothing showing this is true. The statutory definition he quotes does not draw this distinction. (Br. 11) (quoting 47 U.S.C. §153(39)). Nor does the inapt statutory treatment of "radio stations." (Br. 27-28, 53-54) (quoting 47 U.S.C. §305). In any event, Perrong's argument could never hold sway, as the Supreme Court's statutory construction rule that "person" does not include the "sovereign" applies equally to the federal <u>and</u> state governments. (Bradford Br. 46-47) (citing *Vermont Agency of Nat. Res. v. Stevens*, 529 U.S. 765 (2000) (holding federal False Claims Act did not apply to Vermont state agency because of "person" rule)). Perrong never addresses that rule in his brief.

---

[9] Perrong suggests Judge Bress dissented on the substitution issue when *Cheng* reached the court of appeals. (Br. 22.) He did not. Neither he nor the majority even mentioned it. 2023 WL 4490352, *1-*3.

### 2.    Sovereign immunity covers officials for mandatory *and* discretionary acts.

Perrong doubles down on the district court's finding that sovereign immunity protects officials only when they carry out mandatory duties, not discretionary acts.  (Br. 4, 6, 11, 15, 17, 19, 31.)  Like the district court, Perrong cites nothing supporting that contention.  The cases point the other way.  (Bradford Br. 41.)  Perrong unwittingly shows this in his own analysis.

In his recitation on *Cunningham*, Perrong says a statutory mandate required the government officials sued there to make recorded calls.  (Br. 20, 23.)  But that law directed them only to "establish a system" to ensure applicants "receive notice of eligibility" for a program.  990 F.3d at 363 & 367 (quoting 42 U.S.C. §18083(a), (b)(2), (e)).  The statute did not mandate <u>how</u> the officials had to give notice.  It did not <u>require</u> recorded calls.  The officials instead had <u>discretion</u> about how to give notice.  In Perrong's words, they could have used "manually dialed calls, text messages, emails, [or] letters."  (Br. 4.)  They <u>chose</u> recorded calls.  The court held sovereign immunity applied; the officials' discretion made no difference.

As for *Cheng*, Perrong suggests recorded calls were part of the Representative's required duties because she had "authority" to make them.  (Br. 21.)  "Authority," however, is different from a "mandate."  The plaintiff in *Cheng* also made the same argument as Perrong, and the court rejected it.  He claimed

sovereign immunity did not apply because the Representative "had discretion in how she contacted her constituents." 609 F. Supp. 3d at 1054. The court disagreed. It was enough for the court that "constituent communications" were part of her "job duties," and that the calls were not "for a private purpose." *Id.* The court of appeals affirmed those findings. 2023 WL 4490352, *1.

### 3.    A judgment here would "operate against" the Commonwealth of Pennsylvania.

Perrong maintains that sovereign immunity does not apply because only Representative Bradford would be technically bound by a judgment. (Br. 7, 12, 14, 18, 37.) This is wrong on both the facts and the law.

To begin, the facts show the Commonwealth will pay any judgment, as the district court correctly recognized. (A161) (district court statement that individuals "acting in the course of their duties" are often "indemnified by the Commonwealth even though they are being sued in their individual capacity"); (A380 #8) (response to Perrong discovery request stating that Representative Bradford would be indemnified by the Employee Liability Self-Insurance Program or "ELSIP").

More importantly, the analysis covers more than just the payment of dollars. As *Pennhurst* teaches, sovereign immunity <u>also</u> applies if the "effect of the relief sought" would "operate against" the Commonwealth. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-02, 107 (1984). Perrong admits this. He

- 14 -

quotes this Court's *Waterfront Commission* decision (which, in turn, quoted *Pennhurst*) for the rule that "the state is the real party in interest if it would 'expend itself on the public treasury or domain, <u>or interfere with public administration</u>.'"  (Br. 35) (quoting *Waterfront Comm'n v. Governor of N.J.,* 961 F.3d 234, 239 (3d Cir. 2020), which quotes *Pennhurst*, 465 U.S. at 101 n.11; emphasis added).  An adverse judgment here would "interfere with public administration" by forcing governments to stop making recorded calls notifying the public about government programs and services for their benefit.  *See Pennhurst*, 465 U.S. at 101 n.11 (a suit is against the sovereign "if the effect of the judgment would be 'to restrain the Government from acting'" (citation omitted)).  Perrong thus is fully wrong to belittle the "knock-on effects" of a judgment.  (Br. 34.)  They are central to the analysis.[10]

Perrong tries to marginalize *Pennhurst*, calling it an "early case" that did "little to advance a cognizable standard."  (Br. 22, 35.)  But that Supreme Court decision set a black-letter rule controlling future cases like this one.  At least this Court seems to think so.  It deemed *Pennhurst* binding when it decided *Waterfront*

---

[10] Perrong also argues in slippery-slope fashion that a finding for Representative Bradford would turn every lawsuit causing "some government-level change" into an official capacity case.  (Br. 34.)  But all that is required here is a straightforward *Pennhurst* analysis, not its expansion to every *de minimis* change.

*Commission* in 2020, and has relied on it no fewer than 24 times since. *Pennhurst* does more than a "little" to advance the standard. It <u>made</u> the standard.

Rather than reckon with *Pennhurst*, Perrong tries to focus the Court on *Lewis v. Clarke*, 581 U.S. 155 (2017). (Br. 12, 14.) To begin, that case dealt with tribal immunity for Native American tribes, not Eleventh Amendment or state sovereign immunity. *Lewis* also involved a tort lawsuit for money damages after a tribe employee caused a car accident. The only potential impact of a judgment was the payment of money damages. A judgment would not "operate against the Tribe." 581 U.S. at 163. It would not "require action by the sovereign" like a change in tribal operations or administration. *Id.* (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687 (1949)).[11] *Lewis* thus had no *Pennhurst* implications. The *Lewis* Court never even cited it.

### 4. This case does not involve Speech or Debate or Legislative Privilege.

Perrong also grasps at cases from the Speech or Debate or Legislative Privilege context. (Br. at 15-17.) But that protection is not at issue here—and never has been. This appeal is solely about sovereign and qualified immunity.

---

[11] The *Pennhurst* Court relied heavily on *Larson* in its decision. 465 U.S. at 112-116 & notes 11, 19-28.

Perrong also offers no authority permitting either immunity to be cross-pollinated with Speech or Debate Privilege.  The cases he cites make no suggestion of the kind.  *See United States v. Brewster*, 408 U.S. 501, 528-29 (1972) (holding based only on Speech or Debate Privilege; opinion makes no reference to sovereign immunity); *Hoellen v. Annunzio*, 468 F.2d 522, 527 & n.8 (7th Cir. 1972) (same).  And for its part, this Court has always treated Speech or Debate Privilege as cordoned off from sovereign immunity.  *See, e.g.*, *Youngblood v. DeWeese*, 352 F.3d 836, 839 n.3 (3d Cir. 2003) (refusing to consider sovereign immunity after deciding Speech or Debate issue); *Goodwin v. Castille*, 465 Fed. Appx. 157, 160 (3d Cir. 2012) (same).

Perrong references nothing permitting Speech or Debate Privilege to be blended into sovereign immunity.  So when he mentions "legislative sovereign immunity," it appears to be just something he's made up.  (Br. 16.)

### C.    Qualified immunity also applies here.

Perrong's qualified immunity arguments fare no better.  He frames his claimed right in broad and non-contextual terms, contends qualified immunity cases treat constitutional and statutory rights differently, argues his right was "obvious," and maintains Representative Bradford is seeking "derivative" immunity.  All these assertions fail, too.

### 1.    Perrong's claimed right is not to receive calls from legislators about government programs and services.

Perrong first complains Representative Bradford has framed Perrong's right too narrowly.  (Br. 40, 49-50.)  But that is what the qualified immunity analysis demands.  The right must be defined with a "high degree of specificity."  *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190-91 (3d Cir. 2021) (cleaned up; quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).  It must be framed in "the specific context of the case, not as a broad general proposition."  *Rivera v. Redfern*, 98 F.4th 419, 422 (3d Cir. 2024) (citation omitted).

The "specific context of the case" here is recorded calls from a legislator to constituents about government programs and services for their benefit.  Perrong asserts he has a right not to receive those calls.  That is the specific right he claims here—not the "broad general proposition" in the TCPA's text.  *Id.* at 422.

## 2.    Constitutional and statutory
## claims are analyzed identically.

Perrong also says it matters that his claim is statutory, not constitutional.  He proclaims that constitutional rights are of a "different nature" and suggests qualified immunity is unavailable as a defense to statutory claims.  (Br. 41-42.)

Perrong cites nothing supporting this, nor could he.  Just last year, in *Mack v. Yost*, 63 F.4th 211 (3d Cir. 2023), this Court held that qualified immunity is an available defense to a statutory claim under the Religious Freedom Restoration Act.  *Id.* at 221-27.  And in *HIRA*, this Court held qualified immunity shielded Pennsylvania state legislators from statutory claims under the Religious Land Use and Institutionalized Persons Act and 42 U.S.C. §1983.  991 F.3d at 190-92.

Perrong's own cases disprove his "different nature" theory.  For instance, in *Blake v. Wright*, 179 F.3d 1003 (6th Cir. 1999), the court held qualified immunity can be asserted as a defense to a statutory claim under the Federal Electronic Communications Privacy Act.  *Id.* at 1013.  The court declared: "We fail to see the logic of providing a defense of qualified immunity to protect public officials from personal liability when they violate constitutional rights that are not clearly established and deny them qualified immunity when they violate statutory rights that similarly are not clearly established."  *Id.*  Perrong also references *Reichle v. Howards*, 566 U.S. 658 (2012), as "relaxing" his burden, but it does no such thing.

*Reichle* instead puts statutory and constitutional claims on equal footing. *See id.* at 664 ("Qualified immunity shields government officials from civil damages liability unless the official violated a <u>statutory or constitutional</u> right that was clearly established at the time of the challenged conduct." (emphasis added)).

### 3. It was not "obvious" that the calls here were prohibited, as the TCPA permitted them.

Next, Perrong argues he needs no authority "clearly establishing" his claimed right, as it is "so obvious." (Br. 9, 43-45.) This argument only works by ignoring the state of the law… which is exactly what Perrong does.

Perrong's claim is that Representative Bradford is individually liable because he qualifies as a "person" under the TCPA.[12] The Supreme Court has decreed, however, that the term "person" in a statute does not include state actors.[13] *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 626 (2019); *Vermont Agency*

_____

[12] In this respect, Perrong says he is worried about Congressional intent. (Br. 10.) If Congress wanted to apply the TCPA to state officials, then it could have done so expressly. *See Vermont Agency,* 529 U.S. at 780-81 (the "person" rule is "particularly applicable" to the states and "may be disregarded only upon some affirmative showing of statutory intent to the contrary"). But Congress did not.

[13] Perrong says this position is "a drastic about-face" from what was argued in the district court. (Br. 43, 8.) Not so. Representative Bradford has been consistent throughout: no TCPA violation occurred to begin with because he is not a TCPA "person." He disputes the district court's contrary finding, but cannot directly challenge it now. This is a collateral order appeal confined to immunity questions. So the "about-face" Perrong thinks he sees is just a matter of procedural posture.

*of Nat. Res. v. Stevens*, 529 U.S. 765, 780-81 (2000).  Regulatory decisions

applying that rule hold that "person" in the TCPA does not include state officials

calling on government business.  *In re: Broadnet Teleservices LLC,* 35 FCC Rcd.

15052, ¶¶2, 9, 13, 22-26 & notes 5, 26, 53, 54 (2020); *In re: U.S. Dep't of Health

& Human Servs.*, 38 FCC Rcd. 404, ¶¶18-19 (2023).[14]  And the only court of

appeals to consider Perrong's claimed right held that the Supreme Court's "person"

rule means the TCPA does not apply to legislators calling on official business.

*Cheng v. Speier*, 2023 WL 4490352, *1 (9th Cir. 2023).

      Perrong takes on none of this, even though Representative Bradford focused

on it in his opening brief.  (Br. 23, 44-48.)  Perrong never discusses—or even

references—the Supreme Court's "person" rule or its *Return Mail* or *Vermont

Agency* decisions.[15]  Perrong also never addresses or cites either of the above on-

point FCC decisions.[16]  And he never confronts the court of appeals holding in

---

[14] Perrong does not argue that these rulings implicate agency deference.  *See Loper
Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  Thus, the parties agree:
there is no question of agency deference that could be considered here.

[15] Contrast this with Perrong's overreaction to a one-sentence footnote mentioning
a different TCPA provision that he "doesn't sue under."  (*Compare* Bradford Br.
45 n.21 *with* Perrong Br. at 51-52.)

[16] Instead of addressing FCC decisions that do apply, Perrong points to its guidance
that does not: its advice on "political campaign" calls.  (Br. 47.)  The calls here
were not made by a political candidate, campaign, or party.

*Cheng*. He instead deflects, pointing out that *Cheng* is not a qualified immunity case. (Br. 55.) That's beside the point. To avoid immunity, Perrong must point to a clearly established right. *Cheng* holds his right does not exist. It makes no difference that the court's opinion did not also deal with qualified immunity.

In the end, Perrong will not deal with reality. He refuses to see the "storied redwood" of the "person" rule. *Peck v. U.S. Dep't of Labor*, 996 F.3d 224, 231 (4th Cir. 2021). Nor, for that matter, will he look at anything else in the forest.

Perrong instead creates an alternate reality for his "obviousness" argument. The cases he uses for it, however, have facts worlds apart from those here. (Br. 43-45.) For instance, in *Hope v. Pelzer*, 536 U.S. 730 (2002), prison guards handcuffed inmates to a horse's hitching post in the sun for seven hours and refused them water, causing dehydration, sunburn, pain, and suffering. *Id.* at 734-35 & notes 1 & 2. In *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015), an off-duty police officer got into his cruiser for "personal pleasure" and raced for miles through city intersections with emergency lights flashing, ran a red light, and crashed into and killed the victim. *Id.* at 1077, 1080. And in *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011), a prosecutor intentionally withheld information from a judge, causing a trial witness (who was not charged with any crime) to remain confined in jail for nearly two months. *Id.* at 317-18, 331.

Perrong apparently thinks his receipt of a handful of short recorded public

service calls is no different from the intentional torture, wrongful death, and illegal

captivity suffered in *Hope*, *Browder*, and *Schneyder*.  His comparison is more than

just legally indefensible.  It is an insult to the victims in those cases.

### 4.      Representative Bradford does not claim "derivative" qualified immunity.

Lastly, Perrong asserts Representative Bradford claims "some form of

derivative qualified immunity."  (Br. 45-47.)  Perrong is wrong once again.  The

immunities he claims are entirely his own—not derivative of someone else's.

Nothing in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), suggests

otherwise.  The question presented in *Campbell-Ewald* was whether a federal

government contractor shared in the federal government's sovereign immunity.  *Id.*

at 166-69.  Representative Bradford is not a government contractor, as Perrong

admits.  (Br. 46.)  And *Campbell-Ewald* made no mention of qualified immunity.

The sovereign immunity analysis in *Campbell-Ewald* does not suggest

government actors like Representative Bradford lose it in TCPA cases.  The Court

said the opposite—that it was undisputed that the federal government and its

agencies "are not subject to the TCPA's prohibitions because no statute lifts their immunity." 577 U.S. at 166. *Campbell-Ewald* thus does not help Perrong here.[17]

---

[17] Near the end of his brief, Perrong argues Representative Bradford can have qualified immunity only if he also has sovereign immunity. (Br. 56.) There is no authority for this, but plenty to the contrary. Many cases apply qualified immunity after holding sovereign immunity inapplicable. A good example is *HIRA*. *See* 991 F.3d at 188-92 (holding sovereign immunity applied to some claims and not others, but that qualified immunity applied to those other claims).

## CONCLUSION

For these reasons, and those stated before, appellant, Matthew Bradford, Majority Leader of the Pennsylvania House of Representatives and Representative for the 70th Legislative District, requests that the Court reverse the district court's May 13, 2024 order and remand for entry of judgment in Representative Bradford's favor.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Karl S. Myers
Karl S. Myers (Pa. No. 90307)
Paige C. Hogan (Pa. No. 331749)
STEVENS & LEE
555 City Avenue, Suite 1170
Bala Cynwyd, PA 19004
(215) 751-2864
karl.myers@stevenslee.com
paige.hogan@stevenslee.com

Counsel for appellant,
Representative Matthew Bradford,
Majority Leader of the Pennsylvania House
of Representatives and Representative for
the 70th Legislative District

</div>

Dated: October 17, 2024

**<u>COMBINED CERTIFICATIONS OF COUNSEL</u>**

1.     <u>Bar Membership:</u>  The undersigned certifies that Karl S. Myers and Paige C. Hogan are members of the bar of this Court.

2.     <u>Word Count:</u>  The undersigned certifies that this brief uses a proportionally spaced, 14-point Times New Roman typeface, and that it complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 5,176 words.

3.     <u>Service:</u>  The undersigned certifies that he will serve this brief by the Court's electronic filing system on the date below on counsel of record here.

4.     <u>Identical Text:</u>  The undersigned certifies that the text of the electronically-filed brief is identical to the text of the 7 hard copies that will be delivered within 5 days of this electronic filing to the Clerk of the Court.

5.     <u>Virus Check:</u>  The undersigned certifies that virus detection was run on this file and that the program detected no virus.

<div align="center">

/s/ Karl S. Myers<br>
Karl S. Myers
</div>

Dated: October 17, 2024