# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————————————

№. 24-1925

————————————

Andrew Perrong,
        *Plaintiff-Appellee,*

v.

Matthew Bradford
        *Defendant-Appellant.*

————————————

Appeal from Memorandum Opinion and Order
Denying Motion for Summary Judgment in No. 2:23-cv-00510 in the
United States District Court for the Eastern District of Pennsylvania.
Honorable Joshua D. Wolson

————————————

## APPELLEE'S PETITION FOR REHEARING AND
## PETITION FOR REHEARING EN BANC

————————————

s/ ANDREW PERRONG
ANDREW PERRONG, ESQ.
PERRONG LAW LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
(215) 225-5529
*Plaintiff-Appellee*

## Table of Contents

I.    **Rule 40(b) and Rule 35.1 Statement** ..............................................1

II.   **Introduction** ..............................................................................1

III.  **Background** ...............................................................................3

IV.   **Argument** ..................................................................................5

    A.    Representative Bradford is a "person," and the TCPA's context clearly supports an application of the statute to him. ...........................5

V.    **Conclusion** ................................................................................18

VI.   **Combined Certificates of Compliance and Service** ..............19

## Table of Authorities

**Cases**

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020)... passim

*Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2017 WL 3284797 (E.D. Cal. Aug. 2, 2017) ...........................................6

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) .............................................................................. 14, 15

*Meredith v. United Collection Bureau, Inc.*, No. 1:16 CV 1102, 2018 WL 1782854 (N.D. Ohio Apr. 13, 2018) .........................................................6

*Mims v. Arrow Fin. Servs.*, 565 U.S. 368 (2012)......................................18

*Nardone v. United States*, 302 U.S. 379 (1937) ............................... passim

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978) ...................................13

*Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618 (2019)....12

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994) ............10

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ................................................................................. 12

**Statutes**

47 U.S.C. § 153 .................................................................. 4, 6

47 U.S.C. § 227 ............................................................. passim

## I.   RULE 40(B) AND RULE 35.1 STATEMENT

I express a belief, based on a reasoned and professional judgment, that the panel decision conflicts with the decisions of the United States Supreme Court in *Nardone v. United States*, 302 U.S. 379 (1937) and *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decision, and that the proceeding involves questions of exceptional importance, i.e., whether the Communications Act's use of the word "person" applies to state legislators, and thus whether the TCPA prohibits state legislators from sending pre-recorded calls.

## II.   INTRODUCTION

In 1991, Congress passed the Telephone Consumer Protection Act, or TCPA, which is part of the Communications Act of 1934, as amended. Among other provisions, the TCPA protects telephone subscribers from a specific, unique type of harm: prerecorded calls sent to cell phones and other types of specialized and protected telephone lines. 47 U.S.C. § 227(b)(1)(A)(iii). By its explicit text, the TCPA's robocall provision applies to all calls made by "persons," regardless of content, and

exempts only two types of calls: calls made for "emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The Supreme Court has previously interpreted the very same definition of "person" to include agents of the federal government. *Nardone*, 302 U.S. at 381. The TCPA also includes a provision exempting a call "made solely to collect a debt owed to or guaranteed by the United States," a provision that the Supreme Court has held is unconstitutionally content based. *Barr*, 591 U.S. at 621.

The District Court properly held that state representatives are "persons" subject to the TCPA's robocall provisions. But this Court reversed. In holding that state representatives, like Appellee Bradford, were not "persons" subject to the statute, the panel has opened a gap to robocalls made by government officials without telephone subscribers' recourse, and despite persons like Bradford having multiple lawful alternative ways to communicate with their constituents, including consented-to robocalls, manual calling, email, and postal mail.

The panel's decision effectively permits state legislators to bombard protected telephone lines with prerecorded spam calls with immunity, but it also applies the wrong context to an otherwise clear

2

statutory provision of the Communications Act that applies to state government actors. More troublingly, to the extent that applying some "context" to an otherwise clear statutory provision was appropriate, the panel paid insufficient heed to the appropriate and limited context of the TCPA's robocall provision and what it was designed to address: a specific harm arising from a particular type of call, prerecorded robocalls, to particular protected line types. Although an issue of first impression, the panel's decision erodes the foundation underlying the constitutional privacy interests of telephone subscribers and Congressional intent. This Court should grant rehearing en banc.

## III.    BACKGROUND

Plaintiff-Appellee Andrew Perrong brought this action asserting violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA") against Defendant-Appellant Matthew Bradford. This matter came before this Court on an Opinion and Order denying the Defendant-Appellant's Motion for Summary Judgment.

The District Court denied Appellant's Motion for Summary Judgment, ruling that because he was sued in his individual capacity, not his official capacity, and because he was clearly a "person," Bradford

was subject to the TCPA's provisions and thus that the TCPA applied to the conduct at issue, and was not entitled to sovereign or qualified immunity. This Court did not address the immunity questions because it reversed on the first issue of whether Bradford was a "person" subject to the TCPA's provisions, and thus the TCPA did not apply.

In reversing, the panel acknowledged that the Supreme Court has previously held that the TCPA's definition of a "person," which references the main definition of the same in the Communications Act, *Nardone*, 302 U.S. at 381, can apply to government agents. (Op. at 17.) However, the panel seized on the introductory language to the Communications Act's definitional section, "unless the context otherwise requires," 47 U.S.C. § 153, to hold that, in this context, the TCPA does not encompass state legislators within its definition of a "person." (Op. at 18 n.5.) However, *Nardone*'s discussion of context actually hurts Appellant's position and shows why "person" *includes* the sovereign in cases, as here, where a statute is "intended to prevent injury and wrong." *Nardone*, 302 U.S. at 384.

### IV.   ARGUMENT

A.   *Representative Bradford is a "person," and the TCPA's context clearly supports an application of the statute to him.*

The Supreme Court aptly framed the TCPA's context in *Barr*:

> Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.
>
> For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones. But a 2015 amendment to the TCPA allows robocalls that are made to collect debts owed to or guaranteed by the Federal Government, including robocalls made to collect many student loan and mortgage debts.

591 U.S. at 613. The statute was passed in response to "a torrent of vociferous consumer complaints about intrusive robocalls." *Id.* at 614.

As the panel observed, when Congress passed the TCPA's robocall prohibition in 1991, Congress prohibited a certain, limited type of calling conduct, *prerecorded* robocalls, made to certain types of telephone lines, cell phones and other protected services, because of the unique harm that prerecorded calls in particular pose to subscribers to those services. Congress did so because prerecorded calls constitute a "greater nuisance and invasion of privacy" than live calls, and such calls

5

are particularly "costly and inconvenient." *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2017 WL 3284797, at *1 (E.D. Cal. Aug. 2, 2017) (citing Congressional findings); *Meredith v. United Collection Bureau, Inc.*, No. 1:16 CV 1102, 2018 WL 1782854, at *3 (N.D. Ohio Apr. 13, 2018) (outlining cases and FCC holdings adopting those findings). So much is evident in that Congress recognized only two exceptions to that broad, generalized prohibition against *prerecorded* calls: emergency calls, and calls made with consent.

The subject provision here, 47 U.S.C. § 227(b)(1)(A)(iii), applies to all "persons," which the Communications Act defines as "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). And, in *Nardone*, the Supreme Court has held that the phrase "'no person' [in the Communications Act] comprehends federal agents." 302 U.S. at 381. Just as here, the United States argued in that case that "Congress did not intend to prohibit tapping wires to procure evidence," and that Congress would have adopted legislation outlawing wiretapping by government agents if it had wanted to. *Id.* Nevertheless, the Supreme Court concluded that the:

> [P]lain words . . . forbid anyone . . . to intercept a telephone message, and direct in equally clear language that 'no person'

6

shall divulge or publish the message or its substance to 'any person.' To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments.

*Id.* at 382. So too here, where the plain language applies to all persons.

The panel's decision in this case misapplied *Nardone*, particularly in the context of *Barr* and the overarching stated goals of the TCPA, yielding too easily to an implied context that misapprehends Section 227(b)'s goal of generally restricting particularly problematic methods of communication, *prerecorded*, not live, calls. Moreover, the panel did not conduct an appropriate contextual analysis of the TCPA itself.

Critically, in *Nardone*, the Supreme Court considered, and rejected, the government's argument, akin to the one adopted by the panel and Appellant, that Congressional legislation and inaction meant that Congress considered, but rejected, bringing government agents within the Act's purview, and that the words "any person" exclude the sovereign. *Nardone* held that these considerations were "insufficient to overbear the plain mandate of the statute." *Nardone*, 302 U.S. at 382-83. As the Court further remarked with respect to nearly the same privacy interests as here in applying them to government agents:

7

It is urged that a construction be given the section which would
exclude federal agents since it is improbable Congress intended to
hamper and impede the activities of the government in the
detection and punishment of crime. The answer is that the
question is one of policy. Congress may have thought it less
important that some offenders should go unwhipped of justice
than that officers should resort to methods deemed inconsistent
with ethical standards and destructive of personal liberty. The
same considerations may well have moved the Congress to
adopt section 605 as evoked the guaranty against practices and
procedures violative of privacy, embodied in the Fourth and Fifth
Amendments of the Constitution.

*Id.* at 383.

*Nardone* supports Appellee. Although the TCPA is often referred

to as a singular, monolithic law, a careful review of the Act itself and

the two separate and distinct pillars of the TCPA, Subsections (b) and

(c), shows why a blunt view can lead to erroneous conclusions. The

mainstay of Subsection (b) of the TCPA, under which this case proceeds,

is the regulation of certain particularly harmful types of *technologies*

(prerecorded robocalls) to certain types of telephone lines (cell phones

and other protected lines, like radiotelephones). Understandably,

Congress intended for *all types* of particularly odious prerecorded

calling conduct, except emergency calls and consensual calls, to fall

within Section (b)'s sweep. Indeed, in its introduction, the panel noted

as much, noting that Congress "ultimately determined that banning

8

robocalls was necessary . . . *regardless of the content or the initiator of the message*." (Op. at 11) (cleaned up) (emphasis added).

Given that the panel itself recognized that the TCPA's robocall prohibition applies "regardless of the content or the initiator of the message," (Op. at 11), this concession is difficult to square with the panel's conclusion that Congress could not have intended to bring government callers, like legislators, who themselves are "initiators," within the TCPA's statutory scheme absent an explicit, express intention to do so. That when Congress passed the TCPA it intended to cover government callers, just as in *Nardone*, is evident from the fact that Congress expressly considered, and rejected, an exception for calls made by a "public school or other governmental entity," (Op. at 12) (citing S. Rep. 102-178, at 5 (Oct. 8, 1991)), and further amended the TCPA in 2015 to exclude a third category of calling content: calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). As the panel accurately observed, citing the FCC, if the TCPA excluded government callers, the government debt exemption would be superfluous. (Op. at 14.) *Barr* illustrates the

9

appropriateness of the baseline, uniform rule restricting robocalls by even government callers.

As noted by the Supreme Court's plurality in *Barr*, the government debt exemption, although unquestionably legitimate, was unconstitutional because it favored government debt collection speech and thus "added an unconstitutional discriminatory exception to the robocall restriction." *Barr*, 591 U.S. at 629. Although it acknowledged the issue, the panel here does not adequately grapple with the question of why Congress would explicitly exclude government debt collection calls if the government was not subject to the TCPA as an initial matter. (Op. at 14.) To the extent that the panel's opinion reflects a conclusion that Congress favored "some speakers over others," (Op. at 21), that conclusion demands "strict scrutiny when the legislature's speaker preference reflects a content preference." *Barr*, 591 U.S. at 619 (citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 658 (1994)). And under that test, the panel's opinion likely adopts an unconstitutional framework for the same reasons as in *Barr*, preferring and permitting state legislative robocalls to other restricted types of calls, Justice Sotomayor's concurrence notwithstanding.

When viewed in light of *Barr*, the panel's citations to *Nardone*'s discussion of statutes where "public officers are impliedly excluded from language embracing all persons" actually help the Appellee and do not withstand scrutiny. *See Nardone*, 302 U.S. at 384. The Supreme Court remarked that such an implication *only* arises where such an interpretation "would work obvious absurdity as, for example, the application of a speed law to a policeman pursuing a criminal or the driver of a fire engine responding to an alarm." *Id.*

But there is an equally true "well recognized principle" which "leads to the application of the statute as it is written so as to include within its sweep federal officers as well as others." *Id.* at 384. "That principle is that the sovereign is embraced by general words of a statute intended to prevent injury and wrong." *Id.* The statute in *Nardone*, just as the statute here, and as acknowledged by the panel, was the subject of extensive Congressional debate and ultimately reflected a Congressional policy decision to uniformly prohibit a particularized type of consumer harm, prerecorded calls, that harmed consumers specifically and narrowly, through increased annoyance and costs. The panel here did not adequately consider *Nardone's* counsel that the

11

principle that the "context" in which the word "person" actually *includes* the sovereign is in the *very type of statute here*, a statute "intended to prevent injury and wrong," the overarching goal of which the panel itself acknowledges the TCPA was passed to remedy. (Op. at 11.)

It is on this point that *Return Mail* and *Vermont Agency* are distinguishable, and on which *Nardone*, not those cases, controls. Both of those cases involved the question of who may sue or be sued under specially applicable and particularized remedial schemes, *Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 629 (2019) (holding the federal government is not a "person" under the AIA, a statute whose context Congress did not envision to include the government); *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 782 (2000) (holding that the state *itself* could not be sued under the False Claims Act), not a generally applicable means-regulation statute that protects private rights against *any caller*. What's more, *Return Mail* applied the presumption "in the absence of" an express statutory presumption or "common usage" to the contrary. *Return Mail*, 587 U.S. at 626-27. *Nardone is* that prior contrary construction, and the legislative history of the TCPA shows Congress' understanding that it intended even

12

government callers to fall within the statutory definition of a "person."
*See Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 308 (1978) (holding that
a foreign government is a "person" under the antitrust laws).

The TCPA's robocall provision is a horse of a different color, a
content-neutral, generally-applicable means-based prohibition against a
particularly harmful calling method that protects subscribers' rights
from a particularly harmful method of communication against *all
callers*, including government callers. Prerecorded robocalls placed by
state representatives victimize telephone users "just as surely as a
private person or a domestic State." *Id.* at 308. And the legislative
history shows Congress intended the word "person" to have a "broad
and inclusive meaning," in light of the TCPA's "expansive remedial
purpose. *Id.* The Supreme Court's approach in *Pfizer* shows that
*Nardone* is not anomalous. Whether "person" includes governmental
entities depends upon the statute's "legislative history" including "[t]he
purpose, the subject matter, [and] the context." *Id.* at 312.

Under *Nardone*, the statute is generally designed to "prevent
injury and wrong," not create rights where none existed before. That is
particularly the case because the rule that excludes the sovereign "is

13

less stringently applied where the operation of the law is upon the agents or servants of the government rather than on the sovereign itself." *Nardone*, 302 U.S. at 383, yet another point of distinction for those cases, as Bradford is an individual legislator, not the Commonwealth government.

Nor do the FCC's orders interpreting the TCPA to exclude certain government callers as "persons" hold weight after *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025), where the High Court concluded that courts owe no deference to the FCC's interpretation of the TCPA when such interpretations conflict with traditional tools of statutory construction and a court's independent judgment. Congress's choice of words matters. Contrary to the FCC's orders, there is no textual reason to conclude, consistent with *Nardone*'s counsel, that the word "person" excludes state representatives in this particular statutory scheme designed to alleviate a particular harm. Congress certainly provided no clue that they should be excluded; to the contrary, subsequent Congressional lawmaking shows that they intended government callers to be *included*. And, under *McLaughlin*, this Court's task is to "decide what [the TCPA] means

14

under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation." *Id.* Like the antitrust laws, the TCPA serves a broad consumer protection purpose, enacted to address "a torrent of vociferous consumer complaints about intrusive robocalls," the harms of which are identical, regardless of the caller's identity. *Barr*, 591 U.S. at 614.

Given that the TCPA was designed to remedy prerecorded robocalls of all types, regardless of the sender, because of their harm–after all, there is little appreciable difference between a prerecorded call selling a subscriber a car warranty and one inviting them to an event in which they have no interest–the appropriate context here shows that the sovereign *is* embraced by the general words of a statute, which was designed to protect the very type of injury and wrong complained of. The panel erroneously deferred to the TCPA's overarching "context" without appropriately considering what that appropriate "context" even was, and ignores that it previously articulated the very same appropriate "context" it then proceeds to challenge. (Op. at 11.)

A brief analogy demonstrates the panel's error. Just as in the wiretapping context, applying the TCPA's prohibition against robocalls

15

to the sovereign does not work the "obvious absurdity" of necessity for a narrow privacy protection statute that a generally applicable statute would if it were applied to the sovereign. *Nardone,* 302 U.S. at 384. In the public safety context, there is no lawful way for the emergency services to attend promptly to the scene of an accident without disregarding generally applicable traffic laws for the sake of necessity. However, in both the wiretapping and TCPA context, there are alternative, lawful ways of collecting evidence and sending prerecorded messages. In the wiretapping context, a government agent need only obtain a warrant or conduct surveillance in public. So too in the TCPA context, where a state government caller need only obtain permission to call people with prerecorded calls or call them manually in order to contact constituents lawfully. Besides, the TCPA permits robocalls for emergency purposes, including government calls. Applying a generally applicable consumer protection statute to the sovereign clearly does not work an "obvious absurdity" in the way applying a generally applicable traffic statute to the sovereign would.

Treating state representatives as "persons" under the TCPA prohibited from sending prerecorded messages would not work an

"obvious absurdity," particularly when informed by the TCPA's legislative history, narrow scope of prohibited conduct, lack of necessity of that conduct, and policy. Indeed, a more appropriate reading of the TCPA's context shows Congress intended to outlaw a particularly harmful method of communication, unsolicited prerecorded robocalls, across the board because of the unique harm that that *particular* method poses. Would a statute prohibiting "any person" from operating a vehicle on a highway with a rocket booster attached likewise prohibit a fire engine from doing so? One should hope so.

The Panel's "hesitant" decision will also have unintended consequences. Appellee not only continues to receive calls from other members of the Pennsylvania House of Representatives, but also from other members, like Representative Bradford, who *don't even represent Appellee* and thus whose information and events, even if welcomed, are utterly useless to Appellee. The TCPA was the exact type of "federal legislation [that was] needed," to curb a particularized harm, unsolicited prerecorded calls, and to which the panel's decision provides a loophole for state representatives to evade "prohibitions on intrusive nuisance calls." *See Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 371

17

(2012). Thus, from a policy perspective and as a matter of public importance, as well as a legal perspective, the Court should grant rehearing.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Dated: November 3, 2025

<div style="margin-left:40%">

s/ ANDREW PERRONG
ANDREW PERRONG, ESQ.
PERRONG LAW LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
(215) 225-5529
*Plaintiff-Appellee*

</div>

18

## VI.    Combined Certificates of Compliance and Service

1.    I Certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    This petition complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 40(d)(3)(A). It contains 3,887 words.

3.    This petition complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Word in 14-point Century Schoolbook font.

4.    I also certify, pursuant to Third Circuit Local Appellate Rules, that the text of the brief filed on ECF is identical to the text of the paper copies, and further that a virus detection program has been run on the file and no virus was detected. The file was scanned with Windows Defender, version last updated 11/3/2025.

5.    I certify that I filed the foregoing via the ECF system and emailed a copy of the foregoing via email to Karl.Myers@stevenslee.com and upon Karl S. Myers, Stevens & Lee, 555 City Avenue, Suite 1170, Bala Cynwyd, PA 19004.

Dated: November 3, 2025

> s/ ANDREW PERRONG
> ANDREW PERRONG, ESQ.
> PERRONG LAW LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> a@perronglaw.com
> (215) 225-5529
> *Plaintiff-Appellee*